Donald A. Soutar
Attorney I.D. #: 024521999
John Rue & Associates, LLC
694 Rt. 15 South, Ste 206
Lake Hopatcong, NJ 07849
Attorneys for Plaintiff
862-283-3155
dsoutar@johnruelaw.com

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| M.A., | § | |
| | § | Civil Action No. _____ |
| Plaintiff, | § | |
| | § | |
| v. | § | **COMPLAINT** |
| | § | |
| WALL TOWNSHIP BOARD OF | § | |
| EDUCATION, | § | |
| | § | |
| Defendant. | § | |

## PRELIMINARY STATEMENT

1.      This action is brought on behalf of Plaintiff M.A. under the Individuals with

Disabilities Education Act, 20 U.S.C. § 1400, *et seq.*, 34 C.F.R. § 300 *et seq.* (hereinafter the

"IDEA" or "Act"), and the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.* ("Section

504"), 34 C.F.R. § 104 et seq., N.J.A.C. § 6A:14-1.1 *et seq.*, N.J.S.A. 18A:1-1 *et seq*.


2.      This matter is an appeal of the April 25, 2019 *Order on Motion for Dismissal* (the

"April 25th Order") of the Honorable Susan M. Scarola, ALJ, in a special education matter then

pending in the New Jersey Office of Administrative Law ("OAL").  A redacted copy of the April

25th Order is attached hereto as Exhibit A.

3.      M.A.'s mother, D.A. (the "Mother"),[1] filed a Parental Request for Mediation in the OAL, alleging that the District had failed to provide M.A. with a free appropriate public education ("FAPE") and requesting as relief, among other things, that the District revisit M.A.'s grades to reflect assignments handed in late and courses retaken as a result of M.A.'s recognized disabilities. A redacted copy of the Mediation request is attached hereto as Exhibit B.

4.      The Mother's complaint about M.A.'s grades sounded in discrimination.  The gravamen was that M.A.'s disability had not been appropriately accommodated, both by failures in her IEP to contemplate her need for accommodations, and also by the failure of the school to comply with those accommodations that were actually stated in the IEP.

5.      Accordingly, the Mother's complaint (and now M.A.'s) was inextricably intertwined with her rights under the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C. 1400, *et seq.*  As such, administrative exhaustion by and through the IDEA administrative process was required.  *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 755, 197 L. Ed. 2d 46 (2017).

6.      In her April 25th Order, ALJ Scarola, granted the District's motion for dismissal with respect to reexamination of grades, holding that the relief sought was improperly raised in a special education due-process hearing.

7.      The April 25th Order was entered in error because the Petitioner was challenging whether the District provided a FAPE pursuant to the IDEA and Section 504 of the Rehabilitation Act, 29 U.S.C. § 701 ("Section 504").  *Fry*, 137 S.Ct. at 751.

8.      Accordingly, the due process hearing below was properly requested, pursuant to N.J.A.C. 6A:14-2.7(a), and remediation of M.A.'s grades were properly sought as an equitable remedy.

---

[1]      During the course of the administrative proceedings, M.A. came of full legal age, and became the party in interest in this case.

9.      The April 25th Order also permitted M.A. to amend her Petition.  A redacted copy of the Amended Petition For Due Process, without Exhibits, is attached hereto as Exhibit C.

10.     The April 25th Order became a "final" decision on January 31, 2020, when Judge Scarola entered an *Order of Voluntary Dismissal*, dismissing all remaining claims.  A true copy of the *Order of Voluntary Dismissal* is attached hereto as Exhibit D.  This final order conferred subject matter jurisdiction on this Court.

11.     Plaintiff requests that the Court reverse the April 25th Order with respect to the reexamination of grades and school records and remand this matter to the OAL with a direction to consider the merits of Plaintiff's claims at a due process hearing.

## PARTIES

12.     Plaintiff is a resident of New Jersey, residing in Spring Lake Heights, NJ 07762.

13.     Plaintiff was a student with a disability, who, at all times relevant, resided in the area served by the Wall Township Board of Education (the "District").

14.     M.A. reached the age of majority subsequent to the filing of the Mediation Request on her behalf and thus appears here on her own behalf, as successor to her mother, D.A.

15.     M.A. was, at all times relevant, classified by the District as eligible for special education and related services pursuant to the IDEA.

16.     Defendant Wall Township Board of Education ("Defendant" or the "District") is the body corporate within the State of New Jersey charged with the conduct, supervision, and management of the public schools for Wall Township, and is the "local educational agency" established to provide special education services to children with disabilities served by the District pursuant to the IDEA.

17.     The District is a local education agency within the meaning of 20 U.S.C. § 1401, 34 C.F.R. § 300.28, is a federal funds recipient for its educational programs, and provides services to students with disabilities in accordance with the IDEA, Section 504, and analogous New Jersey state laws.

18.     The District's administrative offices are located at 1530 18th Avenue in Wall Township, County of Monmouth, State of New Jersey.

## JURISDICTION AND VENUE

19.     This action is brought, *inter alia*, pursuant to 20 U.S.C. § 1415, so jurisdiction is proper in this Court based upon 20 U.S.C. § 1415 and 28 U.S.C. § 1331 and § 1343.

20.     Venue in this district is proper under 28 U.S.C. § 1391(b) because all the parties reside, and all the events and omissions giving rise to Plaintiff's claims occurred, in this district.

## STATUTORY FRAMEWORK

21.     The IDEA requires that eligible children with disabilities receive a "free appropriate public education" or FAPE.  20 U.S.C.  § 1412(a)(1)(A).

22.     A FAPE is defined as special education and related services that are provided at public expense, meet the standards of the state educational agency, and conform with the child's Individualized Education Program ("IEP").

23.     To qualify for IDEA funding, states "shall establish and maintain procedures in accordance with 20 U.S.C. § 1415 to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education." 20 U.S.C. § 1415 (a).

24.     Under the New Jersey implementing regulations, "[a] due process hearing may be requested when there is a disagreement regarding identification, evaluation, reevaluation,

4

classification, educational placement, the provision of a free appropriate public education, or disciplinary action." N.J.A.C. § 6A:14-2.7.

25.     The IDEA does not identify the remedies available in a due process hearing, but instead provides that a court "shall grant such relief as the court determines is appropriate."  20 U.S.C. § 1415(i)(2)(C)(iii).

## STATEMENT OF FACTS

### Background

26.     Plaintiff M.A. was a student at Wall High School and suffered throughout her time at Wall High School with severe disabilities.

27.     She was classified as entitled to special education and related services from the District pursuant to the IDEA.

28.     M.A.'s IEPs have always included numerous accommodations to reduce the anxiety that she experienced in the school environment.  These accommodations included, but were not limited to, modification of classwork, homework and tests as needed, as well as extended time for tests and assignments.

29.     Unfortunately, the District in general, and certain teachers in particular, routinely failed to implement the accommodations.

30.     M.A.'s disabilities often resulted in her being absent from or tardy to school.

31.     In many circumstances, the District did not penalize M.A. for absences because they were a manifestation of her disability.

32.     Nonetheless, the District refused to waive its attendance policy, continued to track M.A.'s attendance, threatened failures and disciplinary consequences as a result, and set discriminatory rules regarding M.A.'s justification for her absences.

33.     Missing classes, however, caused M.A. to fall behind in assignments and to have to make-up tests, which further impacted her ability to keep-up with schoolwork.

34.     Falling behind in schoolwork added to M.A.'s anxiety and depression.

35.     It was a vicious cycle.

36.     The limited hours of home instruction the District provided during M.A.'s extended absences were often insufficient for her to complete all work in every subject and therefore impacted her academic progress and performance in core college preparatory subjects.

37.     M.A. would often be behind in several classes and thus, unable to complete some assignments until several weeks, or even months, after the original due date.

38.     For example, M.A. took the required Driver's Ed course in 2015-2016 school year but did not sit for the state exam at school until September 2017.  M.A.'s Driver's Ed grade was changed from an "INC" to a 99 after she took the exam (more than a year after completing the course).

39.     For a time, the District routinely permitted M.A. to hand in assignments and make-up tests without penalty.

40.     Upon completion of outstanding assignments and assessments, the District would revise M.A.'s grades to reflect completed work and to reflect more accurately M.A.'s mastery of course materials.

41.     On some occasions, M.A. was unable to complete work prior to the end of the school year.

42.     In those circumstances, the District routinely provided M.A. with an opportunity to complete the work over the summer.

43.     When M.A. handed in the work, she would receive a revised grade.

44.    For example, at the close of the 2014-2015 school year, M.A.'s Freshman year, M.A. had not yet taken the final exam in French.  In a letter dated July 8, 2015, counsel for the District confirmed that once the exam was completed, M.A. would receive a final grade.  A true copy of the July 8, 2015 letter is attached hereto as Exhibit E.

45.    In that instance, the District acknowledged that it provided M.A. with "almost a year to complete the final examination."  *See Exhibit F, referred to below.*

46.    Similarly, in a letter dated August 16, 2016, counsel for the District confirmed that M.A. would be allowed to complete a replacement project in Ceramics.  A redacted copy of the August 16, 2016 letter is attached hereto as Exhibit F.

47.    In that regard, M.A. had suffered an extended absence as a result of her disability.  During her absence, the District failed to safeguard M.A.'s completed project and another student stole it.

48.    In addition, the Ceramics teacher agreed to let M.A. do a replacement project and receive a grade, and also agreed to update grades that either had not been entered or entered improperly by a long-term substitute teacher.  The Ceramics teacher, however, reneged on both promises.

49.    The August 16, 2016 letter also provided additional time to complete assignments in English.  The letter stated the District would accept a revised grade in both classes.

50.    Ultimately, the District reneged on this agreement.

51.    Indeed, the August 16, 2016 letter concludes: "The District, on several occasions, provided the parent with the information for M.A. to complete the work during the summer and to recover credits.  Neither the parent nor M.A. has followed through.  Thus far, the work has not been completed, and the credits and grades cannot be revised until then."

52.     Thus, through at least the middle of August 2016, M.A. understood that the District would permit her to continue to hand in missing work in certain classes as an accommodation for her disabilities.  (Similarly, the District permitted M.A. to complete work for English 11 the following school year, and updated her grade.  Indeed, the District continued to permit M.A. to hand in missing work through June 2018.)

53.     As noted above, by letter dated August 16, 2016, counsel for the District confirmed the District would again allow M.A. to complete assignments after the summer break and the District would accept revised grades.

54.     In a similar letter, dated July 8, 2015, counsel for the District had stated the District would address grading inaccuracies "with the teachers when they return from summer break."

55.     On several occasions, the District promised to let M.A. hand in work that had not been completed due to her illness or disability, but then reneged on those promises; examples include French I, Freshman Seminar, and History.

56.     For example, M.A. completed missing assignments for Freshman Seminar.  As a result of miscommunications within the District, the District never authorized an instructor to receive the outstanding assignments; the assignments were never graded; and the final grades remain unchanged.

57.     Other grading inaccuracies resulted from the District's failure to provide appropriate home instruction as well as its failure to properly and fully implement M.A.'s IEPs.

58.     The District's failure to accommodate M.A., by its failure to implement M.A.'s IEP; failure to provide qualified home instructors; and failure to follow through on its promises with respect to completed outstanding work was a factual cause of a reduction in M.A.'s grades.

59.     The District's ultimate failure to correct M.A.'s final grades to compensate for its failure to appropriately accommodate her resulted in a substantial and material reduction in M.A.'s overall grade point average, and the substantial and material reduction in several individual grades.

60.     These reductions in her grades substantially limit M.A.'s options for post-secondary education and employment.

**The Proceedings Before The OAL.**

61.     On or about June 13, 2018, Plaintiff's mother, D.A., filed a Parental Request for Mediation with the New Jersey Department of Education, Office of Special Education Programs.

62.     Following an unsuccessful mediation, the Request for Mediation was converted to a Petition for Due Process.

63.     ALJ Scarola issued the April 25th Order, in which she held that "[t]he Board's motion for dismissal with respect to a reexamination of grades and school records . . . is **GRANTED**."  (Emphasis original).

64.     On January 31, 2020, ALJ Scarola , entered an Order of Voluntary Dismissal as to all remaining claims, thereby rendering her April 25th Order a "final" decision.

65.     The January 31, 2020 Order of Voluntary Dismissal further provided that, "[t]his decision is final pursuant to 20 U.S.C. § 1415(i)(1)(A) and 34 C.F.R. § 300.514 (2018) and is appealable by filing a complaint and bringing a civil action either in the Law Division of the Superior Court of New Jersey or in a district court of the United States."

66.     In dismissing the Due Process Petition, the OAL claimed that the Due Process Petition was improperly raised in a special education due-process hearing.

67.     Plaintiff hereby appeals the April 25th Order, as made final by the January 31, 2020 Order of Voluntary Dismissal.

## CAUSES OF ACTION

## AS AND FOR A FIRST CAUSE OF ACTION

### (Appeal Pursuant to 20 U.S.C. § 1415)

68.    Plaintiff incorporates by reference the allegation of the preceding paragraphs as if fully restated here.

69.    The District denied Plaintiff a FAPE through, among other things, failure to accommodate M.A.'s disabilities in its grading policies and attendance records.

70.    Plaintiff raised this issue in a due process matter.

71.    By way of relief, Plaintiff requested that "[a]ll of [M.A.'s] grades, from ninth grade onward, must be revisited in light of Wall's repeated failures to accommodate her disabilities."

72.    Plaintiff also requested that "[M.A.'s] school records must be amended to reflect the accommodations in her IEP and be corrected for factual accuracy."

73.    The available remedies for a violation of the IDEA are very broad and include that a court "shall grant such relief as the court determines is appropriate."   20 U.S.C. § 1415(i)(2)(C)(iii).

74.    That relief should include, in an appropriate circumstance, a correction of a student's grades and other academic records consistent with her disability.

75.    Nonetheless, the OAL held: "The proper venue to dispute M.A.'s grades and records is through a general education case, not a special education due-process hearing. Accordingly, the petitioner's claim regarding re-examination of school records is dismissed."

76.    The OAL erred.

## AS AND FOR A SECOND CAUSE OF ACTION
### Appeal Pursuant to Section 504 of the Rehabilitation Act

77.     Plaintiff incorporates by reference the allegation of the preceding paragraphs as if fully restated here.

78.     Section 504 of the Rehabilitation Act of 1973 ("Section 504") prohibits public entities, such as local educational agencies, from discriminating against individuals with disabilities.

79.     Pursuant to these laws, public schools are prohibited from excluding students with disabilities from participating in or receiving the benefits of a school's services, programs, or activities, and such exclusion constitutes disability discrimination.

80.     The District is a local educational agency as defined by Section 504.

81.     M.A. is an individual with a disability.

82.     By failing to provide reasonable accommodations for M.A.'s disabilities, the District denied M.A. the privileges and benefits of full participation in the public school program.

83.     By failing to provide M.A. a FAPE, the District violated Section 504.

84.     The District denied Plaintiff a FAPE through, among other things, failure to accommodate M.A.'s disabilities in its grading policies and attendance records.

85.     Plaintiff raised this issue in a due process matter.

86.     By way of relief, Plaintiff requested that "[a]ll of [M.A.'s] grades, from ninth grade onward, must be revisited in light of Wall's repeated failures to accommodate her disabilities."

87.     Plaintiff also requested that "[M.A.'s] school records must be amended to reflect the accommodations in her IEP and be corrected for factual accuracy."

88.     The available remedies for a violation of Section 504 are very broad, include both legal and equitable remedies, and are at least co-extensive with those available under the IDEA.

89.     That relief should include, in an appropriate circumstance, a correction of a student's grades and other academic records consistent with her disability.

90.     Nonetheless, the OAL held: "The proper venue to dispute M.A.'s grades and records is through a general education case, not a special education due-process hearing. Accordingly, the petitioner's claim regarding re-examination of school records is dismissed."

91.     The OAL erred.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands the following relief:

A.      An Order reversing the April 25th Order, and remanding this matter to the Office of Administrative Law for a due process hearing.

B.      An award of Plaintiff's reasonable attorneys' fees and expenses in accordance with 20 USCA. § 1415(i)(3)(b) and *H.E. v. Walter D. Palmer Leadership Learning Partners Charter School,* 873 F.3d 406 (3d Cir. 2017).

C.      Such other and further relief as the Court deems equitable and just.

Dated: April 28, 2020                          JOHN RUE & ASSOCIATES, LLC
                                               Attorneys for Plaintiff

                                               _____
                                               Donald A. Soutar

12

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

I certify that, to the best of my knowledge, this matter is not the subject of any other action

pending in any court or of any pending arbitration or administrative proceeding.

Dated: April 28, 2020                                JOHN RUE & ASSOCIATES, LLC
                                                               Attorneys for Plaintiff

                                                               _____
                                                               Donald A. Soutar

## DESIGNATION OF TRIAL COUNSEL

Donald A. Soutar, of the law firm of John Rue & Associates, LLC is hereby designated as trial
counsel.

Dated: April 28, 2020                                JOHN RUE & ASSOCIATES, LLC
                                                               Attorneys for Plaintiff

                                                               _____
                                                               Donald A. Soutar

# EXHIBIT A



### *State of New Jersey*
OFFICE OF ADMINISTRATIVE LAW

<u>**ORDER   ON   MOTION   FOR**</u>
<u>**DISMISSAL**</u>
OAL DKT. NO. EDS 12907-18
AGENCY DKT. NO. 2019-28579

**D.A. ON BEHALF OF M.A.,**

      Petitioner,

         v.

**WALL TOWNSHIP BOARD OF**
**EDUCATION,**

      Respondent.

       **Donald A. Soutar**, Esq., appearing for petitioner[1] (John Rue & Associates, attorneys)

       **Gabrielle Pettineo**, Esq., appearing for respondent (Kenney, Gross, Kovats & Parton, attorneys)

BEFORE **SUSAN M. SCAROLA**, ALJ (RET., ON RECALL):

### <u>STATEMENT OF THE CASE</u>

     The petitioner, D.A., on behalf of the child M.A., alleges that the respondent, the Wall Township Board of Education (District), failed to provide a free and appropriate

---

[1]  M.A. has reached the age of eighteen and is able to participate in these proceedings.  M.A. has authorized D.A. to participate on her behalf if she is unable to.

public education in violation of the Individuals with Disabilities Education Act (IDEA) and New Jersey special education laws by failing to provide a transition plan, failing to implement her individualized education program (IEP), failing to provide her with home instruction, and improperly communicating with professionals.  The petitioner seeks another year of schooling for M.A., re-visitation of her grades from the ninth through the twelfth grades, amendment of school records, and compensatory education.

The District alleges that M.A. made meaningful educational progress during the years she attended school within the District, that her IEP was fully implemented, that she has met all the requirements for graduation, and that she has no need of further special education services.

## PROCEDURAL HISTORY

On June 12, 2018, the petitioner filed for mediation by the Office of Special Education Programs (OSEP) in place of a resolution session.  On August 2, 2018, after the mediation session was not productive, the petitioner requested that the matter be converted into a due-process hearing.  On September 5, 2018, OSEP transmitted petitioner's claim to the Office of Administrative Law, where it was filed.   N.J.S.A. 52:14B-1 to -15; N.J.S.A. 52:14F-1 to -13.

On December 13, 2018, the Board moved for partial dismissal of the claims.  On February 6, 2019, the petitioner filed a brief in opposition to the Board's motion for summary decision and in support of a motion to amend the petition for due process.

## FACTUAL DISCUSSION

M.A., now eighteen years old, attended Wall High School for ninth through twelfth grades, where she was classified as eligible for special education and related services under the category of "other health impaired" based upon a diagnosis of Redacted

Motion to Dismiss at 2; Amended Pet. at 2.  Throughout high school, M.A.'s disabilities allegedly caused her to

be absent from school and to fall behind on assignments.  M.A.'s IEPs were therefore developed to assist her in mastering essential material and making appropriate academic progress despite these absences.  Pet'r Opposition Motion at 2.

Throughout all four years of high school, she was given additional time to complete tests and assignments without penalty.  Motion to Dismiss, p. 3.  She was also provided with home instruction during absences, but this instruction was limited, and M.A. had difficulty completing her work, often falling behind in several classes and handing in assignments long after the due date.   Motion to Dismiss at 3; Pet'r Opposition Motion at 3.  For the 2015–2016 school year, home instruction exceeded thirty consecutive days, but the District did not convene another meeting to review M.A.'s IEP.  Pet'r Opposition Motion at 4.

For the 2017–2018 school year, M.A. was placed in a pull-out resource replacement classroom for English and a pull-out resource support classroom for chemistry in accordance with her IEP.  Motion to Dismiss at 2.  She also received weekly individual counseling, and quarterly behavior-intervention consultation, and was excused for her chronic lateness and many absences.  Id. at 2–3.

In June 2018, M.A. was eligible for graduation after completing the necessary credits and maintaining the required GPA mandated by the State and the District. Motion to Dismiss at 3.  Based upon M.A.'s functions and abilities, the child study team (CST) determined that she did not need extended schooling until the age of twenty-one. Ibid.  M.A.'s mother, D.A. (petitioner), disagreed and filed a Request for Mediation on behalf of her daughter in June 2018.  In the request, petitioner alleged that the District did not plan for M.A.'s transition out of high school, discriminated against her the entire four years of high school by failing to implement her IEPs and failing to provide her with home instruction, and improperly communicated with her professionals and coach. Mediation Request at 2.  Petitioner requested another year of schooling for M.A., re-visitation of her grades from ninth to twelfth grade, amendment of school records to correct factual inaccuracies, and compensatory education because of both the District's inadequate home instruction and improper access to confidential communications.  Id. at 3.

The parties unsuccessfully mediated in August 2018 and the matter was converted into a due-process petition. Motion to Dismiss at 3. The parties attempted to settle in September 2018 but did not reach a resolution. Although M.A. walked at graduation in June 2018, she is currently attending a fifth year at Wall High School under the stay-put provision.[2] Ibid.

On December 14, 2018, the District filed a motion for partial dismissal of the petition for due process. The motion specifically sought to dismiss petitioner's claims for compensatory education and re-visitation of grades and school records. On February 6, 2019, petitioner filed a brief in opposition to the District's motion for summary decision and in support of a motion to amend the petition for due process. In her amended due-process petition, petitioner alleged that the District failed to provide M.A. a free appropriate public education under both the Individuals with Disabilities Education Act and Section 504 of the Rehabilitation Act. Petitioner further alleged that the District inflicted severe emotional distress by removing M.A. from the tennis team and interfering with her medical professionals. Amended Petition at 14–16.

Petitioner seeks compensatory education for M.A. due to the District's denial of a free appropriate public education, appropriate transition planning to prepare M.A. for post-graduate education and employment, an order that the District must review and revise M.A.'s grades, and compensatory, consequential, and punitive damages for infliction of emotional distress. Id. at 17–18.

---

[2] The stay-put provision states:

> Pending the outcome of a due process hearing, including an expedited due process hearing, or any administrative or judicial proceeding, no change shall be made to the student's classification, program or placement unless both parties agree, or emergency relief as part of a request for a due process hearing is granted by the Office of Administrative Law according to (m) above or as provided in 20 U.S.C. § 1415(k)4 as amended and supplemented.

> [N.J.S.A. 6A:14-2.7(u).]

## **LEGAL DISCUSSION**

While N.J.A.C. 1:1-12.1 does not specifically limit the types of motions that may be made in administrative hearings, and a "motion to dismiss" is not otherwise precluded under the Uniform Administrative Procedure Rules (APA), the more common method for resolving a case on the papers without a plenary hearing in administrative proceedings is by a motion for summary decision under N.J.A.C. 1:1.-12.5. Therefore, the District's motion for partial dismissal shall be treated as a motion for partial summary decision.

**I.     The Individuals with Disabilities Education Act and Section 504 of the Rehabilitation Act of 1973.**

The issues in this matter arise from an alleged denial of a free appropriate public education (FAPE) under both the Individuals with Disabilities Education Act and Section 504 of the Rehabilitation Act.

The IDEA is designed to "ensure that all children with disabilities have available to them a FAPE that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). A FAPE means special education and related services that: a) have been provided at public expense, under public supervision and direction, and without charge; b) meet the standards of the State educational agency; c) include an appropriate preschool, elementary, or secondary school education in the State involved; and d) are provided in conformity with the IEP requirements. 20 U.S.C. § 1401(9). An IEP is the primary vehicle for providing disabled students with the required free and appropriate education. See generally 20 U.S.C. § 1414(d). An IEP is a written statement developed for each child that explains how a FAPE will be provided to the child. 20 U.S.C. § 1414(d)(1)(A). New Jersey has adopted regulations implementing the IDEA through N.J.A.C. 6A:14-1.1 et seq.

Children with disabilities are protected from discrimination in the elementary and secondary education context under Section 504, 29 U.S.C. § 794(a), which states that a

public school "shall provide a free appropriate public education to each qualified handicapped person who is in the recipient's jurisdiction, regardless of the nature or severity of the person's handicap." 34 C.F.R. § 104.33(a).[3]

A handicapped person under Section 504 is "any person who (i) has a physical or mental impairment which substantially limits one or more major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." 34 C.F.R. § 104.3(j)(1) (2018). Section 504 defines a FAPE to mean the provision of general or special education and related aids and services that are designed to meet the individual needs of students with disabilities as adequately as the needs of nondisabled students are met. 34 C.F.R. § 104.33(b)(1)(i) (2018). "Implementation of an [IEP] developed in accordance with the Education of the Handicapped Act is one means of meeting the standard established in paragraph (b)(1)(i) of this section." 34 C.F.R. § 104.33(b)(2) (2018). Thus, Section 504's standard applies to students receiving services under the IDEA, as well as students who only need modifications, accommodations, or related aids and services to participate in the general education curriculum. Section 504 requires courts to consider whether students with disabilities are receiving educational services as effective as those made available to their nondisabled peers. Endrew F. v. Douglas Cnty. Sch. Dist. RE-1, 137 S. Ct. 988, 1001–02 (2017); 34 C.F.R. § 104.33(b)(1)(i) (2018).

## II.   Petitioner's request to amend her due-process petition.

Petitioner requests that her motion for leave to amend the due-process petition be granted because the District will suffer no prejudice. The District, on the other hand, "strenuously and fervently objects to petitioner's eleventh hour" motion to amend.

A petition for due process may only be amended with the consent of the opposing party or leave of court. N.J.A.C. 6A:14-2.7(i). Furthermore, "pleadings may be freely amended when, in the judge's discretion, an amendment would be in the

---

[3] The State of New Jersey, and its local school districts, are recipients of federal funds earmarked for the operation of education programs and activities and are, therefore, subject to the requirements of Section 504 and its implementing regulations, 34 C.F.R. § 104.1 to 104.61 (2018).

OAL DKT. NO. EDS 12907-18

interest of efficiency, expediency and the avoidance of over-technical pleading requirements and would not create undue prejudice."  N.J.A.C. 1:1-6.2(a).

Parties have been permitted to amend petitions where the underlying facts and claims are the same.  For example, in T.F.S. ex rel. C.M.S. v. Board of Education, South Brunswick Township, EDU 6674-02, Final Decision (November 2, 2005), http://njlaw.rutgers.edu/collections/oal/, the Commissioner of Education rejected an administrative law judge's (ALJ) denial of an amended petition where parents initially challenged a school board's decision denying their first daughter transportation services and, after that daughter had completed middle school during the course of the appeal, wanted to substitute their younger daughter in the case.  The Commissioner held that there was no reasonable purpose to require the parents to file an entirely new petition given that all of the underlying facts of the matter, other than the name of the specific child involved, were identical.

Conversely, in P.F. v. Mine Hill Township Board of Education, EDS 07465-07, Final Decision (July 19, 2007), http://njlaw.rutgers.edu/collections/oal/, the ALJ denied a request to amend a due-process complaint because the amended petition raised new and additional matters not covered in the initial filing, and therefore amounted to a new and different complaint.

The instant matter differs from P.F. and is more analogous to T.F.S. because the proposed amended petition does not set forth any new allegations, but rather expands upon those in the original request for mediation.  Both the mediation request and the amended petition allege claims against the District for failure to provide adequate home instruction, failure to follow and properly implement M.A.'s IEPs, failure to provide transition services, and improperly communicating with M.A.'s professionals and coach. See generally Mediation Request and Amended Pet.  The petitioner should not have to file an entirely new due-process petition for identical facts and claims.

Moreover, allowing petitioner to amend her complaint does not prejudice the District because no proceedings, other than a failed settlement attempt, have taken place.  The parties had a phone conference on February 12, 2019; however, no oral

arguments or hearings have taken place yet.  Thus, in the interest of efficiency and because there is no prejudice to the District, the petitioner shall be permitted to amend her petition.

### III.   Petitioner's request for re-examination of M.A.'s grades.

The District claims that petitioner's request for re-visitation of M.A.'s grades is improperly raised in a special education due-process hearing.  Petitioner, however, argues that she is not challenging the District's policies but rather is challenging whether the district provided a FAPE.  N.J.A.C. 6A:14-2.7(a) governs the standard for what may be addressed in due-process petitions, and states:

> A due process hearing is an administrative hearing conducted by an administrative law judge.  For students age three through 21 years, a due process hearing may be requested when there is a disagreement regarding identification, evaluation, reevaluation, classification, educational placement, the provision of a free, appropriate public education, or disciplinary action.

New Jersey regulations limit the availability of due-process hearings to "those subject matters expressly enumerated within" their provisions and "challenges to the contents of pupil records are not the type of subject matter contemplated by these regulations." R.S. v. Hillsborough Bd. of Educ., EDS 2168-00, Final Decision (April 18, 2000), http://njlaw.rutgers.edu/collections/oal/; see also D.O. ex rel. M.O. v. Jackson Twp. Bd. of Educ., EDS 14390-15, Final Decision (March 21, 2016), http://njlaw.rutgers.edu/collections/oal/ (due-process hearing was dismissed because parents' request that they be supplied with student records did not fall within the scope of matters enumerated in N.J.A.C. 6A:14-2.7(a)).

Additionally, N.J.A.C. 6A:32-7.7(b) states that requests to change school records must be submitted in writing to the chief school administrator detailing the specific issue and, if the matter is not resolved, it may be appealed to the board of education and then to the Commissioner of Education.  "Appeals relating to student records of students with

disabilities shall be processed in accordance with the requirements of [N.J.A.C. 6A:32-7.7(b)]."  N.J.A.C. 6A:32-7.7(c).

This issue has been addressed in prior cases and due-process petitions have consistently been dismissed if the dispute did not fall within the parameters of special education due-process hearings.  In R.S., the ALJ dismissed a dispute concerning alleged inaccuracies of an educationally disabled eighth-grader's school records after he had moved out of state.  The judge stated that inaccuracies in records or expungements do not fall under the statutory provisions of the special education due-process hearing requirement in N.J.S.A. 6A:14-2.7(a), and dismissed the case for "lack of jurisdiction, with a recommendation that the appeal would be more appropriately addressed by the Commissioner of Education."  R.S. v. Hillsborough Bd. of Educ., EDS 2168-00, Final Decision (April 18, 2000), http://njlaw.rutgers.edu/collections/oal/.

In M.R. v. Northern Valley Board of Education, EDS 01527-05, Final Decision (March 22, 2005), http://njlaw.rutgers.edu/collections/oal/, the ALJ refused to address a disagreement regarding comments and grades given to a classified student.  The ALJ stated that the dispute did not fall within the constraints of N.J.A.C. 6A:14-2.7(a) and held that the forum for challenging grades and records

> would be an action filed with the Commissioner of Education and pursued through that administrative process—one which is extremely different from the special education context wherein the ALJ's decision on subject matter properly before him or her is "final."

The judge dismissed the due-process request, stating the case was not "cognizable as a special education dispute."

Here, the petitioner requested a re-visitation of M.A.'s grades and school records through a mediation request, which then was converted to a due-process petition.  In the amended petition, petitioner seeks "[a]n order that the District review and revise grades in academic classes based on completed work that was not previously graded and included in the calculation of M.A.'s final grades."  Pet'r Amended Pet. at 17.  In

essence, petitioner is still seeking a change in M.A.'s grades, even though she has attempted to relate this to a denial of a FAPE.  See Pet'r Opposition at 9–11.

As in <u>R.S.</u> and <u>N.R.</u>, these specific claims fall outside the scope of N.J.A.C. 6A:14-2.7(a) because they do not involve a "disagreement regarding identification, evaluation, reevaluation, classification, educational placement, the provision of a free, appropriate public education, or disciplinary action," rather, the issue here is changing M.A.'s grades.  Furthermore, N.J.A.C. 6A:32-7.7(b) and (c) specifically state the proper procedure for requesting a change to records—petitioner should have sent a written request to the chief school administrator and appealed to the board of education if the request was not resolved, and then to the Commissioner if necessary.

The proper venue to dispute M.A.'s grades and records is through a general education case, not a special education due-process hearing.  Accordingly, the petitioner's claim regarding re-examination of school records is dismissed.

## IV.  Petitioner's claim for compensatory and punitive damages for infliction of emotional distress.

In her mediation request, petitioner initially raised claims for compensatory education for the District's alleged "exacerbation of M.A.'s disabilities through improper access to privileged and confidential communications."  However, the amended petition does not address these claims and seeks monetary damages for infliction of emotional distress.  Pet'r Amended Pet. at 17.

Compensatory and punitive damages are not available remedies under Section 504 in the administrative context.  Under Section 504, "[i]n any action or proceeding to enforce or charge a violation of [Section 504] the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs," 29 U.S.C. § 794a(b).  Compensatory damages are available as a remedy.  <u>S.H. v. Lower Merion Sch. Dist.</u>, 729 F.3d 248, 261 (3d Cir. Pa. 2013).

However, there is an absence of any case law or other authority finding that hearing officers have the power to award attorney's fees or money damages to a prevailing party at a Section 504 due-process hearing. Instead, it would appear that the discretionary authority to make such awards lies exclusively with the courts. Furthermore, punitive damages are not an available remedy under Section 504. Barnes v. Gorman, 536 U.S. 181 (2002).

Compensatory and punitive damages are also not an available remedy under the IDEA. Chambers v. Sch. Dist. of Philadelphia Bd. of Educ., 587 F.3d 176, 186 (3d Cir. 2009).

> Tort-like damages are simply inconsistent with IDEA's statutory scheme. The touchstone of a traditional tort-like remedy is redress for a broad range of harms associated with personal injury, such as pain and suffering, emotional distress, harm to reputation, or other consequential damages. By contrast, the touchstone of IDEA is the actual provision of a free appropriate public education. . . . Compensatory or punitive damages would transform IDEA into a remedy for pain and suffering, emotional distress, and other consequential damages caused by the lack of a free appropriate public education. Such a result would be inconsistent with the structure of the statute, which so strongly favors the provision of and, where appropriate, the restoration of educational rights.
>
> [Id. at 185 (quoting Sellers v. Sch. Bd. of Manassas, 141 F.3d 524, 527 (4th Cir. 1998)).]

Here, petitioner seeks to obtain monetary relief for M.A. based on the District's alleged infliction of emotional distress. Specifically, petitioner argues that the District's conduct in removing M.A. from the tennis team and interfering with M.A.'s medical professionals was "outrageous and transcended the bounds of decency." Pet'r Amended Pet. at 16. Petitioner seeks "compensatory, consequential, and punitive damages as may be proven at a civil trial, after exhaustion of administrative remedies." Id. at 17. The District correctly argues that petitioner's assertion of an infliction-of-emotional-distress claim has nothing to do with a denial of a FAPE. Resp't Br. at 7. There is no way to provide a remedy for infliction of emotional distress through the IDEA

because this violation does not fall within the statute.   Moreover, as stated above, compensatory and punitive damages cannot be awarded in administrative hearings. Therefore, because monetary damages are not available under the IDEA or in the administrative context, this claim asserted by the petitioner should be dismissed.

## V.   Petitioner's claim for compensatory education for inadequate home instruction.

The District argues that petitioner's claims for compensatory education for home instruction that dates back prior to June 2016 are barred by the two-year statute of limitations set forth in N.J.A.C. 6A:14-2.7(a)(1).  The IDEA broadly authorizes courts to provide appropriate relief, including compensatory education, to children who have been deprived by their state or local government agencies of a FAPE.  G.L. v. Ligonier Valley Sch. Dist. Auth., 802 F.3d 601, 604 (3d Cir. 2015).  Compensatory education is a judicially created equitable remedy intended to "'compensate [the student] for rights the district already denied . . . because the School District violated [the] statutory rights while [the student] was still entitled to them.'"  Ferren C. v. Sch. Dist. of Philadelphia, 612 F.3d 712, 717 (3d Cir. 2010) (quoting Lester H. v. Gilhool, 916 F.2d 865, 872 (3d Cir. 1990)).

The purpose of compensatory education is to "'replace [] educational services the child should have received in the first place,'" and such a remedy "'should aim to place disabled children in the same position they would have occupied but for the school district's violations of IDEA.'"  Id. at 717–18 (quoting Reid v. Dist. of Columbia, 401 F.3d 516, 518 (D.C. Cir. 2005)).   Thus, compensatory education is an equitable remedy intended to bring a student to the point where the student would be had a FAPE not been denied.

Importantly, "[t]he FAPE analysis for compensatory education is not backward looking—courts must look at a school district's actions during the period of the alleged deprivation." Mary Courtney T. v. Sch. Dist. of Philadelphia, 575 F.3d 235, 251 (3d Cir. 2009).  The school district also has an independent duty to identify the needs of the student, within a reasonable time period, and to work with the parents and the CST to

expeditiously design and implement an appropriate program.  Ibid.  When a school district has failed in its responsibility and parents have taken appropriate and timely action under the IDEA, a disabled student is entitled to compensatory education for the period of their denial of a FAPE minus the time reasonably required for the school district to rectify the problem.  Id. at 626.

N.J.A.C. 6A:14-2.7(a)(1) establishes a two-year statute of limitations for IDEA claims, stating, "A request for a due process hearing shall be filed within two years of the date the party knew or should have known about the alleged action that forms the basis for the due process petition."   This limitations period "begins to run once the plaintiff did discover or a reasonably diligent plaintiff would have discovered the facts constituting the violation—whichever comes first." G.L., 802 F.3d at 614 (quoting Merck & Co. v. Reynolds, 559 U.S. 633, 653 (2010)).

In other words, the "knew or should have known of the injury to the child" date starts to run when a parent knows or should have known that his child needed services under the IDEA.  The court stated, "claims that are known or reasonably should be known to parents must be brought within two years of that 'knew or should have known' date, and parents may not, without satisfying one of the two statutory exceptions, knowingly sit on their rights or attempt to sweep both timely and expired claims into a single 'continuing violation' claim brought years later." Id. at 625 (quoting D.K. v. Abington Sch. Dist., 696 F.3d 233, 248 (3d Cir. 2012)).   The knew-or-should-have-known date is determined by the parents/guardians' knowledge that the action amounted to a violation. E.G. v. Great Valley Sch. Dist., No. 16-5456, 2017 U.S. Dist. Lexis 77920, 21–22 (E.D. Pa. 2017) (establishing that the knew-or-should-have-known date is not the date of the alleged action, but when the parents became aware that the action was a violation of the IDEA statute).

In G.L., the Third Circuit concluded that the child's right to compensatory education under the IDEA upon proof of violation was not curtailed by the statute of limitations because the claim was filed within two years of the date his parents knew or reasonably should have known of his injury.  802 F.3d at 625–26.  The court said that this conclusion is consistent with congressional intent "that a due process complaint

must be presented 'within 2 years' of a parent's reasonable discovery date, not that remedies be limited to injuries that occurred 'not more than 2 years before' that date." Id. at 625.

Here, the District asserts that petitioner has made "sweeping allegations and claims" concerning all four years of M.A.'s high-school education.  It argues that the petitioner was represented by various attorneys throughout M.A.'s entire educational experience, and thus knew or should have known that the District denied her child a FAPE earlier than the June 2018 filing date.  See Motion to Dismiss at 10.  Therefore, the District argues, the two-year statute of limitations must be enforced.  Ibid.  However, the District did not submit any documentation to support its position.  Simply stating that having legal counsel means a parent knew or should have known the school was denying her child a FAPE is a broad legal conclusion that is not supported by any evidence.  Thus, a hearing is needed to determine petitioner's knew-or-should-have-known date and whether compensatory-education claims dating back more than two years are barred.

## CONCLUSION

Based upon the foregoing, the Board's motion for dismissal with respect to a re-examination of grades and school records, as well as regarding compensatory education based upon violations of confidentiality or infliction of emotional distress, is granted.  The Board's motion with respect to the statutory bar on compensatory-education claims with respect to claims the petitioner knew or should have known of is denied.

The petitioner's motion to amend her petition is granted.

## ORDER

The Board's motion for dismissal with respect to a reexamination of grades and school records, as well as its motion for dismissal of compensatory education based upon violations of confidentiality or infliction of emotional distress, is **GRANTED**.  The

OAL DKT. NO. EDS 12907-18

Board's motion for dismissal of claims exceeding the two-year period when petitioner knew or should have known of the denial of FAPE is **DENIED** without prejudice.

The petitioner's motion to amend her petition is **GRANTED**.  An answer to the Amended Complaint shall be filed by the District within ten days.  The matter is scheduled for a telephone conference on April 29, 2019, at 3:30 p.m.

April 25, 2019
DATE

**SUSAN M. SCAROLA**, ALJ (Ret., on recall)

Date Mailed to Parties:

SMS/lam

OAL DKT. NO. EDS 12907-18

**APPENDIX**

**WITNESSES**

**For petitioner:**

     None

**For respondent**

     None

**EXHIBITS**

**For petitioner:**

     Brief

**For respondent:**

     Brief

# EXHIBIT B

## Parental Request for
## Mediation/Due Process Hearing/Expedited Due Process Hearing

**PLEASE NOTE:** In accordance with IDEA 2004, you must complete all the information requested as fully and accurately as possible. Also, you must identify the specific reasons for the disagreement with the identification, evaluation, eligibility, classification, placement or provision of programs or related services for your child. If the information is incomplete or the reasons for your disagreement are vague or unclear, the district may challenge the sufficiency of your request for a due process hearing. Requests for mediation only are not subject to a sufficiency challenge.

The entire petition must be filed with the Office of Special Education Programs (OSEP) and one copy of the entire petition must be filed with the district.

Beginning July 1, 2016, the (OSEP) will accept requests for mediation, a due process hearing, emergent relief (petition only; attachments must be sent separately via regular mail) electronically through an OSEP-maintained and monitored email address. The newly created email address will be used exclusively for the submission of requests and will not be used to communicate with the parties or their representatives. Completed petitions must be saved as Adobe PDF documents and submitted as an attachment to an email sent to: osepdisputeresolution@doe.state.nj.us. Adobe Acrobat Reader is document reader software that is available for free download at: https://get.adobe.com/reader/. Please note that requests for a complaint investigation, enforcement of a mediation agreement or enforcement of a final decision will NOT be accepted via electronic mail and must be mailed or faxed to the OSEP to be accepted and processed.

Date:      June 12, 2018

To:      Director
         Office of Special Education Programs
         NJ Department of Education
         P.O. Box 500
         Trenton, NJ 08625-0500

\*From: DRed ARedacted _____

        Full name of parent(s) submitting the request
Address: Redacted          **Spring Lake Heights, NJ 07762**

\*County: **Monmouth**
\*Home Phone: Redacted                    \*Fax: (____) _____ - _____
\*Work Phone: (____) _____ - _____        \*Cell Phone: (____) _____ - _____

\*Please check whether you will be represented by __X_ an attorney or assisted by __an advocate.

\*Name of attorney or advocate: **John Rue & Associates**
\*Address: 2 Broad St., **Ste. 607, Bloomfield NJ 07003**
\*Phone: **(862) 283-3155**                 \*Fax: (____) _____ - _____
Child's Name    : **M**Redact **A**Redacted          \*Date of Birth: Redacted

\*Child's Address (If different from parent's address): _____

\*District of Residence (district in which parent resides): **Wall Twp.,**

School the student attends: **Wall High School**
*District where the school is located: **Wall Twp.**
*Disability category: **Other Health Impaired**

Please check **ONE** of the following boxes:

**X** **Mediation Only** - Please complete items 1 through 5 below

☐ **Due Process Hearing** - Please complete items 1 through 5 below

☐ **Expedited Due Process Hearing** *for disciplinary matters only* - Please complete items 1 through 5 below
*************************************************************************************

1. **Required Steps for a Due Process Hearing or an Expedited Due Process Hearing (discipline matters only)** – When a parent requests a hearing, the district is given an opportunity to resolve the matter before the hearing is scheduled. The district is required to conduct a resolution session (within 15 days for a due process hearing and 7 days for an expedited due process hearing) and you are required to participate. You and the district may choose to participate in mediation conducted by the OSEP in place of a resolution session, or both parties can agree to waive the resolution session and proceed directly to a hearing.

    **Upon receipt of this notice, a representative of the school district must contact you to arrange a resolution session. If you would like to have the district consider other options, please check ONE of the following:**

**X** I am requesting a mediation conference conducted by the OSEP in place of a resolution session. **If the district agrees to mediation in place of a resolution session, a representative of the district must contact the OSEP at 609-984-1286 to facilitate the scheduling of the mediation conference.**

    ☐ I want to waive the resolution conference and proceed directly to a due process hearing.

---

By signing below I am waiving the resolution session and mediation. An authorized representative of the district must also agree *in writing* to waive the resolution period.

    *Signature:*

---

2. **Please provide a description of the nature of the problem and any facts related to the problem. Attach additional sheets as needed:**

    *The district has failed to effectively plan for M___ transition. ___ is not prepared to transition to adult life, e.g., college or the work force.*

    *Additionally, for her entire time in high school, the district has discriminated against M___ by failing to effectively implement the accommodations stated in her IEPs, and failing to provide competent home instructors, when required. This has resulted in improperly low grades, diminished social and extracurricular opportunities, and absences and erroneous disciplinary measures being entered on her transcript. Further, the district has improperly communicated with M___ professionals and coach, which has led to increased anxiety, depression, and school absences.*

---

3. **Please provide a description of how this problem could be resolved. Attach**

additional sheets as needed:

1. M[Redacte] *needs to be retained in high school for at least another year. During that year, Wall must effectively plan for her transition to college or the work force.*
2. *All of M*[Redacte] *grades, from ninth grade onward, must be revisited in light of Wall's repeated failures to accommodate her disabilities.*
3. [Redacted] *must be provided with compensatory education to redress Wall's failure to provide her with adequate home instruction, when required.*
4. M[Redacte] *school records must be amended to reflect the accommodations in her IEP and be corrected for factual accuracy.*
5. M[Redac] *must be provided with compensatory education to account for Wall's exacerbation of* [Redacted] *disabilities through improper access to privileged and confidential communications.*

---

**4. A copy of this petition must be provided to the other party. Please check to verify.**

___ A copy of this request was sent to the superintendent of the school district:

Name of the superintendent: *Cheryl Dyer*

Address: *1620 18th Avenue, Wall NJ 07719*

---

Redacted

**5. Parent's signature:** _

**Note to parent(s) requesting a due process hearing:** The IDEA Amendments of 2004 provide that attorneys' fees may be reduced if the parent or parent's attorney unreasonably protracted the final resolution of the controversy or the attorney representing the parent did not provide to the district the appropriate information in the due process request.

2

# EXHIBIT C

John Rue, Attorney ID No. 047032005
Donald A. Soutar, Attorney ID No. 024521999
JOHN RUE & ASSOCIATES
37 Main Street
Sparta, New Jersey 07871
(862) 283-3155
*Attorneys for Petitioner*

**OFFICE OF ADMINISTRATIVE LAW**

| | |
|---|---|
| M.A.,<br><br>         PETITIONER,<br><br>v.<br><br>WALL TOWNSHIP PUBLIC SCHOOLS,<br><br>       RESPONDENT. | OFFICE OF SPECIAL EDUCATION PROGRAMS<br><br>OAL Docket No.  EDS 12907-2018 S<br>Agency Ref. No.  2019-28579<br><br><u>**VERIFIED<br>AMENDED PETITION FOR<br>DUE PROCESS**</u> |

Petitioner M.A ("Petitioner"), who resides with her mother D.A. at Redacted

Spring Lake, N.J. 07762, having reached the age of majority, hereby amends the petition for due

process previously filed by D.A. pursuant to a Parental Request for Mediation, dated June 12,

2018, to address issues that have arisen between Petitioner and Wall Township Public Schools (the

"District"), which has offices at 1620 18th Avenue, Wall, New Jersey, 07719, regarding the

District's provision of a free, appropriate public education to M.A. and discriminatory treatment

of M.A.

<u>PARTIES</u>

1.     M.A. was born on Redacted . She is an eighteen (18) year-old female student who has

    been eligible for special education and related services from the District since 2011.

2.     M.A. is currently in her fifth year of high school at Wall Township High School pursuant

    to application of the "stay put" provisions of 20 U.S.C. 1415(j).

3.  M.A. resides with her mother, D.A. at Redacted Spring Lake, N.J. 07762.

4.  The District is a public body organized pursuant to N.J.S.A. 18A:10-1, *et seq*,. to operate the Wall Township Public School District, serving students who are domiciled in Wall Township.

## JURISDICTION

5.  The Office of Administrative Law has jurisdiction to hear this matter pursuant to 20 U.S.C. §1415 (f) and N.J.A.C. 6A:14-2.7.

## STATEMENT OF FACTS

6.  M.A. attended St. Catherine's, a private Catholic school, during first grade (2006-07 school year), second grade (2007-08 school year) and the beginning of third grade.

7.  In October 2008, M.A. was enrolled in the District as a third grader.

8.  When M.A. was in fifth grade (in or around November 2010), she was diagnosed with Redacted and a 504 Plan was adopted.

9.  On or around July 26, 2011, M.A. was found eligible for special education and related services under the category Other Health Impaired ("OHI").

10. The IEP dated July 26, 2011 stated M.A. was diagnosed with Redacted Redacted . In addition, M.A. suffers from Redacted .

11. M.A.'s IEPs have always included numerous accommodations to reduce the anxiety that she experienced in the school environment. These accommodations included, but were not limited to: modification of classwork, homework and tests as needed as well as extended time for tests and assignments.

12. Unfortunately, the District, in general, and certain teachers, in particular, failed to implement the accommodations.

13. M.A.'s disabilities often resulted in her being absent from or tardy to school.

14. In many circumstances, the District did not penalize M.A. for absences because it was a manifestation of her disability.

15. Nonetheless, the District refused to waive its attendance policy, continued to track M.A.'s attendance, threatened failures and disciplinary consequences as a result, and set discriminatory rules regarding M.A.'s justification for her absences.

16. Missing classes, however, caused M.A. to fall behind in assignments and to have to make-up tests, which further impacted her ability to keep-up with school work.

17. Falling behind in school work added to M.A.'s anxiety and depression.

18. It was a vicious cycle.

19. The limited hours of home instruction the District provided during M.A.'s extended absences were often insufficient for her to complete all work in every subject and therefore impacted her academic progress and performance in core college preparatory subjects.

20. M.A. would often be behind in several classes and thus, unable to complete some assignments until several weeks, or even months, after the original due date.

21. For example, M.A. took the required Driver's Ed course in 2015-2016 school year but did not sit for the state exam at school until September 2017. M.A.'s Driver's Ed grade was changed from an "INC" to a 99 after she took the exam (more than a year after completing the course). *Compare, e.g.,* Transcripts date 6/16/2017, 7/3/2018, and 9/26/2018, true copies of which are attached hereto as Exhibits A, B, and C.

22. The District routinely permitted M.A. to hand in assignments and make-up tests without penalty.

23. Upon completion of outstanding assignments and assessments, the District would revise M.A.'s grades to reflect completed work and to reflect more accurately M.A.'s mastery of course materials.

24. At times, M.A. was unable to complete work prior to the end of the school year.

25. In those circumstances, the District routinely provided M.A. with an opportunity to complete the work over the summer.

26. When M.A. handed in the work, she would receive a revised grade.

27. For example, at the close of the 2014-2015 school year, M.A.'s Freshman year, M.A. had not yet taken the final exam in French. In a letter dated July 8, 2015, counsel for the District confirmed that once the exam is completed, M.A. would receive a final grade. A true copy of the July 8, 2015 letter is attached hereto as Exhibit D.

28. In that instance, the District has acknowledged that it provided M.A. with "almost a year to complete the final examination."

29. Similarly, in a letter dated August 16, 2016, counsel for the District confirmed that M.A. would be allowed to complete a replacement project in Ceramics. A true copy of the August 16, 2016 letter is attached hereto as Exhibit F.

30. In that regard, M.A. had suffered an extended absence as a result of her disability. During her absence, the District failed to safeguard M.A.'s completed project and another student stole it.

31. In addition, the Ceramics teacher agreed to let M.A. do a replacement project and receive a grade, and also agreed to update grades that either had not been entered or entered

improperly by a long-term substitute teacher.  The ceramics teacher, however, reneged on both promises.

32.     The August 16, 2016 letter also provided additional time to complete assignments in English.  The letter stated the District would accept a revised grade in both classes. *See* Exhibit F.

33.     Ultimately, the District reneged on this agreement.

34.     Indeed, the August 16, 2016 letter concludes: "The District, on several occasions, provided the parent with the information for M.A. to complete the work during the summer and to recover credits. Neither the parent nor M.A. has followed through. Thus far, the work has not been completed, and the credits and grades cannot be revised until then." *See* Exhibit F.

35.     Thus, through at least the middle of August 2016, M.A. understood that the District would permit her to continue to hand in missing work in certain classes as an accommodation for her disabilities.

36.     Similarly, the District permitted M.A. to complete work for English 11 the following school year, and updated her grade.

37.     Indeed, the District continued to permit M.A. to hand in missing work through June 2018.

### Failure to Provide Adequate and Appropriate Home Instruction

38.     For periods of time during each year of high school, M.A.'s doctor(s) determined her health condition precluded participation in the usual education setting.  M.A.'s doctor's requested home instruction for M.A.

39.     The District intermittently provided home instruction for core academic courses but, with specific exceptions, refused to provide home instruction for elective classes.

40.     M.A.'s passion is art.  Her stated post-graduate goals are to attend an art school or study art in college and have a career in art.  D.A. was forced to hire tutors for art classes to ensure M.A. could keep up with her art classes.

41.     In the 2015-2016 school year, the provision of home instruction exceeded 30 consecutive school days; yet the IEP Team did not meet to review, and possibly revise, M.A.'s IEP in accord with N.J.A.C. 6A:16-10(c).

42.     During the 2015-2016 school year, the District failed to provide a qualified home instructor for biology, one of the core courses required for graduation.

43.     The home instructor, Mr. Santiago, was a History teacher yet he instructed M.A. in Biology, as well.

44.     Mr. Santiago was unfamiliar with the material taught in Biology class. Lessons during home instruction often included he and M.A. looking up the necessary information on the internet.

45.     Although M.A. completed assignments with Mr. Santiago, that work was never graded or entered into the District's grading system.

46.     Subsequently, Mr. Santiago ceased working on Biology with M.A., but promised to complete the work with her over the summer.  This proved false.

47.     M.A. never received a notice of her potential failure in Biology, and was never given the option of whether Mr. Santiago should cease working on Biology.

48.     As a result, M.A. received a failing grade in biology.

49.     At the end of the 2015-2016 school year, the District advised that if M.A. wished to change the failing grade in Biology, she could complete an online course over the summer.

50.   Instead, M.A. re-took Biology in the 2016-2017 school year.

51.   Again, the District failed to provide a qualified home instructor in this subject matter.

52.   When the District finally found a qualified instructor, in May 2017, the District subsequently advised the instructor -- after only one session -- that he was no longer authorized to teach M.A.

53.   Despite numerous requests, the District has never provided any documentation related to the advertising for a biology home instructor or correspondence with the Monmouth Ocean Educational Services Commission ("MOESC") regarding provision of biology home instruction to M.A. during the 2016-2017 school year.

54.   The District has provided few, if any, records regarding home instruction including correspondence regarding approval and set up of M.A.'s home instruction services, the date and time of services, billing, correspondence, and teacher information or internal communications between District personnel.

55.   The District has never provided medical documentation from the school physician supporting the approval or denial of any of Petitioner's requests for home instruction.

56.   Records the District has provided do not support final grades in Biology and Geometry as recorded on M.A.'s transcript during the 2015-16 school year.

57.   These final grades have been a point of dispute between Petitioner and the District since they appeared on M.A.'s transcript at the end of the 2015-16 school year.

58.   *As noted above, in letter dated August 16, 2016, counsel for the District confirmed the District would again allow M.A. to complete assignments after the summer break and the District would accept revised grades. See Exhibit F.*

59.  In a similar letter, dated July 8, 2015, counsel for the District had stated the District would address grading inaccuracies "with the teachers when they return from summer break." *See* Exhibit D.

60.  On several occasions, the District promised to let M.A. hand in work that had not been completed due to her illness or disability, but then reneged on those promise; examples include French I, Freshman Seminar, and History.

61.  For example, M.A. completed missing assignments for Freshman Seminar.  As a result of miscommunications within the District, the District never authorized an instructor to receive the outstanding assignments; the assignments were never graded; and the final grades remain unchanged.

62.  Other grading inaccuracies resulted from the District's failure to provide appropriate home instruction as well as its failure to properly and fully implement M.A.'s IEPs.

**Failure to Properly Implement and Follow M.A.'s IEPs**

63.  Each school year D.A. was forced to educate M.A.'s teachers about the accommodations in M.A.'s IEPs and follow up to ensure the accommodations were being put into practice.

64.  Teachers often neglected to provide M.A. study guides a week in advance as required in her IEP.

65.  On some occasions, M.A.'s teachers did not provide her with a study guide at all.

66.  Teachers routinely ignored the requirement that M.A.'s assignments be modified and limited to only essential material.  For example, in 2016-2017, M.A. was often required to complete multiple worksheets on a specific concept in Biology and in History, multiple assignments were given for each topic covered.

67.    Despite the fact that M.A.'s IEPs for the 2015-2016 (10th grade) school year provided for in-class resource support for Foreign Language, M.A. was forced to drop French II when the District failed to provide the in-class support.

68.    Similarly, the District promised to provide an educational consultant to work with the French II teacher, but failed to do so.

69.    As a result of her not being able to take a second year of a foreign language, M.A. is unable to meet entrance requirements for colleges that require more than one year of a foreign language.

70.    The District's failure to properly implement her IEPs denied M.A. educational opportunities and benefits throughout her high school years and may impact her future.

### Failure to Provide Transition Planning and Transition Services

71.    Prior to M.A.'s turning 16 on June 26, 2016, the District did not conduct the required "age-appropriate transition assessments" needed to develop appropriate measurable post-secondary transition goals in the areas of training, education, employment and independent living.

72.    Nonetheless, without having done any type of transition assessment, the section of M.A.'s IEP for appropriate post-secondary independent living goals stated, "student demonstrates age appropriate self-help skills." A true and correct copy of M.A.'s IEP dated June 15, 2016 is attached hereto as Exhibit E.

73.    A second sentence in this section states, "M.A. will work towards living independently." Yet, the activities/strategies to achieve this goal stated, "the student's daily living skills are age appropriate and activities are not required at this time." *See* Exhibit E.

74.    M.A. turned sixteen (16) years of age on Redacted

9

75.  The IEP for the school year in which M.A. turned 16, dated June 15, 2016, did not include the required statement of M.A.'s strengths, interests and preferences. The Statement of Transition Planning in the IEP simply stated "student will begin to explore educational goals and options." *See* Exhibit F.

76.  The IEP was revised in September 2016.  The revised IEP, dated September 15, 2016, contained the same statement.  A true and correct copy of M.A.'s IEP dated September 15, 2016 is attached hereto as Exhibit G.

77.  The Statement of Appropriate Measurable Post-Secondary Goals and Transition Services in both the June 15 and September 15, 2016 IEPs also contained the same vague, generic statements that "student will begin to explore" educational options and interests or career interests "with case manager and guidance counselor." *See* Exhibits E and G.

78.  The activities/strategies related to the measurable post-secondary goals in Education and Training, that continued to use vague phrasing and the generic term "student," were clearly not developed specifically for M.A. or to address her unique circumstances. *See* Exhibits E and G.

79.  The Transition planning and services section in other IEPs developed during the 2016-2017 school year remained unchanged. A true and correct copy of M.A.'s IEP dated April 3, 2017 is attached hereto as Exhibit H.

80.  The IEP dated April 3, 2017 was the first to state M.A.'s interest in Art and her desire to pursue further education and/or a career in Art upon graduation.  That IEP was to be in effect for the majority of M.A.'s last year of high school (projected end date 4/17/18). *See* Exhibit H.

81.     The transition planning and services in the April 3, 2017 IEP did not include appropriate measurable post-secondary goals to assist M.A. in reaching her goals. *See* Exhibit H.

82.     Transition services related to postsecondary education/training or employment did not mention M.A.'s desire to pursue an education or career in art. *See* Exhibit H.

83.     Furthermore, activities and strategies related to both education/training and employment had clearly not been updated as the expected implementation dates remained 6/16/16 in M.A.'s for the 2017-2018 school year. *See* Exhibit H and a true and correct copy of M.A.'s IEP dated August 10, 2017 attached hereto as Exhibit I.

84.     Further, the District's failure to implement M.A.'s IEP, failure to provide qualified home instructors; failure to follow through on its promises with respect to completed outstanding work, and failure to correct M.A.'s final grades substantially limits M.A.'s options for post-secondary education.

85.     During M.A.'s Junior year, while the Guidance Department was working with the other Juniors on college planning, they failed to work with M.A.

86.     The Guidance Department continued to ignore M.A. during her Senior Year when it came to assisting M.A. with college planning.

87.     Finally, the District failed to provide required consultation with the Division of Vocational Rehabilitation Services (DVRS).

88.     Appropriate transition planning and transition services were neither developed nor implemented in accordance with the IDEA and state regulations.

89.     The District's failure to provide appropriate transition planning and transition services denied M.A. a FAPE.

## **The District's Retaliatory and Abusive Conduct**

90. One of M.A.'s extra-curricular activities was to participate on the District's tennis team.

91. The tennis team had far more participants than could participate in any particular match, and therefore had a regimented program in which players earned their right to participate.

92. M.A. played on the Junior Varsity team for her Freshman and Sophomore years and was primed for making Varsity during her Junior year.

93. She began practice for the Junior season during mid-August and went to tryouts at the end of August.

94. During tryouts, the District's Director of Special Education came to the tennis team tryouts, approached the coach in the full presence of all team members, and whispered in the coach's ear.

95. M.A. was unnerved by the Director's presence and performed poorly on her tryout.

96. Shortly thereafter, M.A. was removed from the team as academically ineligible.

97. The stated basis for the removal was obviously trumped-up because M.A. was reinstated to the tennis team within days.

98. Nonetheless, the damage had been done.

99. Although M.A. still made the Junior Varsity team, she lost her spot on the starting rotation because of her temporary removal.  The coach indicated to M.A. that she was a "victim of circumstances."

100. Remarkably, the District claimed that M.A. was restored to the team through an appeal to the NJSIAA, but there is no record of such an appeal.

101. M.A. was humiliated by the Director of Special Education's conduct.

102. M.A. was humiliated by her demoted status on the tennis team.

103. This incident led to an exacerbation of M.A.'s anxiety and depression.

104. The District often interfered with M.A.'s doctors and therapists, causing additional anxiety and distrust of those who were supposed to treat and educate her.

105. For example, the District contacted M.A.'s health care providers, even when it had no authorization or release to do so.

106. Indeed, District personnel continued to access information from M.A.'s medical professionals even after D.A. had expressly withdrawn the consent for same.

107. The District also contacted M.A.'s health care professionals to convey negative comments to those providers.

108. M.A. changed providers as a result of these improper communications and the risk that her privacy would be compromised.

109. Remarkably, the District then accused D.A. and M.A. of "doctor shopping."

110. The District's conduct of interfering with M.A.'s treating health care providers exacerbated M.A.'s anxiety and depression and exacerbated the troubles that M.A. was already having in completing her school work and her desire to go to school.

111. The District's conduct also impacted the in-school counseling to which M.A. was entitled because she feared a similar of breach of confidences with the District's counselor.

112. On two occasions, the Director of Special Services contacted DYFS, and made allegations against D.A.

113. DYFS found no cause on either occasion and reprimanded the Director for her vexatious and unwarranted allegations.

114. On another occasion, M.A.'s first Case Manager contacted M.A.'s father, who lives out of state and has little contact with M.A., in an attempt to convince him to place M.A. out of district against the mother's wishes.

115.  As time went on, District teachers refused to work individually with M.A.

116.  Other teachers retaliated against M.A. by providing her with poor grades that did not reflect the quality of her work.

117.  Further, the District required M.A.'s home instructors to complete surveys or other reports about M.A. that it did not require regarding other students.

118.  Upon information and belief, this was as a result of instructions from the Director of Special Services and was in retaliation for D.A.'s enforcing M.A.'s federal rights under the IDEA.

119.  As a result of this refusal to work with M.A., M.A. suffered a loss of self-esteem, an exacerbation of her anxiety depression, and a denial of the free appropriate education to which she was entitled.

## **CONTENTIONS**

The District has violated the Individuals with Disabilities Education Act ("IDEA"); the Individuals with Disabilities Education Improvement Act ("IDEIA"), 20 U.S.C. 1400 et seq., Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 20 U.S.C. 794 et seq., 34 C.F.R. 104 seq.; and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-12, as follows:

A.  **FAILURE TO PROVIDE A FREE AND APPROPRIATE PUBLIC EDUCATION FOR THE 2014-2015, 2015-2016, 2016-2017 AND 2017-2018 SCHOOL YEARS, PURSUANT TO THE IDEA.**

120.  Petitioner incorporates by reference the allegation of the preceding paragraphs as if fully restated here.

121.  The District denied M.A. a free and appropriate public education (FAPE).

14

122.   The District failed to provide M.A. with an educational program, and the related services necessary to address her disability.

123.   The District continues to provide M.A. with a program that does not address her disability, or meet her academic, social, emotional and behavioral needs.

124.   The District's failure to provide M.A. with an appropriate educational program that provided a FAPE resulted in her failure to make appropriate progress in light of her unique circumstances and her inability to take necessary academic courses to reach her post-graduate goals.

125.   The District failed to develop an appropriate educational program to address the social and emotional challenges, as well as issues with loss of focus noted in M.A.'s IEPs.

126.   The District failed to provide appropriate transition planning and transitional services to address M.A.'s unique circumstances.

127.   The District failed to provide M.A. with an individualized educational program that met her individual needs, and therefore, denied FAPE.

128.   M.A. is entitled to compensatory education for the 2014-2015, 2015-2016, 2016-2017 and 2017-2018 school years.

129.   M.A. is entitled to reimbursement for additional costs incurred that resulted from the District's failures to provide her a free appropriate public education.

B.   **DISCRIMINATION PURSUANT TO SECTION 504 OF THE REHABILITATION ACT, AND THE NEW JERSEY LAW AGAINST DISCRIMINATION.**

130.   Petitioner incorporates by reference the allegation of the preceding paragraphs as if fully restated here.

131.   Section 504 of the Rehabilitation Act of 1973, and the New Jersey Law Against Discrimination prohibit public entities such as SEAs and LEAs from discriminating against individuals with disabilities.

132.   Pursuant to these laws, public schools are prohibited from excluding students with disabilities from participating in or receiving the benefits of a school's services, programs, or activities, and such exclusion constitutes disability discrimination.

133.   Public schools are further prohibited from denying qualified individuals the benefits of the public program.

134.   By denying M.A. a FAPE, the District violated both Section 504 and NJ-LAD.

135.   These protections also extend to 'qualified individuals' who are discriminated against because of their relationship or association with individuals who have a known disability.

136.   The District failed to accommodate M.A. by providing appropriate home instruction and properly implementing her IEPs to allow her to meaningfully access her educational benefits.

137.   As a result, private tutoring was necessary for M.A. to access her education, make academic progress and achieve her post-graduate goals in education and employment.

138.   The District must reimburse the amounts paid for these private services.

### C.   INFLICTION OF EMOTIONAL DISTRESS.

139.   Petitioner incorporates by reference the allegation of the preceding paragraphs as if fully restated here.

140.   The manner in which the District removed M.A. from the tennis team was outrageous and transcended the bounds of decency.

141.   The District's conduct in interfering with M.A.'s medical professionals was outrageous and transcended the bounds of decency.

142. The District's conduct in refusing to work with M.A. in the same manner as other students was outrageous and transcended the bounds of decency.

143. The District's conduct was intentional.

144. As a direct and proximate result of the District's conduct, M.A. suffered severe emotional distress that impacted her ability to function as a student.

145. As a direct and proximate result of the District's conduct, M.A. suffered an exacerbation of her disabilities.

146. As a direct and proximate result of the District's conduct, M.A. suffered severe emotional distress that required, and continues to require, treatment by therapists and mental health professionals.

147. In the alternative, the District's conduct was negligent or reckless.

148. M.A. intends to seek monetary damages in a court of competent jurisdiction following exhaustion of her administrative remedies.

## **PRAYER FOR RELIEF**

WHEREFORE, Petitioners seek:

A. An Order that the District deprived M.A. of a free appropriate public education (FAPE) for the 2014-2015, 2015-2016, 2016-2017 and 2017-2018 school years by failing to follow the accommodations in her IEPs so that M.A. could to make progress appropriate for her unique circumstances and that M.A. is entitled to compensatory education.

B. An Order that the District provide compensatory education for its failure to provide M.A. FAPE and appropriate transition planning and transition service to prepare her for post-graduate education, employment and independent living.

C.   An Order that the District review and revise grades in academic classes based on completed work that was not previously graded and included in the calculation of M.A.'s final grades.

D.   Such further compensatory, consequential, and punitive damages as may be proven at a civil trial, after exhaustion of administrative remedies in the Office of Administrative Law.

E.   Petitioners respectfully request that they be declared the prevailing party.

F.   Any such other relief as the Court deems equitable and just;

G.   Respondent should take notice that at the appropriate time and in the appropriate forum, Petitioners reserve the right to seek reimbursement for expert fees pursuant to L.T v. Mansfield Twp. Sch. Dist., 53 IDELR 7 (D.N.J. 2009), for violation of Section 504.

H.   Respondent should take notice that at the appropriate time and in the appropriate forum, Petitioners reserves the right to seek reimbursement of attorney's fees in accordance with 20 USCA. § 1415(i)(3)(b).


                                              JOHN RUE & ASSOCIATES
                                              Attorneys' for Petitioner, M.A.


Date:   January 28, 2019              By: _____
                                              DONALD A. SOUTAR

## VERIFICATION

I, [Redacted] of full age, being duly sworn upon her oath according to law

deposes and says:

1.  I am the Petitioner in the foregoing Verified Amended Petition for Due Process.

2.  I have read the foregoing Verified Amended Petition for Due Process and aver that the facts contained therein are true to the best of my knowledge and belief.

Date:   January **27**, 2019   [Redacted]

## VERIFICATION

I, Redacted of full age, being duly sworn upon her oath according to law deposes and says:

1.  I am the mother of the Petitioner in the foregoing Verified Amended Petition for Due Process, and the original petitioner pursuant to a Parental Request for Mediation filed prior to my daughter's attaining the age of majority.

2.  I have read the foregoing Verified Amended Petition for Due Process and aver that the facts contained therein are true to the best of my knowledge and belief.

Redacted

Date:   January **27**, 2019

# EXHIBIT D

John Rue, Attorney ID No. 047032005
Donald A. Soutar, Attorney ID No. 024521999
JOHN RUE & ASSOCIATES
37 Main Street
Sparta, New Jersey 07871
(862) 283-3155
*Attorneys for Petitioner*

RECEIVED
2020 JAN 31  A 11: 00
STATE OF NEW JERSEY
OFFICE OF ADMIN. LAW

## OFFICE OF ADMINISTRATIVE LAW

|  |  |
|---|---|
| M.A., | OFFICE OF SPECIAL EDUCATION PROGRAMS |
| PETITIONER, | OAL Docket No.  EDS 12907-2018 S |
| v. | Agency Ref. No.  2019-28579 |
| WALL TOWNSHIP PUBLIC SCHOOLS, | **ORDER OF VOLUNTARY DISMISSAL** |
| RESPONDENT. |  |

**WHEREAS,** on June 13, 2018, M.A., by and through her mother, D.A., filed a Parental Request for Mediation seeking, among other things, retention at Wall High School for at least an additional year, adjustment of certain grades based on alleged failures to accommodate her disabilities, amendment of certain school records, and compensatory education; and

**WHEREAS,** the matter did not resolve at mediation and was subsequently transmitted to the Office of Administrative Law for a due process hearing; and

**WHEREAS,** M.A. remained at Wall High School for an additional year; and

**WHEREAS,** on December 13, 2018, respondent Wall township Public Schools (the "District") moved for partial dismissal of M.A.'s claims; and

**WHEREAS,** on February 6, 2019, M.A. opposed the motion and cross-moved to amend her petition for due process; and

**WHEREAS,** on April 25, 2019 the Court entered an *Order On Motion For Dismissal* in which it granted the District's motion for partial dismissal "with respect to a reexamination of grades and school records, as well as its motion for dismissal of compensatory education based on upon violations of confidentiality or infliction of emotional distress"; and

**WHEREAS,** M.A., through her counsel, has expressed a desire to dismiss all remaining claims in her Amended Petition for Due Process and to pursue an appeal of this Court's April 25, 2019 *Order On Motion For Dismissal*;

**NOW THEREFORE,** Court hereby Orders that:

1.    This matter be, and the same hereby is, dismissed in its entirety; and

2.    This decision is final pursuant to 20 U.S.C. § 1415(i)(1)(A) and 34 C.F.R. § 300.514 (2018) and is appealable by filing a complaint and bringing a civil action either in the Law Division of the Superior Court of New Jersey or in a district court of the United States. 20 U.S.C. § 1415(i)(2); 34 C.F.R. § 300.516 (2018).

Dated: 1/31/2020

Hon. Susan M. Scarola, ALJ (Ret., on recall)

# EXHIBIT E

**KENNEY, GROSS, KOVATS & PARTON**
ATTORNEYS AT LAW
THE COURTS OF RED BANK
**130 MAPLE AVENUE, BUILDING 8**
RED BANK, NEW JERSEY 07701

MALACHI J. KENNEY  (1944-2011)
MICHAEL J. GROSS
DOUGLAS J. KOVATS
CHRISTOPHER B. PARTON
DANIEL R. ROBERTS
GABRIELLE A. PETTINEO

TEL. 732-530-7500
FAX. 732-530-1739

EMAIL: *gapettineo@kenneygross.com*

July 8, 2015

<u>**VIA ELECTRONIC MAIL (only)**</u>

Greer M. Gurland, Esq.
Sussan Greenwald & Wesler
1249 South River Road, Suite 104
Cranbury, New Jersey 08512

      **Re:    M.A. / Wall Township School District**

Dear Ms. Gurland:

        The District is in receipt of your correspondence dated July 1, 2015 and June 24, 2015 regarding the proposed IEP and outstanding issues, respectively, and responds as follows.

        Attached please find a copy of the 2015-2016 IEP, which was sent to the parent on or about June 24, 2015. At the June 11, 2015 IEP meeting, the District agreed to keep the IEP open as a draft because the Child Study Team and the parent would explore out of district placements, namely the Collier School. As you may be aware, the parent and the District visited Collier on June 18, 2015. However, M.A. has not been accepted to Collier due to her reported disinterest and aversion to attending the program. Therefore, the District must finalize the proposed program for 2015-2016 as no student shall begin the school year without a current IEP.

        That being said, if the parent is in disagreement with the proposed program, which was discussed and reviewed at the June 11th meeting, or would like to discuss the proposed program further or suggest revisions to the IEP, the District would be happy to discuss any issues with the parent. However, please be advised that the case manager is a 10-month employee and would not be present during that discussion/meeting. The Director of Special Services would assist in coordinating the same.

        With regard to your correspondence regarding the parent's concerns, please be advised:

1.) Absences – The District is in receipt of the doctors' notes, which excuse M.A. for her absences/lates for gym and French, and accepts the same.

2.) Grading Inaccuracies – Please be aware that the last day of school was June 24, 2015 (the date of your letter) and that the teachers are contractually out for the year until September 2015. Therefore, any emails sent from the parent to the teachers may not receive a response until then. Please have the parent provide the District with a detailed list of grading inaccuracies that she believes occurred, and the District will address the same with the teachers when they return from summer break.

3.) Tuesday, June 23, 2015 Absence – The District is in receipt of the doctor's note regarding the June 23rd absence.

4.) Unfinished Finals – Please be aware that the only exam that M.A. has not taken is the French exam. The French exam is currently in the school's guidance office. The parent should call Jen Sczerbowicz at (732) 556-2062 to schedule a day and time for M.A. to come into school and take the exam. M.A. may take the exam any day Monday through Friday between 8 a.m. and 1 p.m. An instructor will be present, and the exam will be given in accordance with the modifications and accommodations included in her IEP.

5.) Incomplete Classes – Please be advised that M.A. is currently marked incomplete in French only, due to the fact that M.A. has not taken the exam. Once the exam is completed, M.A. will have final grades for all of her classes.

Please feel free to contact me with any further questions or concerns.

Very truly yours,

KENNEY, GROSS, KOVATS & PARTON

Gabrielle A. Pettineo

cc:   Carol Duffy, Director of Special Services (*via electronic mail*)

# EXHIBIT F

**KENNEY, GROSS, KOVATS & PARTON**
ATTORNEYS AT LAW
THE COURTS OF RED BANK
130 MAPLE AVENUE, BUILDING 8
RED BANK, NEW JERSEY 07701

MALACHI J. KENNEY   (1944-2011)
MICHAEL J. GROSS
DOUGLAS J. KOVATS
CHRISTOPHER B. PARTON
DANIEL R. ROBERTS
GABRIELLE A. PETTINEO

TEL. 732-530-7500
FAX. 732-530-1739

EMAIL: gapettineo@kenneygross.com

August 16, 2016

**VIA ELECTRONIC MAIL (only)**

Staci Greenwald, Esq.
Sussan Greenwald & Wesler
1249 South River Road, Suite 104
Cranbury, New Jersey 08512

        Re:    **M.A. / Wall Township School District**

Dear Ms. Greenwald:

        The District is in receipt of your correspondence dated August 2, 2016. As we discussed via telephone shortly thereafter, the District is not in agreement with the parent's request for summer home instruction. Below please find detail responses to each of the additional requests contained in your letter.

        With regard to home instruction during the 2015-2016 school year, please be aware that the District provided M.A. with home instruction for first period English based on the parent's request. At the IEP meeting for the 2015-2016 school year, in which I was in attendance, the parent assured the District that she would obtain a letter from M.A.'s treating physician. No letter was ever provided. Therefore, the District agreed to provide home instruction for *first period in English* as a courtesy to the parent, as it was unsupported by medical documentation. It commenced at the beginning of the school year. Please also be aware that the parent canceled at least thirty-one home instruction appointments throughout the school year, which are typically provided in two hours blocks.

        Further, with regard to second period Biology, the sole reason the District began providing home instruction for this class was due to M.A.'s lack of attendance. Home instruction was never discussed or requested for second period Biology, which is why the District had not provided a home instructor in Biology at the beginning of the school year. Instead, M.A. had fallen so far behind by October due to inattendance that the District provided home instruction in an attempt to have her complete the work. Again, this was done as a courtesy to assist M.A. in making up the considerable work she had missed by not attending and was not supported by medical documentation. Therefore, M.A. is not owed compensatory home instruction.

In your correspondence, you discuss M.A.'s lack of attendance during the months of December and January. Please be aware that the District never received a doctor's note or any medical documentation indicating that M.A. would be unable to attend school due to a change in medication. Instead, M.A. did not attend school during this time period, and those absences were marked as unexcused. When the District met with the parent after several weeks of absences to explain to the parent that the District would be forced to pursue truancy, the parent then stated that M.A. was home due to a change in medication. The parent assured the District that she would provide a doctor's note excusing the absences. None was provided, and M.A. began attending school again sporadically.

As of June 14, 2016, M.A. has a total of 53 unexcused absences and had been tardy 109 days. As was explained to the parent at the June 2016 IEP meeting, M.A. has accumulated enough instructional hours in English, Physical Education, Ceramics and Social Studies to obtain credit. However, it was also explained to the parent that M.A. should explore the option of credit recovery for Geometry and Lab Biology.

With regard to the individual classes and the work that needs to be completed in order to receive credit, please be aware that the District and the District's guidance counselor have had many conversations and have sent many correspondences with the parent detailing what needs to be done in each class in order to receive credit and move on. Please see a summary below:

1. Geometry – Again, no doctor's note has been provided to excuse absences for December 2015 and January 2016. M.A. has been provided with the work she needs to complete in order to receive credit for Geometry. The Geometry teacher wrote to the parent on June 21, 2016, stating that a folder containing the work that M.A. needed to make up was left in the classroom for weeks. The teacher also explained that M.A. has the option to either complete credit recovery over the summer or take the course again in the 2016-2017 school year. On June 22, 2016, the Director of Guidance wrote to the parent to inform her that if M.A. wish to change the failing grade in Geometry, she could complete the Educere online course for English over the summer. Specific information and a website link was provided for the same, and additional information was mailed home on June 24, 2016. To date and to the District's knowledge, the student has not signed up for the course. Therefore, no home instruction is warranted nor will it be provided.

2. English:  Once the teacher returns from summer break, M.A. may speak with her regarding completing assignment. If the teacher is willing to accept the completed assignment, the District will accept the revised grade.

3. Ceramics – It is the determination of the teacher whether to allow M.A. to resubmit a project due to a failing grade. If the teacher is willing to provide M.A. with another project, the District will accept the revised grade.

4. Drawing – The District will confer with the guidance department to ensure that the drawing class is not on M.A.'s transcript for the 2015-2016 school year.

5. French I – The District has already averaged her grade. Please be aware that the District gave M.A. almost a year to complete the final examination, as can be evidence by my previous correspondence with Greer Gurland, Esq. during the 2015 summer.

6. Driver's Education – The District is required to follow the State's guidelines when it comes to driver's education. As the District already explained to the parent, M.A. can take the State examination at the Motor Vehicle Commission's Office. As you noted, M.A. can go to the guidance office to take the quiz in order to complete the District's class.

7. Biology:  On June 22, 2016, the Director of Guidance wrote to the parent to inform her that if M.A. wish to change the Redacted grade in Biology, she could complete the Educere online course for Biology during the summer. Specific information and a website link was provided for the same, and additional information was mailed home on June 24, 2016. To date and to the District's knowledge, the student has not signed up for the course. As stated above, the District is not obligated to provide home instruction for Biology over the summer.

Much of the above is detailed in numerous email correspondences between the parent, the District's guidance department and the case manager throughout the school year. On June 22, 2016, the District indicated that if the parent wanted to appeal M.A.'s noncredit status, she should do so with the assistant principal of Wall High School. This was not done, and the District did not hear from the parent again until your August 2016 correspondence.

Please be aware that several times over the last few years, the District's CST has strongly recommended placement at an out of district program with a strong therapeutic environment in order to address M.A.'s needs. Dr. Doumas also previously recommended a similar program. Dr. Doumas  stated   Redacted
Redacted                                                                                      The parent did not agree with either recommendation.

Finally, with the regard to your August 5, 2016 correspondence and the correspondence from Dr. Doumas, the doctor's letter does not specifically excuse M.A. for the two months she did not attend school. Dr. Doumas calls for accommodations to be made in order to provide M.A. with credit for the days she missed. Those accommodations are already contained in her IEP and have been provided to her throughout the school year.

The District is encouraged that Dr. Doumas states M.A. will be able to attend school fulltime for the 2016-2017 school year and that Dr. Doumas finds M.A. "is willing to quickly complete the necessary coursework in order to avoid failing grades." However, the District has

made numerous attempts to work with the parent and M.A. throughout the school year in order to have her complete and make up the necessary work. The District, on several occasions, provided the parent with the information for M.A. to complete the work during the summer and to recover credits. Neither the parent nor M.A. has followed through. Thus far, the work has not been completed, and the credits and grades cannot be revised until then. Please be aware that M.A. is currently scheduled to retake Lab Biology and Geometry for the 2016-2017 school year.

Thank you for your attention to this matter.

Very truly yours,

KENNEY, GROSS, KOVATS & PARTON

Gabrielle A. Pettineo

cc:  Carol Duffy, Director of Special Services (*via electronic mail*)