***NOT FOR PUBLICATION*__

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| M.A.,<br><br>      Plaintiff,<br><br>v.<br><br>WALL TOWNSHIP BOARD OF EDUCATION,<br><br>      Defendant. | Civil Action No. 20-05218 (FLW)<br><br>OPINION |

**WOLFSON, Chief Judge:**

      Presently before the Court are separate Motions for Summary Judgment filed by M.A. ("Plaintiff") and Wall Township Board of Education ("Defendant"). The motions arise out of Plaintiff's appeal of Administrative Law Judge Susan M. Scarola's ("ALJ") decision to dismiss Plaintiff's due process petition, which claimed that Defendant violated Plaintiff's right to a free, appropriate public education ("FAPE") under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq*. For the reasons that follow, Plaintiff's Motion for Summary Judgment is **GRANTED** insofar as it is limited to a FAPE claim based on alleged violations of Plaintiff's Individualized Education Program related to a failure to consider Plaintiff's late-completed schoolwork, and the ALJ's decision in that regard is **REMANDED** for further proceedings consistent with this Opinion. All other aspects of Plaintiff's motion are **DENIED**. Defendant's Motion for Summary Judgment is also **DENIED**.

I. **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

A. **The Individuals with Disabilities Education Act**

Before I recount the relevant facts, a brief legal background is necessary. The IDEA requires "states that receive federal education funding to ensure that disabled children receive a 'free appropriate public education[.]'" *Munir v. Pottsville Area Sch. Dist.*, 723 F.3d 423, 425-26 (3d Cir. 2013) (quoting 20 U.S.C. § 1412(a)(1)); *see H.E. v. Walter D. Palmer Leadership Learning Partners Charter Sch.*, 873 F.3d 406, 408 (3d Cir. 2017). The IDEA "protects the rights of disabled children by mandating that public educational institutions identify and effectively educate those children, or pay for their education elsewhere if they require specialized services that the public institution cannot provide." *D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 244 (3d Cir. 2012) (citation omitted).

"To comply with the IDEA, school districts must identify and evaluate all children who they have reason to believe are disabled under the statute." *Munir*, 723 F.3d at 426. To provide a FAPE, the school district must develop and administer an Individualized Education Program ("IEP") for each student that is classified as eligible for special education. *S.H. v. State-Operated Sch. Dist. of Newark*, 336 F.3d 260, 264 (3d Cir. 2003); *see C.H. v. Cape Henlopen Sch. Dist.,* 606 F.3d 59, 65 (3d Cir. 2010) ("The FAPE required by the Act is tailored to the unique needs of the child by means of an [IEP]."). "An appropriate IEP must contain statements concerning a disabled child's level of functioning, set forth measurable annual achievement goals, describe the services to be provided, and establish objective criteria for evaluating the child's progress." *Cape Henlopen*, 606 F.3d at 65. While the school district is "not required to 'maximize the potential'" of each disabled student, *T.R. v. Kingwood Tp. Bd. of Educ.*, 205 F.3d 572, 577 (3d Cir. 2000) (quoting *Bd. of Educ. Of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 188-89

2

(1982)), it "must offer an IEP that is 'reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential.'" *Munir*, 723 F.3d at 426 (quoting *P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 729-30 (3d Cir. 2009)). "Consistent with its obligation under IDEA, New Jersey has enacted statutes and regulations which require all local Boards of Education in the State to identify children between the ages of five and twenty-one who may need or benefit from special education." *L.P. v. Edison Bd. of Educ.*, 265 N.J. Super. 266, 273 (Law. Div. 1993) (citing N.J.S.A. 18A:46–6).

"The IDEA establishes a private cause of action against a school district that fails to abide by its legal obligations." *Cape Henlopen*, 606 F.3d at 66. In that regard, a "parent who believes that a school has failed to provide a FAPE may request [an administrative] hearing, commonly known as a due process hearing, to seek relief from the school district for its failure to provide a FAPE," and may appeal an adverse decision to federal district court. *Mary T. v. Sch. Dist. of Philadelphia*, 575 F.3d 235, 240 (3d Cir. 2009); *see Cape Henlopen*, 606 F.3d at 66 ("The parent or guardian of a minor student who is denied the rights and procedures set forth in the IDEA is afforded the opportunity to file an administrative complaint and to appeal an adverse determination to a federal district court."). In New Jersey, this process entails filing a complaint and request for a due process hearing with the New Jersey Department of Education ("NJDOE"). *See* N.J.A.C. 6A:14–2.7(c); *Edison Bd. of Educ.*, 265 N.J. Super. at 273-74 ("[T]he DOE has been established as the forum agency for handling 'due process' petitions to review local agency decisions and actions regarding the provision of [a] FAPE for handicapped children."). In special education cases, the due process hearing is conducted by an Administrative Law Judge in New Jersey's Office of Administrative Law ("OAL"). *Edison Bd. of Educ.*, 265 N.J. Super. at 274. The ALJ's decision

on "the appropriateness of the IEP is final and binding on the parties and must be implemented without undue delay." *Id.*; *see* N.J.A.C. 6A:14–2.7(l).

Aggrieved parties may appeal the ALJ's final decision by filing a civil action in state or federal court. 20 U.S.C. § 1415(i)(2). "After examining the administrative record and hearing additional evidence at the request of either party, the reviewing court is authorized to grant 'such relief as [it] determines is appropriate' based on the preponderance of the evidence." *Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 272 (3d Cir. 2014) (quoting 20 U.S.C. § 1415(i)(2)(C)). "These remedies include, *inter alia*, 'attorneys' fees, reimbursement for a private educational placement, and compensatory education.'" *Id.* (quoting *Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 185 (3d Cir. 2009)).

### B. Factual Background

The facts of the case are undisputed and extensively set forth in the Administrative Law Judge's ("ALJ") decision, Compl. Ex. A, and the parties' Joint Stipulated Facts ("JSF"). ECF No. 18.

Plaintiff is a twenty-year-old former student at Wall High School. JSF ¶1. Wall's Child Study Team identified Plaintiff as a student with a disability pursuant to the IDEA and provided her with special education and related services while Plaintiff was a student. *Id.* ¶2. Plaintiff was classified as eligible to receive special education and related services from Defendant in July 2011. *Id.* ¶3. According to Plaintiff, since she entered high school in 2014, her IEPs have always included accommodations to reduce the anxiety she experienced at school, including modifications for classwork, homework, and tests, as well as extended time to complete tests and assignments. Compl. ¶28. This was necessary, Plaintiff claims, because her disability caused her to frequently be absent or tardy from school. *Id.* ¶30. These absences, in turn, resulted in Plaintiff falling behind

4

on her assignments and tests, often resulting in completing schoolwork assignments months, or even over a year, after the due date. *Id*. ¶¶33, 37-38. According to Plaintiff, because of these absences, Defendant routinely permitted M.A. to hand in assignments late and without penalty. *Id*. ¶39. Further, when Plaintiff handed in her completed late schoolwork, Defendant, pursuant to her IEPs, would revise Plaintiff's grades to reflect the completed work. *Id*. ¶¶40-43. However, Plaintiff claims that, on a number of occasions during the 2014-2015 and 2015-2016 school years,[1] Defendant failed to revise grades once Plaintiff completed her assignments. *Id*. ¶¶48-50, 55-56. In those years, Plaintiff submits that this occurred, at a minimum, with regards to her classes in Ceramics, English, French I, Freshman Seminar, and History. *Id*. Plaintiff does not allege that Defendant failed to consider late work outside of the 2014-2015 or 2015-2016 school years.[2]

On or about June 13, 2018, Plaintiff filed a "Request for Mediation" with the NJ DOE contending that Defendant had failed to plan for Plaintiff's transition out of high school, discriminated against her the entire four years of high school by failing to implement her IEPs, did not provide her with adequate home instruction, and improperly communicated with her medical professionals and coach in a manner that caused emotional distress and exacerbated her disability. JSF ¶5; Compl. Ex. A at 3. As relief, Plaintiff requested retention at Wall High School for a fifth year, revisitation of grades dating back to ninth grade, compensatory education for Defendant's

---

[1] These were Plaintiff's freshman and sophomore years in high school.

[2] Defendant explains that in three of Plaintiff's last five years of high school (2016-2017, 2017-2018, and 2018-2019), Plaintiff received all A's on her transcript. Def. Mot. for Summ. Judg. at 5. Plaintiff does not dispute this assertion. As such, and in light of the fact that Plaintiff's specific allegations regarding grade recalculation are limited to classes occurring in the 2014-2015 and 2015-2016 school years, the Court finds that the FAPE claim at issue, too, is limited to the 2014-2015 and 2015-2016 school years.

5

alleged failure to provide home instruction, amendment of school records, and compensatory education for Defendant's alleged exacerbation of Plaintiff's disabilities. *Id*. ¶6.

On August 2, 2018, the parties participated in an unsuccessful mediation with a state mediator. *Id*. ¶7. Plaintiff then requested that the matter be converted to a due process hearing, which resulted in the transfer of Plaintiff's claims to the OAL as a due process petition on September 5, 2018. *Id*. ¶8. Later, in September 2018, the parties attempted to settle at the OAL, but this, too, was unsuccessful. *Id*. ¶9.

On or about December 13, 2018, Defendant filed a Motion for Partial Dismissal. *Id*. ¶10. Defendant sought to dismiss Plaintiff's claims for compensatory education and re-visitation of grades and school records by arguing that Plaintiff's claim for inadequate home instruction was barred by a statute of limitations, and that other remedies, including revising Plaintiff's grades, were not available under the IDEA. *Id*.; Compl. Ex. A at 4. In response, on or about February 6, 2019, Plaintiff filed a brief in opposition to the dismissal motion, and in support of her motion to amend the due process petition. *Id*. ¶11. In the proposed amended due process petition, Plaintiff alleged that Defendant failed to provide Plaintiff with a FAPE under both the IDEA and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, *et seq*. Compl. Ex. A at 4. Further, Plaintiff alleged that Defendant inflicted severe emotional distress by, among other things, removing M.A. from the tennis team and interfering with her medical professionals. *Id*. Plaintiff sought (1) compensatory education due to Defendant's denial of a FAPE; (2) appropriate transition planning to prepare Plaintiff for post-graduate education and employment; (3) an order that compels Defendant to review and revise Plaintiff's grades based on completed work that was not previously graded and included in the calculation of Plaintiff's final grades; and (4) compensatory, consequential, and punitive damages for infliction of emotional distress. *Id*.;

Compl. Ex. C at 18.  In the proposed amended petition, Plaintiff's request for grade revision was connected to two separate claims: (1) Defendant's failure to execute the accommodations in her IEPs during the 2014-2015 and 2015-2016 school years, which permitted Plaintiff additional time to complete her assignments and tests, Compl. Ex. C ¶¶11-37, and (2) Defendant's failure to provide adequate home instruction, which resulted in poor grades.  Compl. Ex. C ¶¶38-62; *see* Pl. Mot. for Summ. Judg. at 1 ("[Plaintiff] requested that the OAL require [Defendant] to change her grades either to reflect assignments that she submitted that were not considered or to account for Defendant's failure to provide her with modifications and accommodations required for her IEP.").

On April 25, 2019, the ALJ granted Plaintiff's motion to amend the petition, but granted in part and denied in part Defendant's partial dismissal motion (the "April Order").  Compl. Ex. A at 14-15.  Regarding the request to amend the petition, the ALJ noted that Plaintiff's proposed amended petition did not set forth any new allegations, but rather, expanded upon those allegations already in the original request for mediation.  *Id*. at 7.  Therefore, the ALJ determined that Defendant would not be prejudiced by the amendment, and thus, permitted filing of the amended petition.  *Id*. at 7-8.  As to Defendant's motion for partial dismissal, the ALJ granted Defendant's motion with respect to re-examination of grades and school records, because, according to the ALJ, the request for such relief was improperly brought in a special education due process hearing.  Compl. Ex. A at 10.  The ALJ also dismissed Plaintiff's claim for compensatory education based upon violations of confidentiality or infliction of emotional distress.  *Id*. at 14-15.  The ALJ denied, without prejudice, Defendant's motion for dismissal as to Plaintiff's claim for compensatory education for inadequate home instruction.  *Id*.  As part of the denial, the ALJ explained that a hearing was needed to determine when Plaintiff, for purposes of the statute of limitations analysis, knew or should have known that Defendant allegedly denied Plaintiff a FAPE.  *Id*. at 14.

7

On January 30, 2020, before any such hearing occurred, Plaintiff sent correspondence and proposed an order to the ALJ voluntarily withdrawing "all claims that were not disposed of in [the] . . . April 25, 2019 Order on Motion for Dismissal, while reserving appellate rights with respect to that Order."  JSF ¶¶15, 16.  The following day, the ALJ signed the proposed order (the "January Order").  *Id*. ¶16.  Although Plaintiff was not explicit regarding which claims were those "not disposed of" following the April Order, after examining the available record, it appears that there were at least two claims raised by Plaintiff that qualify as the remaining claims that were voluntarily dismissed: (1) Plaintiff's FAPE claim requesting compensatory education, including revision of grades, due to inadequate home instruction; and (2) Plaintiff's FAPE claim requesting compensatory education due to Defendant's failure to provide appropriate transition planning for post-graduate education, employment, and independent living.  *See* Compl. Ex. A at 14-15; Compl. Ex. C at 17-18.

Plaintiff filed this appeal on April 28, 2020, claiming that the ALJ's April Order, which held that Plaintiff's request for grade re-examination was improperly raised in a special education due-process hearing, was entered in error because such a remedy is, indeed, available under the IDEA and Section 504 of the Rehabilitation Act.  Compl. ¶¶6, 7, 72.

## II.   STANDARD OF REVIEW

The standard of review "under which this Court considers an appeal of a state administrative decision under the IDEA differs from that governing the typical review of summary judgment."  *M.A. ex rel. G.A. v. Voorhees Tp. Bd. of Educ.,* 202 F. Supp. 2d 345, 359 (D.N.J. 2002), *aff'd*, 65 Fed.Appx. 404 (3d Cir. 2003) (internal citations and quotations omitted).  To that end, the Third Circuit has instructed district courts to apply a "modified version of de novo review" to cases brought under the IDEA.  *Munir*, 723 F.3d at 430.  Under this standard, although "the

District Court must make its own findings by a preponderance of the evidence, the District Court must also afford 'due weight' to the ALJ's determination." *Mary T.*, 575 F.3d at 241 (citation omitted). "The 'due weight' standard requires the court to consider the factual findings from the administrative proceedings prima facie correct and, if the court fails to adopt those findings, it must explain its reasons for departing from them." *Id*. (quoting *Shore Reg'l High Sch. Bd. of Educ. v. P.S. ex rel. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004)) (internal quotations omitted). The purpose of the "due weight" standard is to prevent the courts from imposing their own "view of preferable educational methods on the states." *Rowley*, 458 U.S. at 207. Nonetheless, the district court's review over questions of law and the ALJ's application of legal precepts is plenary. *See Carlisle Area Sch. v. Scott P. By & Through Bess P.*, 62 F.3d 520, 528 n.3 (3d Cir. 1995); *D.B. v. Ocean Twp. Bd. of Educ.*, 985 F. Supp. 457, 500 (D.N.J. 1997), *aff'd*, 159 F.3d 1350 (3d Cir. 1998).

### III. <u>ARGUMENT</u>

Plaintiff argues that this Court should vacate and remand the ALJ's determination that the ALJ lacked jurisdiction under New Jersey due process hearing regulations to provide a re-examination of Plaintiff's grades as a remedy. Specifically, Plaintiff reasons that the ALJ failed to consider, in the first instance, whether Defendant violated Plaintiff's IEP and she overlooked the broad remedial powers available under the IDEA to provide equitable remedies for such violations, including revision of grades. In the alternative, Plaintiff asserts that revision of grades is also obtainable under Section 504.[3] Defendant argues, as a threshold matter, that Plaintiff improperly manufactured a final order by voluntarily dismissing the remaining claims following the April Order, and for this reason, Plaintiff's appeal is procedurally defective. On the merits,

---

[3] Because, as explained *infra*, the IDEA provides broad power to courts to remedy violations of the Act, the Court need not consider whether Section 504 also may provide Plaintiff her requested remedy.

Defendant maintains that it is entitled to summary judgment because a re-examination of grades is not available to Plaintiff as a remedy.

### A. Plaintiff Appeals a Valid Final Order

As a threshold matter, Defendant contends that the ALJ's April Order was not a final order, and therefore, Plaintiff's appeal is "fatally defective." Def. Mot. for Summ. Judg. at 25. In that regard, Defendant claims that Plaintiff improperly "manufactured" a final order by requesting dismissal of the remaining claims not resolved in the April Order, and therefore, Plaintiff is, in effect, appealing an interlocutory order without seeking leave of court. *Id*. While Plaintiff agrees that the April Order, by itself, "was interlocutory, and not subject to appeal," she maintains that a voluntary dismissal with prejudice of the remaining claims, as set forth in the January Order, renders the April Order final. Pl. Opp. to Mot. for Summ. Judg. at 4-7. I agree with Plaintiff.

The Third Circuit has "recognized that settled policy in the federal courts discourages piecemeal appeals and, so, generally recourse may be had to appellate tribunals only when final orders are the subject of review." *Trevino-Barton v. Pittsburgh Nat. Bank.*, 919 F.2d 874, 877-78 (3d Cir. 1990) (internal quotations and citation omitted). A "final decision" is a decision that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment[.]" *New Jersey, Dept. of Treasury, Div. of Inv. v. Fuld*, 604 F.3d 816, 819 (3d Cir. 2010) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1995)).

In support of Defendant's argument that Plaintiff improperly "manufactured" finality, Defendant, erroneously, cites *Microsoft Corp. v. Baker* for the proposition that a party cannot voluntarily dismiss its claims to create a final order. This reading is far too broad, as explained *infra*, because *Microsoft*'s holding was limited to the case's procedural context and the particular tactic respondents applied in that context. In *Microsoft*, the respondents, owners of Microsoft's

10

Xbox 360 gaming console, filed a putative class action due to alleged product design defects. 137 S.Ct. 1702, 1704 (2017). When the district court struck respondents' class allegations, respondents filed for permission under Federal Rule of Civil Procedure 23(f) ("Rule 23(f)"), which governs permissive interlocutory appeals of class-certification rulings, to bring an appeal of that order, which both the district and circuit court denied. *Id*. Rather than pursuing their claims on the merits, "respondents stipulated to voluntary dismissal of their claims with prejudice, but reserved the right to revive their claims" should the circuit court reverse the district court's certification denial. *Id*. In finding that appellate courts lacked jurisdiction to hear such manufactured appeals, the Supreme Court narrowly focused its holding to the issues at hand. The Court found that respondents' "voluntary-dismissal tactic . . . invite[s] protracted litigation and piecemeal appeals" due to the specific nature of Rule 23(f). *Id*. at 1713. The Court explained that should respondents' tactic be allowed, litigants denied permissive class certification by a circuit court could return to the district court, litigate their claims again, and if the district court denied class certification on *different* grounds than the first attempt, the litigant would be able to force *another* appellate review by again voluntarily dismissing their claims in the same manner. *Id*. In "designing Rule 23(f)'s provision for discretionary review, [the Court] sought to prevent such disruption and delay." *Id*. Further, the Court was concerned that respondents' voluntary-dismissal "allow[ed] for indiscriminate appellate review of interlocutory orders" and "undercut[] Rule 23(f)'s discretionary regime," which was a "consideration of prime significance to the jurisdictional issue before [the Court]." *Id*. at 1714 (quoting *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 46 (1995)). For these reasons, among others, the Court held that federal courts lack jurisdiction "to review an order denying class certification (or, as here, an order striking class allegations) after the named plaintiffs have voluntarily dismissed their claims with prejudice." *Id*. at 1704.

11

*Microsoft* clearly is inapplicable to the instant matter. First, and most obviously, Plaintiff's appeal does not derive from a denial of class certification, nor from a permissive interlocutory appeal under 23(f). Second, and even more directly, the *Microsoft* respondents "reserved the right to revive their claims should the Court of Appeals reverse the District Court's certification denial." *Id*. at 1707. But, here, Plaintiff has reserved no rights to revive her claims, conceding as much in briefing. *See* Pl. Opp. to Mot. for Summ. Judg. at 6 ("M.A.'s remaining claims were voluntarily dismissed, and she reserves no rights."). Thus, the policy concerns expressed by the Supreme Court, namely, protracted and piecemeal litigation, are not at issue here as there has been finality of the entire administrative matter. *Microsoft*, 137 S.Ct. at 1713. Finally, and in that connection, this matter does not implicate any possibility for "indiscriminate appellate review of interlocutory orders[,]" because all of Plaintiff's claims have been dismissed, either on the merits by the ALJ or voluntarily dismissed; and therefore, there is no similar mechanism for Plaintiff to create the endless cycle of interlocutory litigation that concerned the *Microsoft* Court. *Id*. at 1714. For these reasons, *Microsoft* does not control the outcome here.

More relevant, outside of the class action context, the Third Circuit has expressly "recognized that a voluntary dismissal with prejudice constitutes a final order, thereby making interlocutory orders appealable." *State Nat'l Ins. Co. v. Cty. of Camden*, 824 F.3d 399, 408 n.31 (3d Cir. 2016); *see O'Boyle v. Jiffy Lube Int'l., Inc.*, 866 F.2d 88 (3d Cir. 1989) (holding that plaintiff's voluntary dismissal with prejudice of only remaining claim after other claims were dismissed constituted appealable, final judgment); *Trevino-Barton*, 919 F.2d at 878 (allowing appeal where plaintiff voluntarily dismissed remaining count following district court granting summary judgment for defendant on all other counts and noting that voluntary dismissals do not

disturb the principles of finality so long as the plaintiff is "barred from reasserting or has abandoned the remaining claim[.]").

Given the Third Circuit case law, here, I find that the ALJ's April Order is a valid final order. For one, the January Order explained that the April Order "granted [Defendant's] motion for partial dismissal 'with respect to a reexamination of grades and school records[.]'" Compl. Ex. D. The January Order also noted Plaintiff's desire to dismiss all remaining claims in the amended petition so as to pursue an appeal of the April Order. *Id*. In that regard, the ALJ dismissed Plaintiff's amended petition "in its entirety" and stated that the decision was final pursuant to 20 U.S.C. § 1415(i)(1)(A), and "appealable by filing a complaint and bringing a civil action . . . in a district court of the United States" pursuant to 20 U.S.C. § 1415(i)(2).[4] *Id*. For the foregoing reasons, I find Plaintiff appealed a valid final order.

### B. The ALJ Did Not Appropriately Consider Whether Defendant's Actions Violated Plaintiff's Right to a FAPE

Defendant maintains that the ALJ's April Order should be affirmed for two reasons. First, Defendant argues that revision of Plaintiff's grades is not an available remedy for FAPE violations under the IDEA.[5] Def. Mot. for Summ. Judg. at 14-17. Second, Defendant argues, in line with the April Order, that Plaintiff's requested remedy is unavailable to due process petitioners, and is only available through the New Jersey general education regulatory scheme that specifically

---

[4] Although the January Order does not explicitly state that the claims are dismissed with prejudice, Plaintiff admits such in her briefing. First, Plaintiff concedes that "M.A.'s remaining claims were voluntarily dismissed, and she reserves no rights." Pl. Opp. to Mot. for Summ. Judg. at 6. Second, Plaintiff maintains that she requested the remaining claims be dismissed because they became moot during the pendency of the action. *Id*. at 5 ("Only when the remaining claims, having become moot, were dismissed (pursuant to Plaintiff's request), did an appeal become available.").

[5] The ALJ's April Order did not address this argument.

governs grade appeals. *Id*. at 18. To the contrary, Plaintiff contends that because the request for grade changes flows directly from Defendants' failure to implement Plaintiff's IEP,[6] Plaintiff's claim arises solely from her FAPE claim, and do not fall under New Jersey's general education regulations. Pl. Mot. for Summ. Judg. at 1. Therefore, Plaintiff requests that this Court vacate the April Order and remand this matter for a hearing on the merits of Plaintiff's FAPE claim. *Id*. at 2.

As an initial matter, the Court takes issue with how Plaintiff has characterized her requested relief as a "re-examination of grades." Rather, Plaintiff is requesting, purportedly consistent with the accommodations in her IEPs from the 2014-2015 and 2015-2016 school years, an order requiring Defendant to consider late-completed schoolwork that was not considered as part of her final grades. *See* Pl. Mot. for Summ. Judg. at 11 ("[T]he [Defendant] discriminated against Plaintiff and refused to comply with the accommodations [in her IEP] by not consistently allowing her to submit late assignments. This discrimination caused Plaintiff to receive grades that did not accurately reflect her work."); Compl. Ex. C at 18 (seeking "[a]n Order that the [Defendant] review and revise grades in academic classes based on completed work that was not previously graded and included in the calculation of Plaintiff's final grades."). This is different than a general request to re-examine her grades untethered from Plaintiff's IEP, and to be clear, this is Plaintiff's only remaining FAPE claim.

Because of the confusing manner in which Plaintiff pleaded her IDEA claims in her amended due process petition, it caused the ALJ to find that to the extent Plaintiff is seeking to

---

[6] Due to her disability, Plaintiff was frequently absent from or late to school, and therefore, Plaintiff's IEPs provided accommodations allowing her to make up late schoolwork. Compl. ¶¶26-43; *see* Compl. Ex. F (letter from Defendant to Plaintiff's attorney noting that Plaintiff had 53 unexcused absences and had been tardy 109 days during the 2015-2016 school year). Neither party appears to dispute that Plaintiff's IEP contemplated grade adjustments in certain circumstances.

14

appeal her grades, she must do so through New Jersey's general education regulations. However, having considered the pleadings in the instant Complaint and the due process petition, I have re-characterized and limited Plaintiff's remaining FAPE claim to the following: whether Defendant violated Plaintiff's IEP by allegedly failing to consider late assignments submitted by Plaintiff, which Plaintiff claims to have fallen within her IEP accommodations, and thus, as a remedy these assignments should now be considered. And, only in this limited context, I find that the ALJ erred by not having considered Plaintiff's FAPE claim on the merits.

Under the IDEA, a FAPE is a special education and related service that (1) has been provided at the public expense; (2) meets the standards of the relevant State's educational agency; (3) includes appropriate preschool, elementary school, or secondary school in the relevant state; and (4) is provided in conformity with the IEP required under law. 20 U.S.C. § 1401(9). "An IEP is the primary vehicle for providing disabled students with the required [FAPE]." Compl. Ex. A at 5; *see Carlisle*, 62 F.3d at 526 ("The core of [the] entitlement [to a FAPE] is provided by the IEP, the package of special educational and related services designed to meet the unique needs of the disabled child.").

Indeed, the New Jersey due process hearing regulation provides that a hearing "may be requested when there is a disagreement regarding . . . the provision of a free, appropriate, public education[.]" N.J.A.C. 6A:14–2.7(a). In turn, N.J.A.C. 6A:14–2.7(k) requires that "[t]he decision made by an administrative law judge in a due process hearing shall be made on substantive grounds based on a determination of whether the child received a free, appropriate public education (FAPE)." N.J.A.C. 6A:14–2.7(k). On the other hand, the regulation related to student records provides that a parent or student may challenge grades "on grounds of inaccuracy, irrelevancy, impermissive disclosure, inclusion of improper information or denial of access to organizations,

agencies and persons." N.J.A.C. 6A:32–7.7(a). Relevant here, and importantly, while the student records regulation lists the grounds for challenges on the narrow issue of student records, the list does not include a failure to provide a FAPE.

Here, Plaintiff's due process petition was brought regarding a disagreement over whether Plaintiff received a FAPE. Compl. Ex. C ¶¶ 120-129; *see* 20 U.S.C. § 1415(a). The due process petition also alleged that Defendant denied Plaintiff a FAPE in violation of the IDEA and Section 504. *Id*. at ¶¶ 120-138. In that regard, the due process hearing was the appropriate forum in which Plaintiff could seek the relief pursuant to the applicable IEP. *See* Compl. ¶¶ 71-72; *Carlisle*, 62 F.3d at 526 ("The core of [the] entitlement [to a FAPE] is provided by the IEP, the package of special educational and related services designed to meet the unique needs of the disabled child."). Thus, the ALJ's decision that Plaintiff's claim cannot be brought in a due process hearing was made in error, and the matter is remanded for further proceedings.[7] In that connection, upon remand, should the ALJ find that Defendant violated Plaintiff's right to a FAPE, the ALJ is not barred from ordering, so long as it is consistent with Plaintiff's IEP, Defendant to consider Plaintiff's late-completed work, determine what grades she earned from such work, and with regards to her final grades, place Plaintiff in the position she would have been in had the work

---

[7] The ALJ and Defendant cite to the same two cases as evidence that grade disputes are unavailable in due process hearings. *See M.R. v. Northern Valley Bd. of Educ.*, EDS 01527-05 (March 22, 2005), https://njlaw.rutgers.edu/collections/oal/final/eds01527-05_1.html; *R.S. v. Hillsborough Bd. of Educ.*, EDS 2168-00 (April 18, 2000), https://njlaw.rutgers.edu/collections/oal/final/eds2168-00_1.html. The factual matter in these opinions is limited, but neither case appears to be on point. Although both cases found that a due process hearing was an improper venue for a request to change grades, neither case involved a dispute over whether a plaintiff received grade changes pursuant to their IEP, which is at issue here.

been considered at the appropriate time.[8] *See G.L. v. Ligonier Valley Sch. Dist. Authority*, 802 F.3d 601, 608 (3d Cir. 2015) (finding that under the IDEA, a "district court is authorized to grant 'such relief as the court determines is appropriate[.]'" (quoting *A.W. v. Jersey City Public Sch.*, 486 F.3d 791, 802 (3d Cir. 2017))); *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 237-38 ("In determining the scope of the relief authorized, . . . the ordinary meaning of these words confers broad discretion on the court and . . . absent any indication to the contrary, what relief is appropriate must be determined in light of the Act's broad purpose of providing children with disabilities a FAPE[.]" (internal quotations and citation omitted)); *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 369 (1985) ("The ordinary meaning of these words confers broad discretion on the court. The type of relief is not further specified, except that it must be 'appropriate.'"); *Ferren C. v. Sch. Dist. of Philadelphia*, 612 F.3d 712, 718-19 (3d Cir. 2010) (citing *Forest Grove* and *Burlington* for the proposition that courts have broad discretion to fashion equitable remedies).

As a final note, the Court does not express any opinion on the ultimate merits of Plaintiff's due process petition or whether her right to a FAPE was violated. Rather, the Court is remanding the matter to the ALJ such that the merits of Plaintiff's narrow claim can be appropriately addressed, and a factual record created. *Carlisle*, 62 F.3d at 526 (authorizing district courts to remand IDEA cases to the state administrative system); *see B.G. v. Ocean City Bd. of Educ.*, No. 13-5166, 2014 WL 4798647, at *9 (D.N.J. Sept. 26, 2014) (clarifying that the court is solely ruling on underlying procedural deficiencies, not the merits, and is remanding the matter for consideration of the merits); *see also Carnwarth v. Bd. of Educ. of Anne Arundel Cty.*, 33 F. Supp.

---

[8] To reiterate, all other IDEA claims brought by Plaintiffs have been voluntarily dismissed. The only claim remanded to the ALJ relates to the sole issue of whether Defendant should be ordered to consider Plaintiff's late-completed schoolwork consistent with her IEP.

17

2d 431, 433-34 (D. Md. 1998) ("This Court's limited IDEA jurisdiction permits review of factual findings and legal determinations by an ALJ, but does not generally permit consideration of the substantive merits of the IDEA claims in the first instance.").

Upon remand, however, Plaintiff may face an uphill battle in proving her limited FAPE claim. First, as the ALJ keenly observed regarding Plaintiff's claim for inadequate home instruction, many of Plaintiff's allegations stem from conduct that occurred outside the two-year statute of limitations for IDEA claims. *See* N.J.A.C. 6A:14–2.7(a)(1). Indeed, the specific grading consideration that Plaintiff requests concerns the 2014-2015 and 2015-2016 school years, which would implicate similar statute of limitations issues. Second, even if Plaintiff's claim is not barred by the statute of limitations, Plaintiff must demonstrate that the alleged late-completed assignments were in fact completed, and further, that the timing for submitting those assignments was contemplated by the relevant IEP then in place. Put differently, Plaintiff must show that the various late assignments she allegedly submitted were within the expanded time-period accorded by the terms of the IEP, and that the school district's failure to consider them violated Plaintiff's IEP. In that regard, Plaintiff cannot simply argue that teachers made certain "promises" to accept Plaintiff's late work at a particular time. Rather, the timing of submissions must be found to have been within the contemplation of the IEP. Finally, even if the late work should have been considered, the remedy is to have those assignments evaluated and graded, which may or may not result in any change in the final grades that Plaintiff earned during the 2014-2015 and 2015-2016 school years. Indeed, if Plaintiff could prove all of the foregoing, the ALJ, then, must place Plaintiff in the position that she would have been in had her assignments been considered by Defendant under the IEP.

IV. **CONCLUSION**

For the reasons that follow, Plaintiff's Motion for Summary Judgment is **GRANTED** insofar as it is limited to a FAPE claim based on alleged violations of Plaintiff's Individualized Education Program related to a failure to consider Plaintiff's late-completed schoolwork, and the ALJ's decision in that regard is **REMANDED** for further proceedings consistent with this Opinion. All other aspects of Plaintiff's motion are **DENIED**. Defendant's Motion for Summary Judgment is also **DENIED**.

Date: November 22, 2021                    /s/ Freda L. Wolfson
                                           Freda L. Wolfson
                                           U.S. Chief District Judge