UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| M.A., | Civ. No. 20-5218 (JBD) |
| *Plaintiff*, | |
| | OPINION |
| v. | |
| WALL TOWNSHIP BOARD OF EDUCATION, | |
| *Defendant*. | |

In this case filed under the Individuals with Disabilities Education Act ("IDEA") against defendant Wall Township Board of Education (the "Board"), plaintiff M.A. seeks an award of attorneys' fees based on her asserted status as a prevailing party.  [Dkt. 33.]  The sole basis for the request is this Court's prior opinion and order granting in part and denying in part M.A.'s motion for summary judgment, vacating a portion of the challenged decision of the Administrative Law Judge ("ALJ"), and remanding the matter for a due process hearing and decision on a single, narrow claim.  [Dkts. 25-26.]  The Board opposes M.A.'s position that she is a prevailing party and challenges as excessive the size of the requested fee award. [Dkt. 34.]

The Court agrees with M.A. that the Third Circuit's precedential decision in *H.E. v. Walter D. Palmer Leadership Learning Partners Charter School*, 873 F.3d 406 (3d Cir. 2017), controls here, and that she is a prevailing party entitled to "reasonable" attorneys' fees.  But given the extremely limited nature of the

procedural relief that the Court provided and the circumstances leading to and following that relief, the Court concludes that M.A.'s fee request is excessive. For the reasons set forth below, the Court, exercising its equitable discretion, concludes that a "reasonable" fee commensurate with the kind and degree of M.A.'s success is $23,079.10. The Court will order the Board to pay M.A. that amount.[1]

I.     BACKGROUND

The Court's opinion granting in part and denying in part M.A.'s motion for summary judgment recounted in detail the background and procedural history of this case. *See* [Dkt. 25] ("SJ Op.") at 4-8. Because it is relevant both to the question whether M.A. is a prevailing party under the IDEA and to the reasonableness of any resulting fee award, the Court recounts again that history here, drawing from its earlier opinion. For present purposes, the material aspects of the case and its history are not in dispute.

M.A. is a former Wall High School ("Wall") student. She had an identified disability rendering her eligible to receive special education and related services under the IDEA. According to M.A., her individualized education programs ("IEPs") always included accommodations to reduce the anxiety that she experienced at school, such as modifications for classwork, homework, and tests, as well as extended time to complete tests and assignments. This was necessary, M.A. claimed, because

---

[1]     The Court's decision here is entered pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Civil Rule 73.1. *See* [Dkt. 64].

her disability caused her frequently to be absent from or late to school. These absences, in turn, resulted in M.A. falling behind on her assignments and tests, often resulting in completing schoolwork assignments late. According to M.A., because of these absences, Wall routinely permitted her to submit assignments late and without penalty. Additionally, when M.A. submitted her completed late schoolwork, the school, pursuant to her IEPs, would revise her grades to reflect the completed work. But M.A. claimed that, on several occasions during the 2014-2015 and 2015-2016 school years, the school failed to revise her grades once she completed her assignments. In those years, M.A. claimed that this happened, at a minimum, in her classes in Ceramics, English, French I, Freshman Seminar, and History.

In June 2018, shortly before she was set to graduate from Wall, M.A. filed a "Request for Mediation" with the New Jersey Department of Education, alleging that the Board had failed effectively to plan for her transition out of high school; discriminated against her the entire four years of high school by failing to implement her IEPs; did not provide her with adequate home instruction; and improperly communicated with her medical professionals and coach in a manner that caused emotional distress and exacerbated her disability. M.A. requested as relief (i) retention at Wall for a fifth year; (ii) revisitation of her grades dating back to ninth grade; (iii) compensatory education for the Board's alleged failure to provide home instruction; (iv) amendment of school records; and (v) compensatory education for the Board's alleged exacerbation of M.A.'s disabilities. *Id.* at 5-6. (Pursuant to

3

the IDEA's "stay-put" provision, *see* 20 U.S.C. § 1415(j), M.A. remained at Wall for a fifth year, completed her high school studies in June 2019, and received her diploma. *See* [Dkt. 18] ¶ 14.)

In August 2018, the parties participated in a mediation with a state mediator. When mediation proved unsuccessful, M.A. requested that the matter be converted to a due process hearing, which caused her claims to be transferred to the Office of Administrative Law ("OAL") as a due process petition.  Later, in September 2018, the parties again attempted unsuccessfully to settle at the OAL.  *See* SJ Op. at 6.

In December 2018, the Board filed a Motion for Partial Dismissal. Specifically, it sought dismissal of M.A.'s claims for compensatory education and revisitation of her grades and school records.  The Board argued that M.A.'s claim for inadequate home instruction was time-barred, and that other requested remedies, including revisitation of M.A.'s grades, were not available under the IDEA. In February 2019, M.A. filed a brief in opposition to the dismissal motion and in support of her own motion to amend the due process petition.  M.A. proposed to allege that the Board failed to provide her with a free and appropriate education ("FAPE") under both the IDEA and Section 504 of the Rehabilitation Act of 1973, and that the Board inflicted severe emotional distress on her by removing her from the tennis team and interfering with her medical professionals.  *See id.* at 6.

In her proposed amended due process petition, M.A. sought (i) compensatory education due to the Board's failure to provide a FAPE; (ii) appropriate transition

4

planning to prepare M.A. for post-graduate education and employment; (iii) an order compelling the Board to review and revise her grades based on completed work that Wall had not previously graded and included in the calculation of her final grades; and (iv) compensatory, consequential, and punitive damages for infliction of emotional distress.  The request for grade revisitation stemmed from M.A.'s dual claims that (i) the Board failed to execute the accommodations in her IEPs during the 2014-2015 and 2015-2016 school years, which permitted M.A. additional time to complete her assignments and tests; and (ii) the Board failed to provide adequate home instruction, which resulted in poor grades.  *See id.* at 6-7.

In April 2019, the assigned ALJ granted M.A.'s motion to amend her petition, finding that the Board would not be prejudiced "because the proposed amended petition does not set forth any new allegations, but rather expands upon those in the original request for mediation," and that she "should not have to file an entirely new due-process petition for identical facts and claims."  [Dkt. 1], Ex. A at 7.  The ALJ then granted in part and denied in part the Board's partial motion to dismiss the amended petition.  The ALJ granted the Board's motion to dismiss with respect to reexamination of grades and school records, concluding that the request for such relief was improperly brought in a special education due process hearing.  The ALJ also dismissed M.A.'s claim for compensatory education based upon violations of confidentiality or infliction of emotional distress.  But the ALJ denied, without prejudice, the Board's motion to dismiss as to M.A.'s claim for compensatory

education for inadequate home instruction, explaining that a due process hearing was needed to determine when, for statute of limitations purposes, M.A. knew or should have known that the Board had denied her a FAPE.  *See* SJ Op. at 7.

Thereafter, in January 2020, before a hearing took place, M.A. voluntarily withdrew, with the ALJ's permission, all claims that were not disposed of in the ALJ's April 2019 order, while reserving appellate rights with respect to that order. Although M.A. did not explicitly identify which claims survived the ALJ's order, this Court later determined that there were at least two claims that M.A. raised that qualified as having been voluntarily dismissed:  (i) M.A.'s FAPE claim requesting compensatory education, including revision of grades, due to inadequate home instruction; and (ii) M.A.'s FAPE claim requesting compensatory education due to the Board's failure to provide appropriate transition planning for post-graduate education, employment, and independent living.  *See id.* at 8.

Following the dismissal of the amended due process petition, M.A. filed this action challenging the ALJ's determination that grade reexamination was a remedy not obtainable in a special education due process hearing, which was the second claim in her mediation request.  *See* [Dkt. 1], Ex. B ¶ 3 ("All of [M.A.'s] grades, from ninth grade onward, must be revisited in light of Wall's repeated failures to accommodate her disabilities"); *see also id.*, Ex. C at 18 (requesting relief of an "Order that the District review and revise grades in academic classes based on completed work that was not previously graded and included in the calculation of

6

M.A.'s final grades").  The parties cross-moved for summary judgment and, in November 2021, this Court issued its opinion and order granting in part and denying in part M.A.'s motion for summary judgment.  After recharacterizing and limiting the nature of M.A.'s remaining claim for relief, the Court concluded that the ALJ had erred in determining that the relief that M.A. sought was unobtainable in a special education due process hearing and by not considering M.A.'s claim on the merits. SJ Op. at 15-16.  Notably, in doing so the Court attributed part of the ALJ's legal error to "the confusing manner in which [M.A.] pleaded her IDEA claims in her amended due process petition."  *Id.* at 14.  Specifically, M.A. characterized her FAPE claim as one seeking the revisitation of grades instead of a claim requiring the Board to consider late-completed schoolwork consistent with her IEPs.  M.A.'s characterization, the Court explained, "caused the ALJ to find that to the extent [M.A.] is seeking to appeal her grades, she must do so through New Jersey's general education regulations."  *Id.* at 14-15.  Because that is not in substance what M.A. actually sought, the Court recharacterized and limited the specific nature of M.A.'s request for relief.  *Id.* at 15.

Having determined that the ALJ erred, the Court granted M.A.'s motion for summary judgment "insofar as it is limited to a FAPE claim based on alleged violations of [M.A.'s IEPs] related to a failure to consider [her] late-completed schoolwork," limited to the 2014-2015 and 2015-2016 school years, since the only specific allegations regarding grade recalculation were limited to classes from those

years.  *Id.* at 19 & 5 n.2.  The Court remanded the matter for development of a

factual record on that limited claim and a decision by the ALJ in the first instance on

the question whether the Board violated M.A.'s right to a FAPE by failing to consider

her late-completed schoolwork during the two school years in question.  *Id.*

The Court clarified that it would be within the ALJ's authority to order

"[the Board to] consider [M.A.'s] late-completed work, determine what grades she

earned from such work, and with regards to her final grades, place [M.A.] in the

position she would have been in had the work been considered at the appropriate

time."  *Id.* at 16-17.  The Court also emphasized that the remaining claim on remand

was "narrow" and "limited"; noted that for multiple reasons, M.A. "may face an

uphill battle in proving her limited FAPE claim"; and reiterated that "all other IDEA

claims" that M.A. had brought had been voluntarily dismissed, and that "[t]he only

claim remanded to the ALJ relates to the sole issue of whether [the Board] should be

ordered to consider [M.A.'s] late-completed schoolwork consistent with her IEP" for

the two school years at issue.  *Id.* at 17-18 & n.8.  Accordingly, the Court denied

M.A.'s motion for summary judgment in all other respects and denied the Board's

motion for summary judgment as well.  *Id.* at 19.

Following this Court's order, no further proceedings before the ALJ ensued.

M.A. having since graduated from high school and moved on, the limited due process

hearing on M.A.'s sole remaining FAPE claim did not go forward.  Nor, to date, has

M.A. obtained any substantive relief on that claim, through settlement or otherwise.

In February 2022, M.A. filed the instant application through counsel for an award of attorneys' fees and expenses, asserting that as a result of this Court's remand order, she was a prevailing party under the IDEA.  Seeking fees and costs incurred for all proceedings in the OAL and in this Court, M.A. requests a total fee award of $198,901.50.  [Dkt. 55.]  The Board opposes the motion, arguing that M.A. is not a prevailing party and, in the alternative, that her fee application is excessive.  Following M.A.'s fee application, the Court engaged in an unsuccessful effort to settle the dispute, and the parties thereafter requested a decision.

## II.    APPLICABLE LAW

Under the traditional "American Rule," parties typically are responsible for paying their own attorneys' fees.  *John T. ex rel. Paul T. v. Delaware Cty. Intermediate Unit*, 318 F.3d 545, 555 (3d Cir. 2003).  Accordingly, courts "follow 'a general practice of not awarding fees to a prevailing party absent explicit statutory authority.'"  *Id.* (quoting *Key Tronic Corp. v. United States*, 511 U.S. 809, 819 (1994)).

The IDEA grants such explicit authority.  *Id.*  The statute says that "[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability."  20 U.S.C. § 1415(i)(3)(B)(i)(I).  "A 'prevailing party' for attorney's fees purposes is a party that succeeds on any significant issue in litigation which achieves some of the benefit the party sought in bringing suit."

9

*D.E.R. v. Bd. of Educ. of Borough of Ramsey*, Civ. No. 04-2274 (DRD), 2005 WL
1177944, at \*18 (D.N.J. May 18, 2005) (citing *John T.*, 318 F.3d at 555).  "In the
Third Circuit, a court must determine whether: (1) the plaintiff obtained relief on a
significant claim in the litigation; and (2) there is a causal connection between the
litigation and the relief obtained from the defendant."  *T.B. v. Mount Laurel Bd. of
Educ.*, Civ. No. 09-4780 (JBS), 2012 WL 1079088, at \*2 (D.N.J. Mar. 30, 2012) (citing
*Metro. Pittsburgh Crusade for Voters v. City of Pittsburgh*, 964 F.2d 244, 250 (3d Cir.
1992)).  "[T]he touchstone of the prevailing party inquiry must be the material
alteration of the legal relationship of the parties in a manner which Congress sought
to promote in the fee statute."  *John T.*, 318 F.3d at 555 (citation omitted).  *See also
H.E.*, 873 F.3d at 413.  This is a "generous formulation," but "[w]here the plaintiff's
success on a legal claim can be characterized as purely technical or *de minimis*,"
a court is justified in concluding that the plaintiff is not a prevailing party.  *Texas
State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989).  At the
same time, however, "the degree of the plaintiff's overall success goes to the
reasonableness of the award," and "not to the availability of the fee award *vel non*."
*Id.* at 793.

Once a court determines that a party has prevailed for attorneys' fees
purposes, it may, in its discretion, award a "reasonable" fee.  20 U.S.C.
§ 1415(i)(3)(B)(i)(I).  As a general starting point when awarding attorneys' fees,
courts calculate the "lodestar," which is the "number of hours reasonably expended

10

on the litigation multiplied by a reasonable hourly rate." *McKenna v. City of Philadelphia*, 582 F.3d 447, 455 (3d Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  "A court's calculation of the lodestar, however, does not end its inquiry on a fee application.  A district court can adjust a fee award upward or downward based upon the results obtained in a case." *Id.* (citing *Hensley*, 461 U.S. at 434).  Where a plaintiff's "claims arise out of a common core of facts and involve related legal theories, 'the most critical factor is the degree of success obtained.'" *D.E.R.*, *supra*, 2005 WL 1177944, at *19 (quoting *Hensley*, 461 U.S. at 436).  "Where a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Id.*  In that case, "[t]o arrive at a reasonable fee award, a district court should exercise its equitable discretion 'either by attempting to identify specific hours that should be eliminated or by simply reducing the award to account for the limited success of the plaintiff.'" *Id.* (quoting *Texas State Teachers Ass'n*, 489 U.S. at 789–790).  "Accordingly, a court must reduce the fee award if 'it concludes [that] the benefits of the litigation were not substantial enough to merit the full amount of the lodestar.'" *McDonnell v. United States*, 870 F. Supp. 576, 587 (D.N.J. 1994) (citation omitted).  "[D]istrict courts have wide discretion to determine whether, and by how much, fees should be reduced for lack of success." *Gresko v. Pemberton Twp. Bd. of Educ.*, Civ. No. 19-638 (NLH), 2020 WL 6042317, at *10 (D.N.J. Oct. 13, 2020) (quoting *D'Orazio v. Washington Twp.*, 501 F. App'x 185, 188

(3d Cir. 2012) (not precedential)).  Trial courts exercising that discretion must

remember that "the 'essential goal' of fee shifting 'is to do rough justice, not to

achieve auditing perfection.'"  *H.C. v. N.Y.C. Dep't of Educ.*, 71 F.4th 120, 125

(2d Cir. 2023) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)).

## III.   DISCUSSION

As noted, M.A. seeks fees under the IDEA as a prevailing party.  In response,

the Board argues first that M.A. was not a prevailing party within the meaning of

the statute.  The Board argues second that even if M.A. is a prevailing party, her

requested fee application is excessive.  Under binding Third Circuit precedent, the

Court disagrees with the Board on its first argument and concludes that M.A. is a

prevailing party entitled to reasonable attorneys' fees.  But given the extremely

limited nature of the relief that M.A. obtained in this Court, the circumstances,

procedural history, and manner in which that relief was sought and obtained, and

M.A.'s failure to avail herself of the very relief that this Court's order provided, the

Court agrees with the Board on its second argument.  Exercising its equitable

discretion, the Court will award a limited fee.

    A.    <u>M.A. is a Prevailing Party Entitled to Attorneys' Fees.</u>

M.A. argues that she is a prevailing party within the meaning of

§ 1415(i)(3)(B)(i)(I).  Her argument is straightforward.  She says that the ALJ denied

her an opportunity for a hearing and relief in respect of her specific claim that the

Board violated her right to a FAPE when it failed to consider late-submitted

schoolwork.  This Court's summary judgment order, she then asserts, found that decision to be in error, and remanded the case back to the OAL for a hearing, development of a factual record, and a decision on that claim.  Invoking the Third Circuit's decision in *H.E.*, 873 F.3d 406, M.A. argues that this Court provided the very procedural relief that she requested—a remand to the OAL—and that she accordingly has prevailed in this action.  [Dkt. 33-1] at 1-2, 4-5; [Dkt. 37] at 5-7.

The Board, in response, argues—largely based on the unusual procedural history of this case—that M.A. did not prevail.  In essence, the Board argues that in light of (i) the ALJ's partial dismissal order, (ii) M.A.'s decision to dismiss voluntarily the claims that remained, and (iii) this Court's summary judgment order, the net result was that M.A. actually received the right to a more limited due process hearing—and a consequent reduction in the FAPE claims that she could pursue—than that to which she would have been entitled had she simply proceeded to the hearing that the ALJ ordered.  [Dkt. 34] at 8-10.  Moreover, the Board argues, the relief that M.A. obtained in this Court was *de minimis* in nature, not on the merits, and granted with the cautionary note that M.A. faced an "uphill battle" in proving her claim on the merits.  *Id.* at 10-12.  The Board also argues that the Third Circuit's decision in *H.E.* is distinguishable.  *Id.* at 12.

M.A. has the better argument on this issue.  In *H.E.*, a hearing officer dismissed the plaintiffs' administrative complaints against the Pennsylvania Department of Education and the charter school that their children attended, which

13

sought a due process hearing for alleged denials of a FAPE as secured by an earlier settlement agreement.  873 F.3d at 409.  On appeal, the district court vacated that decision "and remanded [p]laintiffs' compensatory education claims to the hearing officer for a due process hearing, explaining that the hearing officer had 'erred as a matter of law.'"  *Id.*  When the plaintiffs sought attorneys' fees for having prevailed, the district court found them ineligible because its earlier decision had been "confined to purely procedural matters."  *Id.* at 410.  The Third Circuit reversed, "readily conclud[ing] that even a purely procedural victory under the IDEA can confer prevailing party status."  *Id.* at 413.  The court explained that "if a parent vindicates a procedural right guaranteed by the IDEA, and if the relief she obtains is not temporary forward-looking injunctive relief, then she is a prevailing party under the IDEA attorneys' fee provision and is eligible for an award of attorneys' fees."  *Id.* (cleaned up).  Because the plaintiffs there satisfied that test by vindicating their right to an IDEA procedural due process hearing, the Third Circuit concluded that they were prevailing parties "eligible for an award of 'reasonable attorneys' fees to be set by the District Court in its discretion.'"  *Id.* (cleaned up).

The same is true here.  The ALJ issued an order denying M.A. a due process hearing on a particular claim, which was the basis of M.A.'s appeal to this Court.  The Court, having recharacterized the nature of relief sought through that claim, determined that the ALJ's decision had been in error.  The Court therefore vacated the ALJ's decision and remanded the matter for a hearing and decision on the merits

14

as to that claim.  As in *H.E.*, M.A. sought to vindicate her procedural rights under the IDEA to a due process hearing on a specific claim that erroneously had been denied to her.  Because this Court granted the requested relief, she prevailed.

Attempting to distinguish *H.E.*, the Board emphasizes that the hearing officer in that case rejected entirely the plaintiff's request for a hearing (whereas here the ALJ only improperly denied a hearing on one claim) and that the plaintiffs in *H.E.* ultimately obtained substantive relief through a settlement following the district court's remand.  [Dkt. 34] at 12-14.  Those are, to be sure, factual distinctions, but in the Court's judgment they do not make a legal difference.  Through M.A.'s appeal to this Court, she obtained specific procedural relief in the form of a due process hearing and decision on a particular issue, which the ALJ had denied her in error. That procedural relief is the same—in kind and in form—as the relief awarded in *H.E.*  Moreover, nothing in the Third Circuit's decision as to prevailing-party status turned on the fact that the plaintiffs subsequently negotiated favorable substantive relief on remand.  To the contrary, the Court's analysis made clear that the plaintiffs would have been prevailing parties even if they obtained no substantive relief at all. *H.E.*, 873 F.3d at 412–13 (discussing *Bagby v. Beal*, 606 F.2d 411 (3d Cir. 1979)).[2] The Board's efforts to distinguish *H.E.* are not persuasive.

---

[2]     As the Court discusses below, however, M.A.'s failure to obtain substantive relief on remand is significantly relevant to the size of the fee award.

Citing the Third Circuit's earlier decision in *J.O. ex rel. C.O. v. Orange Township Board of Education*, 287 F.3d 267 (3d Cir. 2002), the Board also argues that M.A. is not a prevailing party because she did not obtain relief "on the merits." [Dkt. 34] at 14.  The Board misinterprets that decision.  There, the Third Circuit affirmed the district court's decision that an ALJ's emergency reinstatement order was the functional equivalent of an automatic preliminary injunction that preserved the status quo.  *J.O.*, 287 F.3d at 272, 274.  Because "there [wa]s no indication that [the ALJ] reached the merits of the parties' arguments" in issuing the reinstatement order, the Third Circuit concluded that the district court had not erred in determining that the ALJ's order was not "derived from some determination on the merits."  *Id.* at 274.

The Board's reliance on *J.O.* incorrectly conflates *merits* with *substance*. *J.O.* does not stand for the proposition that a party cannot "prevail" unless he or she has obtained *substantive* relief; indeed, as just discussed, the Third Circuit's decision in *H.E.* holds exactly the opposite.  Instead, *J.O.* simply requires that for a party to "prevail" on an issue, the court must reach and decide the *merits* of the parties' arguments rather than issuing a decision for some other, non-merits-based reason. Here, this Court grappled with and decided the *merits* of M.A.'s argument that the ALJ had erred in withholding her right to a due process hearing on the single FAPE claim concerning late-submitted schoolwork.  That M.A. never ultimately obtained *substantive* relief on that claim is beside the point for prevailing-party purposes.

16

*See M.R. v. Ridley Sch. Dist.*, 868 F.3d 218, 225-26 (3d Cir. 2017) (holding that plaintiff was a prevailing party where she obtained backward-looking reimbursement under the IDEA's stay-put provision, "[e]ven though [her] parents did not succeed with respect to their request for a permanent private school placement," because the parents' "procedural success [was] a victory 'on the merits' that conferred 'prevailing party' status"). When this Court remanded the case to the OAL for a hearing and decision on a claim that she had theretofore been denied, M.A. "obtained a merits-based victory." *See id* at 230.

Finally, the Board emphasizes that M.A. could have had a due process hearing, and that she could have had it as to claims for all four years of high school, but as a result of her litigation strategy, this Court's relief actually gave her more limited options than she would have had under the ALJ's partial dismissal order. That is true. But that argument, like most of the Board's arguments on this question, concerns "[t]he degree of [M.A.'s] success," which "goes to the amount of the ultimate award, not to the availability of an award." *J.O.*, 287 F.3d at 271 (citing *Texas State Teachers Ass'n*, 489 U.S. at 792–93). The Court takes those arguments up in the next section.

Because she secured procedural relief in the form of a due process hearing on a particular claim that the ALJ had erroneously denied her, *H.E.* controls this question and makes M.A. a "prevailing party" entitled to "reasonable" attorneys' fees.

B.     Given the Nature and Circumstances of the Relief Sought, Obtained, and Actually Pursued, the Court will Impose a Substantially Reduced Fee Award.

The Court next concludes that M.A.'s request for an award of nearly $200,000 in these circumstances is excessive and therefore not "reasonable." Exercising its equitable discretion, the Court concludes that a much more limited fee award of $23,079.10 is reasonable and commensurate with the kind and degree of success that M.A. obtained in this case.

1.     The Lodestar

The Court has reviewed M.A.'s initial and supplemental fee applications [Dkts. 33, 55], which identify the number of hours that counsel expended in this matter, from the initial administrative proceedings in the OAL all the way to the present fee request. While the Board questions generally whether some of the claimed hours were truly necessary, [Dkt. 34] at 15-16, the Court finds no basis to conclude that counsel did not actually or reasonably devote the time identified in its applications in connection with this case. Moreover, the Board does not question (nor does the Court) the reasonableness of the blended hourly rate for the assigned attorneys and their professional and administrative staff. Accordingly, the Court accepts as the full lodestar, from start to finish (and including costs), M.A.'s requested fee amount of $198,901.50. [Dkt. 55] at 2.

18

2.      Equitable Adjustment of the Lodestar

As noted above, however, the lodestar is merely the "starting point."

*McKenna*, 582 F.3d at 455.  "Once a lodestar calculation has been reached, a court

may then reduce that amount to account for 'limited success' by a plaintiff, focusing

on 'the significance of the overall relief obtained by the plaintiff in relation to the

hours reasonably expended on the litigation.'"  *McCutcheon v. America's Servicing*

*Co.*, 560 F.3d 143, 151 (3d Cir. 2009) (quoting *Hensley*, 461 U.S. at 435–36).  "There

is no precise rule or formula for making these determinations."  *Hensley*, 461 U.S. at

436.  But as a general matter, the Court "should exercise its equitable discretion

'either by attempting to identify specific hours that should be eliminated or by

simply reducing the award to account for the limited success of the plaintiff.'"  *M.I. v.*

*N. Hunterdon-Voorhees Reg'l High Sch. Dist. Bd. of Educ.*, Civ. No. 20-870 (MAS),

2022 WL 16838596, at *4 (D.N.J. Nov. 9, 2022) (quoting *Texas State Teachers Ass'n*,

489 U.S. at 789-90).  In this case, the Court finds it appropriate to reduce,

substantially, the lodestar amount to reflect M.A.'s extremely limited success.

a.      "Phase I" and "Phase II" Fees

The Court focuses first on the specific type and nature of success that

rendered M.A. a statutory prevailing party, and the specific forum in which she

achieved that success.  The Court has determined above that M.A. is a prevailing

party eligible for fees, based solely on her procedural success *in this Court* in

obtaining a limited remand for a due process hearing as to a single, limited FAPE

claim seeking one specific form of relief.  Because M.A. did not prevail in any meaningful sense before the case reached this Court and remains in essentially the same position that she was in before she filed her mediation request, the Court sees no equitable reason to award M.A. legal fees incurred during the administrative proceedings—either before the New Jersey Department of Education or in the OAL.

Start with what M.A. refers to as "Phase I"—the administrative proceedings before the New Jersey Department of Education, running through the Board's filing of its partial motion to dismiss in the OAL.  Fees incurred during this phase include "preparing the mediation request, client consultations, participation in mediation during the summer of 2019, participation in the settlement conference at the OAL in September 2019, and the initial activities in the OAL." [Dkt. 33-1] at 12.  Efforts to resolve the matter amicably in both the New Jersey Department of Education and the OAL were unsuccessful.  Those efforts have nothing to do with the limited procedural success that M.A. later achieved in this Court, and in this Court only, and so the Court cannot see why any of the fees incurred in those early proceedings fairly should be charged to the Board.

Likewise, the Court concludes that the Board should not be required to pay fees incurred during what M.A. refers to as the "Phase II" proceedings—the administrative litigation that lasted from the Board's partial motion to dismiss

through the ALJ's dismissal order in January 2020.[3]  Again, as described at length

above, M.A. did not achieve any success in the relevant sense until the case reached

this Court, and thereafter achieved no substantive success on her underlying

requests for relief.[4]  The Board prevailed in part on its dismissal motion in the OAL,

and to enable appellate review, M.A. then decided voluntarily to dismiss all

remaining claims.  M.A. chastises the Board for deciding to litigate her due process

petition, *see* [Dkt. 33] at 11, but it is hard to see how the Board's motion to dismiss

was "misguided," *id.*, when much of the claims in the amended due process petition

had been eliminated following the ALJ's decision; when all of them had been

eliminated following M.A.'s decision to voluntarily dismiss outstanding claims; and

when all but one narrow claim had been eliminated following this Court's remand

order.  Moreover, as the Court explains below, at no point has the Board ever been

found to have violated M.A.'s statutory right to a FAPE, and this Court itself

---

[3]      In her initial fee petition, M.A. includes a chart that appears to classify the
period between February 2019 and November 2021 as relating to her appeal to this
Court.  [Dkt. 33-1] at 12.  Elsewhere in her application, however, M.A. states that
the appeal phase of the case ("Phase III") began in February 2020.  *Id.* at 14.  The
latter statement is correct.  M.A. did not elect to dismiss her remaining claims before
the ALJ until January 2020, and counsel's invoices in support of the application
clearly reflect some contemplation of continued administrative proceedings in the
OAL in January 2020.  *See* [Dkt. 33-2] at 16-20.

[4]      The Court recognizes that the ALJ granted M.A.'s motion to file an amended
due process petition before then granting the Board's partial dismissal motion.
While M.A. seeks fees in connection with counsel's preparation of the motion to
amend and the amended petition, she does not argue that she is a prevailing party
as a result of having received leave to file the amended petition.

identified significant hurdles that M.A. would face in obtaining substantive relief on remand.  Viewed from that perspective, the Court cannot fault the Board for its decision to litigate in the OAL, and the Court certainly cannot conclude that M.A.'s prevailing party status based on her limited success in this Court reasonably entitles her to fees incurred during the administrative proceedings.

Although legal fees incurred during preliminary, preparatory, and pre-suit matters may be recoverable in some instances, *cf.* [Dkt. 33-1] at 12-13 (citing cases), the Court determines that this is not reasonably one of them.  Because M.A.'s "success" occurred in this Court only (and that relief was circumscribed in itself), the Court concludes that it would be inequitable and unreasonable to charge to the Board legal fees incurred earlier during the administrative proceedings when M.A. did not "prevail" or achieve success in any relevant sense until the case reached this Court.  While the Phase I and Phase II proceedings were precursors to the action in this Court in the sense that the administrative proceedings happened before the federal appeal, the legal work performed during those early phases did not contribute to M.A.'s success in obtaining a remand for a due process hearing on her request for revisitation of her grades.  Indeed, as the Court discusses further below, it was M.A.'s counsel's characterization of that request for relief at the OAL stage that "caused" the ALJ to err; had M.A.'s counsel characterized that request for relief differently, M.A. may well have had her due process hearing on that issue without need for the action in this Court.  In the Court's view, this fact, among others,

22

dissociates the legal work performed before and through the administrative proceedings from the work performed in this Court that led to M.A.'s procedural success.[5]

The Court will therefore reduce the lodestar in the first instance by all fees incurred during the Phase I and Phase II administrative proceedings because they do not appropriately reflect the kind and degree of M.A.'s success in this Court.  On a conservative review of the original and supplemental fee petitions [Dkts. 33-2, 55], the Court will therefore eliminate from consideration all fees incurred between June 2018 and mid-December 2018 (Phase I), and all fees incurred between mid-December 2018 and January 31, 2020, when it appears that counsel and M.A. began strategizing for bringing her appeal to this Court (Phase II).  *See* [Dkt. 33-2] at 20.[6]

---

[5]   To be clear, the Court does *not* hold that as a matter of law, fees incurred during administrative proceedings are never recoverable where success is only achieved on appeal in federal court.  Rather, the Court's determination is based on the facts of this case and this record.  It is the specific context and nature of the success that M.A. achieved in this Court in this case, relative to the context and nature of the administrative proceedings in this case, that, in the Court's view, makes charging fees incurred during the administrative proceedings against the Board inequitable and unreasonable.

[6]   The date ranges for Phases I through IV (as this Court has identified them based on its independent review of counsel's declarations in support of the fee application), and the corresponding fees sought, are set forth in the Appendix to this Opinion.

b.   <u>"Phase III" and "Phase IV" Fees</u>

The Court also concludes that a substantial reduction to the fees incurred during the federal litigation is warranted based on the extremely limited nature of the procedural relief that M.A. obtained in this Court and given the circumstances leading to and following the Court's remand order.  As the Supreme Court and the Third Circuit have instructed, the Court looks at the nature of M.A.'s success holistically.  Several considerations lead the Court to conclude that it is appropriate to make a substantial reduction to the "Phase III" and "Phase IV" fees incurred during proceedings in this Court.[7]

*First*, and fundamentally, through this litigation, M.A. has not achieved any of the ultimate relief that she sought from the Board in her original or amended due process petitions.  So far as the record reflects, M.A.'s grades are what they were when she filed her initial request for mediation more than five years ago, leaving her in the same legal position—as to her substantive claims—that she was in when she retained counsel to prepare that mediation request.  And neither the ALJ nor this Court has ever suggested, let alone decided, that the Board denied M.A. a FAPE. The true nature of M.A.'s success in this case, in other words, was exceedingly limited.  Her fee request, consequently, is excessive.  *See Gresko*, 2020 WL 6042317, at *10-11 (explaining that "[t]he central question at this stage is the amount of

---

[7]   M.A. identifies "Phase III" as the federal proceedings leading to this Court's summary judgment opinion, and "Phase IV" as the "fees on fees" efforts to recover attorneys' fees.  [Dkt. 33-1] at 12, 14-15.

success achieved by Plaintiffs after the hiring of counsel" to determine whether counsel "obtained excellent results" for his client and reducing the attorneys' fees to reflect the limited change after comparing Plaintiffs' position prior to engaging their attorney and the ultimate relief obtained) (quoting *Hensley*, 461 U.S. at 435).

*Second*, and relatedly, the degree of M.A.'s success was procedural only. While the procedural relief that M.A. secured renders her statutorily eligible for attorneys' fees, it does not itself mean that all fees incurred in securing that relief are "reasonable." *Cf. H.E.*, 873 F.3d at 413 (remanding for determination of "reasonable attorneys' fees, to be set by the District Court in its discretion") (internal citations omitted). Indeed, the contrary is true here, where no further proceedings ensued in the OAL following the Court's remand order. While M.A. champions her partial success here as having preserved "her day in court," [Dkt. 33-1] at 5, it is striking that she never availed herself of that day in court. The IDEA places great importance on compliance with procedural safeguards, *see, e.g.*, *H.E.*, 973 F.3d at 408 (quoting *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 206 (1982)), but the statute does not elevate procedure purely for procedure's sake. Instead, as the Supreme Court has explained, the IDEA's emphasis on procedure "demonstrates the legislative conviction that adequate compliance with the procedures prescribed would in most cases assure much if not

25

all of what Congress wished in the way of substantive content." *Rowley*, 458 U.S. at 206.[8]

By obtaining procedural relief in this Court but then not availing herself of the hearing that this Court afforded, M.A. very much obtained a hollow victory, and in doing so pretermitted a decision on the question whether the Board violated M.A.'s substantive right to a free and appropriate education. The Court does not question M.A.'s reasons for electing to forego further proceedings in the OAL and a re-examination of grades for the 2014-2015 and 2015-2016 school years. Whatever her reasons, the Court does very much question the reasonableness of taxing a six-figure fee award against a public school district with limited resources—with more than $110,000 of that sum attributed to the proceedings in this Court—when M.A. did not avail herself of the very relief that made her eligible for fees in the first place.

*Third*, the Court has rejected above the Board's argument that M.A. is not a prevailing party because her strategic decision to dismiss all claims remaining before

---

[8]     Contrast this case from *H.E.*, in which, as the Third Circuit explained, the student proceeded to pursue and obtain substantive relief following the district court's remand order. *See* 873 F.3d at 410. In this case, M.A. principally sought five forms of relief: (i) an extra year of high school; (ii) revisitation of grades for each of grades 9-12; (iii) compensatory education due to inadequate home instruction; (iv) amendment of school records to correct factual inaccuracies; and (v) compensatory education due to violations of confidentiality that exacerbated M.A.'s disabilities. [Dkt. 18] ¶¶ 5-6; [Dkt. 1], Ex. B ¶ 3; *see also* [Dkt. 34] at 4 (Board agreeing with this description). M.A. obtained her first form of requested relief (a fifth year of high school) pursuant to the IDEA's automatic stay-put provision, and that relief was neither contested nor litigated. Aside from that, M.A. has obtained none of the relief that she pursued during this litigation.

the ALJ resulted in a more limited due process hearing following this Court's remand order.  But the Court does agree with the Board that the reasonableness of the resulting attorneys' fee is significantly diminished by M.A.'s strategic litigation decisions.  M.A.'s fee application is premised fundamentally on the due process hearing that she says she wanted and to which she says she was entitled.  But following the ALJ's partial dismissal order, M.A. could have had just that sort of a hearing, albeit on different claims.  Instead, she elected to dismiss those claims in favor of appealing the grade-reexamination claims to this Court.  This litigation tactic, while her choice, significantly diminishes the strength of her argument on the nature and degree of the procedural success that she obtained in this Court.

*Fourth*, it is unknown what would have happened had the ALJ conducted a due process hearing and issued a decision on remand.  Nevertheless, the Court observed in its summary judgment opinion that for multiple reasons M.A. "may face an uphill battle in proving her limited FAPE claim."  SJ Op. at 18.  While the Court "d[id] not express any opinion on the ultimate merits of [M.A.'s] due process petition or whether her right to a FAPE was violated," it identified a number of significant barriers to substantive relief that M.A. would face on remand.  *Id.* at 17-18.  Given those barriers, it is difficult to believe that M.A. would have obtained the ultimate substantive relief that she sought in her amended due process petition.  This posture further underscores that the extent of M.A.'s success was substantially limited, in both form and degree.

For these reasons, in the Court's judgment, an initial equitable discount of 75% reasonably and fairly reflects the level of M.A.'s very limited success in her federal appeal.  *See, e.g.*, *Pub. Interest Law Ctr. of Phila. v. Pocono Mountain Sch. Dist.*, Civ. No. 09-2326 (ARC), 2011 WL 2746179, at *4 (M.D. Pa. July 12, 2011); *Murphy v. Girard Sch. Dist.*, 134 F. Supp. 2d 431, 439-40 (W.D. Pa. 1999), *overturned on other grounds* , *D.S. v. Neptune Twp. Bd. of Educ.*, 264 F. App'x 186 (3d Cir. 2008) (reducing the lodestar by 85% where petitioners "achieved very limited success," in that they did not prevail on their "primary objective" of securing special education services, and the relief they did obtain was only partial in that they received reimbursement for only one evaluation of the five they originally sought); *K.N. v. Passaic City Bd. of Educ.*, Civ. No. 11-399 (JLL), 2011 WL 5157280, at *14 (D.N.J. Oct. 28, 2011) (reducing the fee award by 33% where the plaintiff prevailed on two of three claims after "[c]onsidering the overall relief obtained by the Plaintiffs in relation to the hours reasonably expended on the litigation"); *M.P. v. Parkland Sch. Dist.*, Civ. No. 20-4447, 2021 WL 5177012, at *8-9 (E.D. Pa. Nov. 5, 2021) (applying a 50% reduction to the lodestar "based on the difference between the relief sought and relief obtained").

One further reduction to the Phase III fees is in order.  M.A.'s counsel is not entirely blameless in respect of the ALJ's error that this Court identified and that underlies M.A.'s eligibility for fees.  As noted above, this Court attributed the ALJ's legal error to "the confusing manner in which [M.A.] pleaded her IDEA claims in her

amended due process petition." SJ Op. at 14.  By characterizing her FAPE claim as one seeking the straight revisitation of grades instead of a claim requiring the Board to consider late-completed schoolwork consistent with her IEPs, M.A.—through counsel—"***caused*** the ALJ to find that to the extent [M.A.] is seeking to appeal her grades, she must do so through New Jersey's general education regulations." *Id.* at 14-15 (emphasis added).  M.A.'s counsel's contribution to the ALJ's legal error warrants a further reduction to the Phase III fees. *Cf. generally Gresko*, 2020 WL 6042317, at *9 (reducing fees associated with an attorney's actions by 50% where those "actions did result in additional delay and expense").  Given this, the Court believes that a further 5% reduction to the Phase III fees is in order.

Accordingly, the Court will reduce the Phase III fees ($63,465.25) by 80%, totaling $12,693.05.

*Finally*, the Court generally views M.A.'s fee request at "Phase IV"—the fees incurred as part of counsel's fee recovery efforts—to be far out of step with both the degree of success that M.A. achieved and the scope of the underlying fees that the Court believes are appropriately chargeable to the Board.  Between in or around November 2021 and in or around November 2022, counsel incurred nearly $50,000 in legal fees in service of their efforts to secure a fee award in this case.  Because the Court determines that the Board should not nearly be charged $50,000 in the aggregate, the Court does not and cannot see how it is reasonable to assess a full sum of $50,000 against the Board based on counsel's fee recovery efforts.  Based on

M.A.'s limited success in the underlying fee petition and also accounting for counsel's overall efforts from start to finish, the Court believes that an equal 80% discount to the Phase IV fees ($49,870.25) is reasonable, equaling $9,974.05.  *See id.* at *12-13 (reducing the "fees on fees" amount to, among other things, reflect plaintiff's limited success in the underlying fee petition proceeding in which the Court made multiple reductions of the total fees sought, noting that the "Third Circuit has approved of courts reducing fees awarded related to a fee petition due to limited success in the fee petition litigation when the court had issued multiple reductions of the fees requested") (citing *Scanno v. F.H. Cann & Assocs., Inc.*, 794 F. App'x 220, 223 (3d Cir. 2019)); *I.W. v. School Dist. Of Philadelphia*, Civ. No. 14-3141, 2016 WL 147148, at *20 (E.D. Pa. Jan. 13, 2016) (reducing fees for the federal fee litigation by 30% where plaintiffs received a 30% reduction in fees for the underlying federal proceedings, and "therefore were not entirely successful in the federal fee litigation").

Balancing these considerations together, the Court concludes that although M.A. is a "prevailing party" within the meaning of the statute, only a fraction—about 20%—of the $113,335.50 in fees incurred from the beginning of Phase III (February 2020) to the present should be charged to the Board.  Applying an 80% discount to both the Phase III and Phase IV fees, the Court arrives at a total of $22,667.10, before accounting for an additional $412 in costs (which the Court also accepts), for a total of $23,079.10, which the Court determines to fairly reflect M.A.'s limited success.  *See Pub. Interest Law Ctr. of Phila.*, 2011 WL 2746179, at *3-4

30

(awarding no fees to a prevailing party where his partial "success in his due process litigation, while sufficient to grant him prevailing party status under that generous standard, is simply too slight to merit a granting of attorneys' fees under the IDE[]A," and "did not result in any real tangible change in his circumstances" but rather "represented more of a symbolic victory") (citing *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)); *A.S. ex rel. V.S. v. Colts Neck Bd. of Educ.*, 190 F. App'x 140, 143-44 (3d Cir. 2006) (not precedential) (affirming fee award where the court reduced the award by 80% because plaintiffs prevailed (partially) on only one of their claims, while also considering other relevant factors, including "the relative weight of the issues," and noting the issue on which the plaintiff prevailed was not "paramount over all others").

***

In the end, a simple question lingers:  What did these proceedings really accomplish?  The answer is very little.  In respect of the relief that she originally requested, M.A. stands today essentially in the same footing that she did when she filed her initial request for mediation more than five years ago.  She did not avail herself of the procedural relief that this Court granted and—so far as the record before this Court shows—her high school grades are no different than they were when she graduated from Wall.  M.A. obtained no compensatory education or other monetary recovery through these proceedings, and she secured no alteration of her high school records in any respect.  And no adjudicatory body ever has found that the

31

Board violated M.A.'s statutory right to a FAPE.  For these reasons and those set forth above, the Court concludes that the nature and extent of relief that M.A. obtained in this case was more than technical or *de minimis*—but not by much.  The success that M.A. achieved was procedural only, exceedingly limited, and resulted in no substantive relief.  The Court has considered the totality of the circumstances and the unusual procedural history of this case and has "focus[ed] on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."  *McCutcheon*, 560 F.3d at 151 (citation omitted).  Having done so, the Court concludes that "the benefits of th[is] litigation were not [nearly] substantial enough to merit the full amount of the lodestar"—or anywhere close to it.  *McDonnell*, 870 F. Supp. at 587 (citation omitted).

The Court has endeavored to apply a principled and equitable reduction to the lodestar based on the nature and weight of M.A.'s overall success in the context of the facts and procedural history of this case and the kind of relief that M.A. sought, recognizing that this qualitative judgment is not easily susceptible to neat arithmetic.  *See I.W.*, 2016 WL 147148, at *20 (explaining that "mathematically deducting fees proportional to a plaintiff's losing claims is 'too simplistic and unrealistic,'" and that where claims involve a common core of facts, the Court should "focus on the significance of the overall relief obtained") (quoting *McCutcheon*, 560 F.3d at 151, and *Hensley*, 461 U.S. at 435).  Instead, the Court has "simply reduc[ed] the award to account for the limited success of the plaintiff.'"  *D.E.R.*,

*supra*, 2005 WL 1177944, at *19 (quoting *Texas State Teachers Ass'n,* 489 U.S. at 789-90).

To recap, the Court has reduced the full lodestar by all Phase I and Phase II fees; it has further reduced the lodestar by 80% of the Phase III and Phase IV fees; and it has added $412 in Phase III costs, to arrive at a total fee award of $23,079.10. Viewed another way, this sum is approximately 11.6% of the full lodestar amount of $198,901.50. For the reasons set forth above, the Court is fully satisfied that this percentage represents a fair approximation of the kind, degree, and proportion of M.A.'s overall "success" in this case from start to finish, further supporting the Court's equitable reductions described above. To achieve "rough justice," *Fox*, 563 U.S. at 838, the Court therefore concludes that a fee award of $23,079.10 is fair, just, and ultimately "reasonable" in this case.

IV.    CONCLUSION

For the reasons stated, M.A.'s application for attorneys' fees under the IDEA will be granted, and the Board will be ordered to pay M.A. a sum of $23,079.10 within forty-five (45) days. An appropriate order follows.

Date:  November 21, 2023
          Trenton, New Jersey

J. BRENDAN DAY
UNITED STATES MAGISTRATE JUDGE

33

APPENDIX

| Phase | Date Range | Fees Sought |
|---|---|---|
| Phase I | June 2018-Mid-December 2018 | $36,971.00 |
| Phase II | Mid-December 2018-January 31, 2020 | $48,183.00 |
| Phase III | February 1, 2020-November 29, 2021 | $63,465.25 |
| Phase IV | November 30, 2021-November 23, 2022 | $49,870.25 ($24,560.25 (Rue) + $25,310 (Thurston)) |
| Phase III Costs | | $412 |
| **Total Fees Sought:** | | **$198,901.50** |

34