UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MICAYLA AUGUSTYN,

*Plaintiff*,

v.

WALL TOWNSHIP BOARD OF EDUCATION,

*Defendant*.

Civ. No. 20-5218 (JBD)

OPINION

This case comes before the Court on remand after the United States Court of Appeals for the Third Circuit vacated this Court's order granting plaintiff Micayla Augustyn a significantly reduced award of attorneys' fees under the fee-shifting provision of the Individuals with Disabilities Education Act ("IDEA"). *See Augustyn v. Wall Twp. Bd. of Educ.*, 139 F.4th 252 (3d Cir. 2025). The Third Circuit held that this Court correctly concluded that Augustyn is a prevailing party entitled to fees under the IDEA, but that the Court's reduction of the fee award rested on improper considerations. Accordingly, the Third Circuit remanded the case, directing this Court to reassess the legal fees to which Augustyn is reasonably entitled.

Consistent with that directive, Augustyn filed a second fee motion in which she seeks a total of $309,007.58 in attorneys' fees and costs incurred in connection with the initial administrative proceedings in this case; her appeal to this Court; her original fee motion; her appeal to the Third Circuit; and the proceedings in this Court following remand. [Dkts. 88, 96.] Defendant Wall Township Board of

Education (the "Board") again challenges as excessive the size of the requested fee award. [Dkts. 89, 90.]

For the reasons set forth below, the Court will GRANT in part Augustyn's second motion for attorneys' fees. The Court will order the Board to pay Augustyn $284,654.75 in attorneys' fees and costs.

## I. BACKGROUND

The Court assumes the parties' familiarity with the case. Because this Court and the Third Circuit have already recounted in detail the facts underlying this dispute, *see* [Dkts. 65, 72], the Court here summarizes only the background necessary to resolve the present motion. To the extent any additional facts are needed to aid the Court in its determination of an appropriate fee award, they are incorporated into the analysis section below.

This case stems from Augustyn's allegations that the Board denied her right to a free and appropriate public education ("FAPE") in compliance with the IDEA by, among other things, failing to adequately implement her individualized education plan ("IEP") during high school. [Dkt. 1] ¶¶ 3-4. Shortly before Augustyn was set to graduate in June 2018, Augustyn's mother filed a Request for Mediation with the New Jersey Department of Education to address the Board's alleged failures. *Id.* ¶ 61, Ex. B. She sought for Augustyn's grades to be updated in accordance with her IEP, as well as compensatory education. *Id.* Ex. B. After mediation with the Board failed, Augustyn filed a Petition for Due Process before an administrative law judge ("ALJ"), again seeking for her grades to be updated

consistent with her IEP and for compensatory education. *Id.* ¶ 62; *see also* Ex. C (Amended Petition for Due Process).

Ultimately, the ALJ dismissed her grade revision claim on the basis that a special education due-process hearing was not the proper venue to resolve her dispute. *Id.*, Ex. A at 10. The ALJ also dismissed certain of Augustyn's claims for compensatory education but denied without prejudice the Board's motion to dismiss with respect to Augustyn's claim for compensatory education for inadequate home instruction, holding that a due process hearing was necessary to determine when Augustyn knew or should have known that the Board denied her a FAPE. *Id.*, Ex. A at 14-15. Before any such hearing took place, however, Augustyn voluntarily withdrew her FAPE claim requesting compensatory education due to inadequate home instruction, and her FAPE claim requesting compensatory education due to the Board's failure to provide appropriate transition planning following her graduation. [Dkt. 25] at 8.

Thereafter, on April 28, 2020, Augustyn appealed her right to a due process hearing on her grade revision claim to this Court. [Dkt. 1.] Both parties moved for summary judgment, and the Court granted in part and denied in part Augustyn's motion for summary judgment. [Dkts. 19, 20, 25, 26.] The Court concluded that the ALJ erred (1) in determining that the relief that Augustyn sought was unobtainable in a special education due-process hearing; and (2) by not considering Augustyn's claim on the merits. [Dkt. 25] at 15-17. Augustyn consequently moved for

attorneys' fees as a prevailing party under the IDEA's fee shifting provision, 20 U.S.C. § 1415(i)(3)(B)(i)(I). [Dkt. 33.]

In her initial fee motion, Augustyn sought fees and costs incurred from each stage of her case, requesting a total fee award of $198,901.50. [Dkts. 33, 55.] Augustyn's original fee motion encompassed four distinct phases of litigation, identified in the table below:

| Phase | Purpose | Fees Sought |
|---|---|---|
| I | Preparation of Augustyn's Mediation Request through the Board's filing of its Motion to Dismiss before the ALJ | $36,971.00[1] |
| II | The Board's Motion to Dismiss through the ALJ's Dismissal Order | $48,183.00 |
| III | Appeal of ALJ Dismissal to the District of New Jersey | $63,465.25 |
| IV | Post-Judgment/Fee Application | $48,870.25 |

[Dkt. 55.] Augustyn also sought $412.00 in costs. *Id.*

This Court granted Augustyn a significantly reduced fee award, largely based on the Court's view of the limited nature of the relief that she obtained. [Dkts. 65, 66.] Although the Court concluded that Augustyn was a prevailing party for purposes of fee shifting, it held that due to the limited and procedural nature of her victory, Augustyn's request for an award of nearly $200,000 was excessive and therefore not "reasonable." [Dkt. 65] at 1-2, 18-33. In so holding, the Court

1 Augustyn no longer seeks Phase I attorneys' fees or costs in her renewed fee motion. [Dkt. 88-1] at 5.

accepted the full lodestar that Augustyn proposed (and which the Board had not meaningfully challenged), but nonetheless concluded that a substantial reduction of that amount was necessary to reflect Augustyn's "extremely limited success." *Id.* at 18-33. The Court determined that a total fee award of $23,079.10 was reasonable and commensurate with the kind and degree of success that Augustyn obtained in this case. *Id.* at 33.

Both Augustyn and the Board appealed the fee award. [Dkts. 67-70.] The Third Circuit held that this Court correctly concluded that Augustyn is a prevailing party, but improperly reduced her resulting fee award by "rel[ying] on impermissible factors in its assessment of [fees from] Phases II, III, and IV." *Augustyn*, 139 F.4th at 260.[2] Regarding Phase II, the Third Circuit held that "the fact that [Augustyn] was unsuccessful before the ALJ was not a proper basis for entirely denying the Phase II fees." *Id.* at 261. The Third Circuit further held that this Court's 80% reduction of the fees incurred in Phase III was unwarranted because it had "relied on mistaken premises" in reducing the award, and that its extension of the 80% reduction from Phase III to Phase IV was improper because "the reduction analysis for the fees generated from litigating the fee petition is independent from the reduction analysis applied to the underlying litigation." *Id.* at 261-62 (quotation omitted). In light of those conclusions, the Third Circuit vacated

---

[2] The Third Circuit did not address Phase I fees in light of Augustyn's "'express[] conce[ssion] that these fees should only be considered' after remand because their accrual was unrelated to her right to a due process hearing." *Id.* at 260 n.6 (citing [App. Dkt. 47] at 3). As noted above, Augustyn continues not to seek Phase I fees in her application on remand.

the Court's fee award and remanded the case for this Court to "reassess its 'fees on fees' award [*i.e.*, Phase IV fees] considering not only the fees incurred litigating the petition in the Court, but also the additional costs incurred in this appeal," as well as to reevaluate "Phase II and Phase III fees." *Id.* at 262.

On remand, the parties engaged in settlement efforts to resolve the fee dispute, including participating in a settlement conference before the Honorable Justin T. Quinn, U.S.M.J. [Dkt. 82.] Settlement efforts proved unsuccessful, however, and the Court authorized formal motion practice to address the dispute. [Dkts. 85, 87.] Augustyn's second fee motion followed on November 11, 2026, which the Board opposes. [Dkts. 88, 89, 90.] The Court heard oral argument on May 26, 2026, [Dkt. 104], and the motion is ripe for resolution.

## II. LEGAL STANDARDS

Because the Third Circuit affirmed Augustyn's status as a prevailing party on appeal, the only remaining task on remand is the calculation of a reasonable fee award. The Court begins by calculating the "lodestar," which is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *McKenna v. City of Philadelphia*, 582 F.3d 447, 455 (3d Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The "party seeking attorney[s'] fees bears the ultimate burden of showing that its requested hourly rates and the hours it claims are reasonable." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 703 n.5 (3d Cir. 2005) (citing *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990)).

To satisfy this burden, "the fee petitioner must 'submit evidence supporting the hours worked and [the] rates claimed.'" *Id.* (quoting *Hensley,* 461 U.S. at 433); *see also* L. Civ. R. 54.2. "[O]nce the fee petitioner 'submit[s] evidence supporting the hour[s] worked and rates claimed,' the party opposing the fee application has the burden to challenge the reasonableness of the requested fee." *Edmondson v. Lilliston Ford, Inc.*, Civ. No. 13-7704 (RMB), 2017 WL 1502788, at *7 (D.N.J. Apr. 26, 2017), *aff'd,* 722 F. App'x 251 (3d Cir. 2018) (not precedential) (citing *McKenna*, 582 F.3d at 459 (citations omitted)). Once calculated, the lodestar "carries a strong presumption of reasonable[ness] and includes most, if not all, of the relevant factors constituting a reasonable attorney's fee." *Souryavong v. Lackawanna Cnty*., 872 F.3d 122, 128 (3d Cir. 2017) (quotation omitted). Although the Court may "adjust a fee award upward or downward" following its calculation of the lodestar, *McKenna*, 582 F.3d at 455, its discretion to do so "is not unlimited," *Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 558 (2010). The lodestar thus "cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results." *Id.* at 552.

Accordingly, the Court may only deviate from the lodestar "in the rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Augustyn*, 139 F.4th at 260 (citations omitted) (cleaned up). Courts consider several factors (known as the "*Johnson* factors") to determine whether an adjustment to the lodestar is warranted. *Souryavong*, 872 F.3d at 128 ("[C]onsideration of *Johnson*

'factors' is permissible on the back end of a lodestar's calculation, as long as they are not already 'subsumed in the lodestar calculation.'" (quoting *Perdue,* 559 U.S. at 553)); *see also Augustyn*, 139 F.4th at 260 n.5 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)). Those factors are set forth in the Court's analysis below.

## III. DISCUSSION

In her renewed fee motion, Augustyn again seeks fees for the legal work from the various phases of this litigation completed by professionals at the law firm Rue Law Group, LLC and Thurston Law Offices LLC. [Dkts. 55, 88-1]; [Dkt. 88-2] ¶ 2; [Dkt. 96-1]. As noted, Augustyn no longer requests fees incurred during Phase I of the proceedings. [Dkt. 88-1] at 15. For Phases II through IV, Augustyn requests that the Court award the full (previously accepted) lodestar, enhanced annually by 3.5% to account for the delay in payment. *Id.* at 12-18. Augustyn also seeks an additional "Phase V" award for "[t]ime expended in connection with briefing and arguing the appeal before the Third Circuit" and "[t]ime incurred following remand in preparing the updated fee application, supporting submissions, and present briefing." *Id.* at 18-22. For this portion of the fee award, Augustyn proposes a lodestar that has been calculated using rates that this Court approved in an unrelated IDEA case, *I.K. o/b/o Z.S. v. Montclair Bd. of Educ.*, Civ. No. 16-9152 (LDW), 2019 WL 5344550 (D.N.J. Aug. 28, 2019), *report and recommendation adopted,* 2019 WL 5309523 (D.N.J. Oct. 17, 2019), enhanced to present value by the same 3.5% annual increase that she seeks for Phases II through IV. [Dkt. 88-1]

at 19-20. Augustyn also seeks to recover the costs sought in her original fee motion, as well as her appellate costs. *Id.* at 22.

In its entirety, Augustyn's new proposed award is broken down as follows:

| Phase | Purpose | Fees Sought |
|---|---|---|
| II | The Board's Motion to Dismiss through the ALJ's Dismissal Order | $55,291.10 |
| III | Appeal of ALJ Dismissal to the District of New Jersey | $72,827.83 |
| IV | Post-Judgment/Initial Fee Application | $57,227.26 |
| V-A | Appeal of this Court's Fee Order to the Third Circuit | $98,430.21 |
| V-B | Post-Remand Proceedings/Renewed Fee Application | $23,831.29 |
| | Original Costs | $412.00 |
| | Appellate Costs | $987.89 |
| **Total** | | **$309,007.58**[3] |

*Id.* at 26; [Dkt. 96-1] ¶ 20, Exs. A and B.

The Board opposes Augustyn's motion, arguing generally that the Third Circuit's mandate leaves room for the Court to recalculate the lodestar for each phase of the litigation, and that the Court retains discretion to reduce Augustyn's

[3] Augustyn's reply brief says that the sum of her proposed fee award across all phases is $322,649.93, [Dkt. 96] at 19, but that is incorrect. The tabulated fees and costs that Augustyn seeks for each of the categories above total $309,007.58. Upon the Court's recent inquiry, Augustyn confirmed that she is seeking a total of $309,007.58 in fees and costs.

requested fees based on her limited success. [Dkts. 89, 90.] In addition, the Board contends that the Court should reject Augustyn's request for Phase V fees given her failure to comply with Third Circuit Local Appellate Rule 108.1. [Dkt. 90] at 1-3.

### A. Preliminary Considerations

#### 1. The Mandate

"It is axiomatic that on remand for further proceedings after decision by an appellate court, the trial court must proceed in accordance with the mandate and the law of the case as established on appeal." *Bankers Tr. v. Bethlehem Steel Corp.*, 761 F.2d 943, 949 (3d Cir. 1985) (collecting cases). The trial court "must implement both the letter and spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces." *Id.* (citations omitted). Where, as here, "the reviewing court in its mandate prescribes that the court shall proceed in accordance with the opinion of the reviewing court, such pronouncement operates to make the opinion a part of the mandate as completely as though the opinion had been set out at length." *Noel v. United Aircraft Corp.,* 359 F.2d 671, 674 (3d Cir. 1966). Thus, "[t]he mandate and the opinion must be considered together in their entirety with particular reference to the issues considered." *Bankers Tr.*, 761 F.2d at 950 (citation omitted). Consistent with these basic principles, the Court begins by describing what the mandate directs in this case. The mandate will serve as the framework for this Court's analysis below.

Here, the mandate directs this Court to reevaluate Augustyn's fee award from Phases II, III, and IV, as well as the additional fees incurred during the

appellate and post-remand stages, now referred to as Phase V. *Augustyn,* 139 F.4th at 262. Given this directive, and as discussed in more detail below, *see infra* § III.B.1, the mandate permits (but does not require) a recalculation of the lodestar amounts for each of those phases. The mandate also permits (but does not require) appropriate reductions to the lodestar, if warranted, and so long as any reductions are not based on the kind of "improper considerations" that the Court of Appeals identified in its opinion. *Augustyn*, 139 F.4th at 262.

Consistent with the mandate, the Court's analysis below proceeds as follows. For Phases II through IV, the Court first addresses whether to recalculate the lodestar amounts or whether to adopt its earlier lodestar calculation. The Court then calculates in the first instance a lodestar amount for Phase V. Finally, the Court determines whether any *Johnson*-type adjustments to any of these lodestar amounts are appropriate.

Before proceeding to that analysis, however, the Court first addresses two threshold arguments.

**2. Local Appellate Rule 108.1**

The Board argues that Augustyn's request for Phase V fees must be rejected entirely based on her failure to comply with Third Circuit Local Appellate Rule 108.1. That Rule provides in relevant part:

> Except as otherwise provided by statute, all applications for an award of attorney's fees and other expenses relating to a case filed in this court, regardless of the source of authority for assessment, must be filed within 30 days after the entry of this court's judgment, unless a timely petition for panel rehearing or rehearing *en banc* has been filed, in which case a request for attorney's fees must be filed within 14 days after the court's

> disposition of such petition. Such application must be filed with the clerk in the time set forth above whether or not the parties seek further action in the case or further review from any court.

L.A.R. Misc. 108.1(a). Because Augustyn did not submit her fee petition to the Third Circuit in accordance with Rule 108.1, the Board argues that her request for Phase V fees must be denied outright. [Dkt. 90] at 1-3.

The Court disagrees and concludes that Rule 108.1 does not apply here given the Third Circuit's explicit mandate in this case. As described above, the Court of Appeals directed this Court to "reassess its 'fees on fees' award considering not only the fees incurred litigating the petition in the District Court, *but also the additional costs incurred in this appeal*." *Augustyn*, 139 F.4th at 262 (emphasis added). The Court intends to follow that instruction.

In the face of the Third Circuit's direction, however, the Board cites several cases in which a district court, on remand from the Third Circuit, declined to award fees based on a party's failure to comply with Rule 108.1. [Dkt. 90] at 2-3. Those cases are distinguishable from the present situation. In each of those cases, the Third Circuit's opinion or order did not contain explicit direction to the district court to address appellate fees. *See Wall v. Altium Grp., LLC*, Civ. No. 16-1044, 2019 WL 3068606, at *7 (W.D. Pa 2019) (denying renewed fee application in part based on prevailing party's failure to comply with Rule 108.1 where the Third Circuit had not specifically referred the appellate fee application to the district court); *Jurinko v. Med. Protective Co.*, Civ. No. 03-4053, 2009 WL 2342641, at *4-5 (E.D. Pa. July 30, 2009) (noting that it was unclear whether the Third Circuit had remanded the case

at all, let alone for purposes of resolving a request for fees, and denying appellate fee application filed in district court because movant failed to file an application "in the Court of Appeals as required under L.A.R. Misc. 108"); *Dring v. Ariel Land Owners, Inc.*, Civ. No. 15-478, 2020 WL 13336571, at *7 (M.D. Pa. May 4, 2020) (declining to award appellate fees based on litigant's failure to comply with Rule 108.1 where the district court's review of those fees was neither authorized by statute nor the Third Circuit on remand), *aff'd sub nom. Gillespie v. Dring*, App. No. 19-2073, 2022 WL 1741888 (3d Cir. May 31, 2022).

Where, as here, the Third Circuit's mandate explicitly directs a district court to evaluate appellate fees on remand, it follows that the mandate supersedes Rule 108.1. *See Planned Parenthood of Cent. New Jersey v. Att'y Gen. of State of New Jersey*, 297 F.3d 253, 261 n.2 (3d Cir. 2002) ("Since the motion requested the remand, on the same schedule as the issue of fees for trial work, which we granted, the logical interpretation of the order granting the remand is that it granted the motion to file a single fee request all on one schedule. Such an order is undoubtedly within our power."). The Court sees no reason to elevate the Local Appellate Rule over the Third Circuit's specific and explicit instruction to this Court in this case. The Court concludes that Augustyn is entitled to a reasonable award of Phase V fees as set forth below. *See infra* § III.C.2.

**3. 20 U.S.C. § 1415(i)(3)(G)**

The IDEA provides that a court may not reduce an award of attorneys' fees if it "finds that the State or local educational agency unreasonably protracted the final

resolution of the action." 20 U.S.C. § 1415(i)(3)(G). Augustyn argues that the Board unreasonably protracted this litigation by "repeatedly refus[ing] to engage in good-faith [settlement] negotiations, forcing unnecessary motion practice, appellate briefing, and [ ] a second round of fee litigation," and submits that "[t]he Court should therefore grant the requested fees in full, without further reduction." [Dkt. 88-1] at 22-25. The Board opposes Augustyn's contention that it unreasonably protracted the litigation. [Dkt. 90] at 3-5.

The Court does not find that the Board has unreasonably protracted this litigation. Augustyn essentially argues that the Board unreasonably extended this case by refusing to settle the fee dispute on her terms. Although failing to engage in good-faith settlement negotiations could constitute protraction under the IDEA in some cases, "on the facts of this case, the Court is not willing to say that [the Board] 'unreasonably protracted'" this litigation by deciding to litigate the fee issue. *D.P. v. New York City Dep't of Educ.*, Civ. No. 21-27 (KPF), 2022 WL 103536, at *12 (S.D.N.Y. Jan. 10, 2022), *aff'd sub nom. H.C. v. New York City Dep't of Educ.*, 71 F.4th 120 (2d Cir. 2023). During oral argument, the Board gave legitimate justifications for deciding not to settle upon terms acceptable to Augustyn; prudent or not, the Court does not believe that the Board's decision not to settle unreasonably protracted this case. *See id.* (concluding that defendant did not unreasonably protract the litigation even though, "[a]t the litigation phase[, it] offered no settlement proposals, thus prompting [p]laintiff to file" a motion for summary judgment and fees); *see also M.M. v. New York City Dep't of Educ.*,

Civ. No. 20-6915, 2022 WL 3043218, at *4 (S.D.N.Y. Aug. 2, 2022), *aff'd sub nom. Y.G. v. New York City Dep't of Educ.*, Civ. No. 22-1184, 2025 WL 2080218 (2d Cir. July 24, 2025) ("Failing to respond to pre- and post-complaint settlement demands does not . . . amount to unreasonable protraction.").[4]

The Court appreciates that this action has been pending for several years and that it has a tortured procedural history. Considering all the circumstances, however, the Court concludes that the Board's litigation conduct is not to blame for the delay and that it has approached this litigation in good faith. The Court accordingly concludes that the Board did not unreasonably protract this litigation. Thus, Augustyn's fees may be reduced as warranted and consistent with the Third Circuit's mandate.

**B. Phase II, Phase III, and Phase IV Fees**

The Court now turns to reassessing an appropriate fee award for the proceedings leading up to Augustyn's appeal to the Third Circuit.

**1. The Lodestar**

The Third Circuit's mandate directs the Court to reevaluate Augustyn's fee award from Phases II, III, and IV. *Augustyn,* 139 F.4th at 262. Augustyn contends that the lodestar calculation for those phases is the "law of the case" because it "ha[s] already been adjudicated and accepted." [Dkt. 88-1] at 12-13. The Board

---

4 Augustyn's cited case does not identify or otherwise apply § 1415(i)(3)(G), and it is therefore inapposite. [Dkt. 88-1] at 19 (citing *D.O., ex rel. M.O. v. Jackson Twp. Bd. of Educ.*, Civ. No. 17-1581 (TJB), 2019 WL 1923388 (D.N.J. Apr. 30, 2019). In any event, the Court finds the circumstances in *D.O.* materially different from those here.

disagrees, arguing that the Third Circuit vacated this Court's prior acceptance of the lodestar in this case and authorized a recalculation of fees. [Dkt. 90] at 5-6.

The mandate does not strictly preclude the Court from reconsidering any part of the fee award for Phases II through IV. The Court therefore understands the mandate to permit a recalculation of the lodestar for those phases given the directive to "reassess [the] 'fees on fees' award . . . as well as the reevaluation of Phase II and Phase III." *See Augustyn*, 139 F.4th at 262.

Nevertheless, although the mandate does not require it—and regardless whether the law of the case doctrine strictly applies here—the Court again accepts the full lodestar for Phases II through IV. The Court previously explained that there was "no basis to conclude that counsel did not actually or reasonably devote the time identified" for Phases II through IV, and that "the blended hourly rate for the assigned attorneys and their professional and administrative staff" was reasonable. [Dkt. 65] at 18. The Court thus "accept[ed] as the full lodestar, from start to finish (and including costs), [Augustyn]'s requested fee amount of $198,901.50." *Id.* The Court now sees no reason to depart from its earlier determination that the rates and number of hours connected to Phases II through IV were generally reasonable. And the Board also has given the Court no persuasive reason or basis to do so. Accordingly, and with one upward adjustment addressed immediately below, the Court reaffirms the baseline lodestar amounts for the Phase II, Phase III, and Phase IV fees.

### 2. Time-Value Adjustment

Augustyn requests a time-value adjustment to the previously accepted lodestar "to compensate for delay" in payment. [Dkt. 88-1] at 13-15. It is well settled that a prevailing party is entitled to an enhanced fee as compensation for delay in payment. *Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 283-84 (1989) (affirming that "an enhancement for delay in payment is, where appropriate, part of a 'reasonable attorney's fee.'"); *Pennsylvania v. Delaware Valley Citizens' Council*, 483 U.S. 711, 716 (1987) (noting that "in setting fees for prevailing counsel, the courts have regularly recognized the delay factor, either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value."). Here, Augustyn proposes a fee enhancement of 3.5% per year, compounded "on each successive anniversary of [her] [original] February 11, 2022 fee application." [Dkt. 88-1] at 15. The Board does not oppose the requested enhancement. [Dkt. 90] at 6. The Court finds that Augustyn's proposed fee enhancement is reasonable under the circumstances. *See Jada H. v. Rivera*, Civ. No. 18-487, 2019 WL 2387929, at *2 (E.D. Pa. June 6, 2019) (finding a 4% annual rate increase reasonable); *cf. also Rode*, 892 F.2d at 1188 (noting that "the district court erred in rejecting appellants' request for delay compensation because appellees failed to object to appellants' request."). Accordingly, the Court will apply a 3.5% annual compounded increase to the fees for each phase, calculated from February 11, 2022, when Augustyn filed her original fee application.

*

Applying the time-value enhancement, the lodestar amounts for Phase II, Phase III, and Phase IV are $55,291.10, $72,827.83, and $57,227.26, respectively.

**C. Phase V**

The Court turns next to determining a reasonable award for the fees that Augustyn incurred litigating the appeal (referred to here as Phase V-A) and in post-remand proceedings in this Court (referred to here as Phase V-B). The Court calculates the lodestar in the first instance by multiplying the "number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." *McKenna*, 582 F.3d at 455 (quoting *Hensley*, 461 U.S. at 433).

For Phase V-A, Augustyn seeks a total of $98,430.21 in fees for the 318.3 hours that her counsel and their staff spent working on the appeal. [Dkt. 88-1] at 20-21. Augustyn's requested Phase V-A fees are broken down as follows:

- Law clerk Avery Covington billed 66.5 hours at a rate of $254.46 per hour for a total of $16,921.59 in fees;
- Law clerk Gregory Eyen billed 157 hours at a rate of $254.46 per hour for a total of $39,950.22 in fees;
- Principal attorney John Rue billed 36.8 hours at a rate of $572.53 per hour for a total of $21,069.14 in fees;
- Partner Krista Rue billed 25.10 hours at a rate of $566.16 per hour for a total of $14,210.61 in fees; and
- Paralegal Megan Atkinson billed 32.9 hours at a rate of $190.84 per hour for a total of $6,278.65 in fees.

*Id.*; [Dkt. 96-1], Ex. A.

For Phase V-B, Augustyn seeks fees totaling $31,775.05 for 71.7 hours of legal work following remand, voluntarily reduced by 25% "to address any inefficiencies," for an adjusted award of $23,831.29. [Dkt. 96-1] ¶ 20, Ex. B. Augustyn's Phase V-B fees (before the reduction) are broken down as follows:

- Partner Donald Souter billed 9.5 hours at a rate of $566.16 per hour for a total of $5,378.52 in fees;
- John Rue billed 13.90 hours at a rate of $572.53 per hour for a total of $7,271.14 in fees;
- Krista Rue billed 26.5 hours at a rate of $566.16 per hour for a total of $15,003.24 in fees; and
- Megan Atkinson billed 21.6 hours at a rate of $190.84 per hour for a total of $4,122.15 in fees.

*Id.*, Ex. B.

The Court conducts its lodestar analysis for Phase V-A and Phase V-B below, beginning with the reasonableness of Augustyn's proposed hourly rates.

**1. Reasonableness of Proposed Hourly Rates**

"Reasonable hourly rates are typically determined based on the market rate in the attorney's community for lawyers of similar expertise and experience." *Machado v. Law Offices of Jeffrey H. Ward*, Civ. No. 14-7401 (MAS), 2017 WL 2838458, at *2 (D.N.J. June 30, 2017) (citing *Interfaith*, 426 F.3d at 712). "The starting point in determining a reasonable hourly rate is the attorney's usual billing rate, but this is not dispositive."' *Id.* (quoting *Pub. Int. Research Grp. of N.J., Inc. v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995)). "To determine a reasonable hourly rate, the Court must assess the skill and experience of the attorneys and compare their rates to the community for similar services by lawyers of reasonably

comparable skill, experience and reputation." *U.S. Sewer & Drain, Inc. v. Earle Asphalt Co.*, Civ. No. 15-1461 (TJB), 2016 WL 11663197, *9 (D.N.J. June 22, 2016) (citing *Blakey v. Continental Airlines*, 2 F.Supp. 2d 598, 602 (D.N.J. 1998)).

Augustyn seeks fees for services rendered by professionals from Rue Law Group at the following rates:

- Principal Attorney (John Rue): $572.53 per hour;
- Partner (Krista Rue and Donald Souter): $566.16 per hour;
- Law Clerk (Avery Covington and Gregory Eyen): $254.46 per hour; and
- Paralegal (Megan Atkinson): $190.84 per hour.

*See generally* [Dkt. 96-1].

To calculate these rates, Augustyn relied on rates that this Court approved in 2019 in *I.K. o/b/o Z.S. v. Montclair Bd. of Educ.*, 2019 WL 5344550. In *I.K.*, the Court approved rates for general titles including paralegal and law clerk, as well as specific rates for John and Krista Rue. *Id.* at *3. Augustyn's counsel matched the firm's current professionals' titles to their respective approved rates in *I.K.* and then applied the aforementioned 3.5% annual rate increase to arrive at proposed 2026 equivalents. [Dkt. 88-1] at 19. Initially, the Board opposed the use of Augustyn's rate calculation methodology, asserting that "it results in higher rates than if the fee adjustment percentage was applied to the actual rates charged in the initial fee application." [Dkt. 90] at 7. After the Court's inquiry revealed that assertion to be inaccurate, the Board reversed course and consented to the proposed rates.

Upon review, Augustyn has provided appropriate documentation reflecting her attorneys' and their staff's billing rates, and the Court is satisfied that the proposed rates are reasonable based on prevailing market rates charged by attorneys of comparable skill, education, and experience litigating IDEA cases in New Jersey. *See* [Dkt. 96-1]; *I.K.,* 2019 WL 5344550, at *3.[5] The Court also notes that the proposed billing rates are largely consistent with the Community Legal Services of Philadelphia Attorney Fees schedule, which is commonly referenced in this district as a benchmark for reasonable rates. *See, e.g.*, *Lin v. Hudson City Sav. Bank, Civ*. No. 18-15387 (JBD), 2024 WL 1704730, at *4 (D.N.J. Apr. 19, 2024) (collecting cases). Accordingly, the Court accepts Augustyn's proposed rates as reasonable for purposes of the Phase V lodestar calculation.

### 2. Reasonableness of Hours Billed

The Court next must "determine whether the hours that [Augustyn's] attorney[s] expended are reasonable." *Machado*, 2017 WL 2838458, at *2. In doing so, the Court must exclude any hours that were "not reasonably expended" from the fee calculation. *Rode*, 892 F.2d at 1183 (citing *Hensley*, 461 U.S. at 433). "Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary," or if "the fee petition inadequately documents the hours claimed." *Id.*

---

[5] The Court does find it odd that Augustyn's proposed rates for Phase V are not based on the rates already approved for Phases II through IV in this case; instead, Augustyn asks for the rates that this Court approved in an unrelated case. It is unclear why Augustyn would not use the same rates for Phase V that this Court already approved in this very case for Phases II through IV. Nonetheless, the "new" rates are reasonable on their own terms, and because the Board no longer objects, the Court adopts them for Phase V here.

The Court also "should reduce the hours claimed by the number of hours spent litigating claims on which the party did not succeed, that were distinct from the claims on which the party did succeed." *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 178 (3d Cir. 2001) (citing *Rode*, 892 F.2d at 1183.). Accordingly, "[t]o determine whether the hours expended in [a] matter are reasonable," the Court must "'go line, by line, by line' through the billing records supporting the fee request.'" *Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 362 (3d Cir. 2001).

For the reasons that follow, the Court will make several itemized reductions to the proposed Phase V-A hours, and it will adopt Augustyn's proposed voluntary 25% reduction to the Phase V-B hours.

**a. Phase V-A Hours**

For Phase V-A, Augustyn requests fees for the 318.3 hours that her counsel and their staff spent working on the appeal, consisting of 66.5 hours billed by law clerk Avery Covington; 157 hours billed by law clerk Gregory Eyen; 36.8 hours billed by John Rue; 25.1 hours billed by Krista Rue; and 32.9 hours billed by Megan Atkinson. [Dkt. 96-1], Ex. A. The Board opposes Augustyn's request on the grounds that "the detailed invoices from [Augustyn] show[] distinct overbilling for tasks," but the Board does not identify any specific Phase V-A billing entries indicative of excessive billing. [Dkt. 90] at 8.[6]

---

[6] The party opposing a fee award may not rely on generalized objections; rather, the opposing party must support its opposition with specific facts. *Cintron v. Comm'r of Soc. Sec.*, Civ. No. 13-7125 (KM), 2015 WL 3938998, at *2 (D.N.J. June 25, 2015) ("The party opposing a fee request has the burden to submit objections that are specific and well-supported." (citations omitted)). Nevertheless, the Court has conducted its own independent line-by-line review of Augustyn's

The Court finds the amount of time that counsel spent on the appeal generally to be reasonable. These proceedings involve a hotly contested fee dispute involving multiple legal issues, and both Augustyn and the Board appealed to the Third Circuit. Moreover, Augustyn succeeded on appeal, and while the Board argues that Augustyn's appellate fees should be excluded based on her failure to comply with Third Circuit Local Appellate Rule 108.1 (an argument that the Court has rejected above), it does not argue that Augustyn's appellate fees as a whole are unreasonable.

That said, the Court does agree with the Board that Augustyn's counsel "overbill[ed] for [certain] tasks," [Dkt. 90] at 8, and that minor reductions to Phase V-A fees are in order. First, law clerk Gregory Eyen tacked on 30 minutes of "admin work" in six separate billing entries otherwise devoted to drafting or research. [Dkt. 96-1], Ex. A. "As a general rule, time that would not be billed to a client cannot be imposed on an adversary . . . [t]hus administrative tasks, which are not the type normally billed to a paying client, may not be recovered by a party through a fee petition." *Levy v. Global Credit & Collection Corp.*, Civ. No. 10-4229 (RBK), 2011 WL 5117855, at *6 (D.N.J. Oct. 27, 2011) (quotations omitted). Accordingly, the Court will exclude from the lodestar calculation the three hours that Mr. Eyen spent on purely administrative work.

---

supporting billing records and analyzes them for excess or redundancy based upon the Board's general argument. *Levy v. Glob. Credit & Collection Corp.*, Civ. No. 10-4229 (RBK), 2011 WL 5117855, at *2 (D.N.J. Oct. 27, 2011) ("The district court is afforded a 'great deal of discretion' to adjust the awarded fee in light of the opponent's objections." (citation omitted)).

Second, the Court notes that Augustyn's attorneys spent a significant amount of time on legal research for Augustyn's opening and reply briefing. By the Court's count, at least 84.4 hours of billing entries (resulting in $24,166.65 in fees) contain references to some kind of legal research. [Dkt. 96-1], Ex. A. Although law clerks with lower hourly rates did much of this research, this amount of time strikes the Court as overkill in light of the issues on appeal. *Evans*, 273 F.3d at 362 ("[I]n determining whether the fee request is excessive . . . the [C]ourt will inevitably engage in a fair amount of 'judgment calling' based upon its experience with the case and the general experience as to how much a case requires." (quoting *Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 721 (3d Cir. 1989))).

Moreover, many of the entries in the billing records simply say that the professional did "legal research," "research for brief drafting," and the like, leaving the Court without insight into the nature of the research, and limiting its ability to determine whether the time billed is reasonable. [Dkt. 96-1], Ex. A. The amount of time spent on legal research and the lack of detail regarding what kind of research was being conducted, "render[s] it 'impossible for the court to verify the reasonableness of the billings, either as to the necessity of the particular service or the amount of time expended on a given legal task.'" *In re Johnson & Johnson Derivative Litig.*, Civ. No. 10-2033 (JSC), 2013 WL 11228425 (D.N.J. June 13, 2013) (quoting *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 971 (D.C. Cir. 2004)), *report and recommendation adopted*, 2013 WL 6163858 (D.N.J. Nov. 25, 2013). The Court thus concludes that some of the time Augustyn's attorneys spent on legal

research for her appeal was excessive, and an adjustment is necessary. *Role Models Am.*, 353 F.3d at 972 ("[B]ecause the time records contain so little information, we have no basis for concluding that hours that appear to be excessive and redundant are in fact anything other than excessive and redundant." (citations omitted)).

Finally, and somewhat relatedly, the Court notes that roughly 170 hours of billing entries contain references to drafting-related tasks. This time includes, among other things, (1) a combined 20 hours spent by Krista Rue, Megan Atkinson, and Avery Covington on July 29, 2024 alone "finalizing [Augustyn's opening appellate] brief and appendix," [Dkt. 96-1] at 16; (2) 3 hours spent by Gregory Eyen drafting a table of contents and table of authorities for Augustyn's appellate reply brief, *id.* at 17-18; and (3) several entries of more than 4 hours by various professionals that provide little insight into what specific drafting tasks were being completed, *id.* at 14-17. Additionally, as was the case with billing entries regarding legal research, the Court notes that many of the billing entries generally refer to, *inter alia*, "composition of 3rd Circuit brief," "drafting and revising [brief]," "review[ing] and revis[ing] [brief]," and other relatively vague references to drafting tasks. [Dkt. 96-2], Ex. B. Finding this time somewhat excessive for largely the same reasons set forth above, the Court concludes that a modest adjustment is in order.

*

For these reasons, the Court will first subtract $763.38 from Augustyn's requested Phase V-A fees to eliminate the time that Gregory Eyen spent on

administrative tasks. From there, the Court will make a modest 10% reduction to Augustyn's Phase V-A fees to account for the relatively minor excessive billing that the Court has identified above. Because several different attorneys contributed to the billing issues, the Court concludes that a percentage reduction is the most efficient way to account for the excessive hours. *See Am. Bd. of Internal Med. v. Von Muller*, 540 F. App'x 103, 107 (3d Cir. 2013) (not precedential) (explaining that a Court "may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut" (quotations omitted)); *Fox v. Vice*, 563 U.S. 826, 838 (2011) ("The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time."). After making these reductions, the total Phase V-A lodestar amounts to $87,900.15.

**b. Phase V-B Hours**

For Phase V-B, Augustyn seeks fees for the 71.7 hours that her counsel and their staff spent on post-remand work, consisting of 9.5 hours billed by Donald Souter; 13.90 hours billed by John Rue; 26.5 hours by Krista Rue; and 21.6 hours billed by Megan Atkinson. Augustyn then proposes a voluntary reduction of 25% "to account for inefficiencies . . . in recognition that [Augustyn's renewed fee motion] represents the first full briefing of this phase of the litigation and that this phase of the litigation has relied more heavily on senior lawyer time." [Dkt. 88-1] at 21; *see also* [Dkt. 96-1] ¶ 20. The Board opposes Augustyn's request for fees, arguing that "the detailed invoices from [Augustyn] show[] distinct overbilling for tasks,"

but again does not point to any specific Phase V-B billing entries in support of its argument. [Dkt. 90] at 7.

Having undertaken its own line-by-line review of the billing records, the Court concludes that Augustyn's proposed 25% across-the-board reduction for Phase V-B is reasonable. In the first instance, as was the case with Phase V-A, the Court finds that the time Augustyn's legal professionals spent on remand proceedings generally to be reasonable. Moreover, while the Court has identified some excessive entries billing redundancies in the supporting records, Augustyn's proposed 25% reduction adequately addresses them. *See Joan P.B. v. Khepera Charter Sch.,* 420 F. Supp. 3d 347, 354-55 (E.D. Pa. 2019) (taking into account plaintiff's voluntary reduction of fees made "in the interest of compromise" in determining that the number of hours was reasonable); *D.O. o/b/o M.O. v. Jackson Twp. Bd. of Ed.*, Civ. No. 17-1581 (TJB), 2019 WL 1923388, at *7 (D.N.J. Apr. 30, 2019) (same).[7]

Once a 25% reduction is applied, the Court concludes that Augustyn's proposed Phase V-B fees (totaling $23,831.29) are reasonable.

---

7 Augustyn's proposed 25% reduction also sufficiently accounts for any unnecessary or unreasonable time spent addressing the Board's motion to strike portions of a reply brief which, according to the Board, contained improper arguments.

*

Applying the adjustments described above, the lodestar calculations for each phase are as follows:

| Phase | Purpose | Fees |
|---|---|---|
| II | The Board's Motion to Dismiss through the ALJ's Dismissal Order | $55,291.10 |
| III | Appeal of ALJ Dismissal to the District of New Jersey | $72,827.83 |
| IV | Post-Judgment/Initial Fee Application | $57,227.26 |
| V-A | Appeal of this Court's Fee Order to the Third Circuit | $87,900.15 |
| V-B | Post-Remand Proceedings/ Renewed Fee Application | $23,831.29 |

### D. Lodestar Adjustments

The Court next determines whether this is one of the "rare circumstances in which the lodestar does not adequately take into account [any of the *Johnson* factors]," and, as a result, whether deviation from the lodestar amount might be appropriate. *Souryavong*, 872 F.3d at 128 (quotation omitted); *see also Augustyn*, 139 F.4th at 260. The *Johnson* factors are:

> (1) requisite time and labor, (2) novelty and difficulty of the issues, (3) skill needed to perform the service properly, (4) preclusion of other employment due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Augustyn*, 139 F.4th at 260 n.5 (citing *Johnson*, 488 F.2d at 717-19) (other citations omitted). As discussed above, the mandate permits the Court to make appropriate *Johnson*-type reductions to the lodestar, if warranted, and so long as any reductions are not based on the kind of "improper considerations" that the Court of Appeals identified in its opinion. *Augustyn*, 139 F.4th at 262.

Here, the Court concludes that only the eighth *Johnson* factor—the amount involved and the results obtained, *i.e.*, the degree of success—is a potential basis for a reduction to any aspect of the lodestar.[8] With the benefit of the Third Circuit's opinion, the Court addresses below whether any reductions based on this factor are appropriate.

**1. Phase II**

In its opinion, the Third Circuit held that the administrative appeals process was a necessary precursor to Augustyn obtaining relief, even if the administrative proceedings did not occur in this Court. *Augustyn*, 139 F.4th at 261. Thus, the Third Circuit explained that "the fact that [Augustyn] was unsuccessful before the ALJ was not a proper basis for *entirely* denying the Phase II fees," because "Augustyn's arguments against dismissal of the grade revision claim were later vindicated, [so] the legal work required to make those arguments is compensable." *Id.* (emphasis added). In other words, the mandate permits appropriate adjustments to the extent that any of the Phase II fees incurred during the

[8] The parties have not argued that any other *Johnson* factor favors an adjustment of the lodestar. Still, the Court has considered the other factors and, having done so, concludes that none warrants modification of the lodestar.

administrative proceedings concerned issues or claims *unrelated* to grade revision. *Cf. id.*; *accord id.* at 263-64 (Porter, J., concurring in part and concurring in the judgment).

On that point, the Board submits that Augustyn "lost the critical [issue before the ALJ], then voluntarily dismissed [her] remaining claims to create an appeal," and argues that the Court therefore should "substantially reduce the lodestar amount, [ ] to account for [Augustyn's] limited success." [Dkt. 89] at 3. Augustyn, on the other hand, argues that the eighth *Johnson* factor is "entirely subsumed" in the lodestar because she "voluntarily eliminated the whole of Phase I even though portions of that work supported the surviving claim" and "[t]here was no limited success after Phase I." [Dkt. 96] at 7-9.

The Court recognizes Augustyn's elimination of Phase I fees and factors that into its analysis. Nonetheless, the Court does not agree with Augustyn's argument that "[t]here was no limited success after Phase I." *Id.* at 8. As discussed in the Court's earlier fee opinion, not all of the legal work that Augustyn's attorneys did in the administrative proceedings contributed to her success in this Court. And while the Third Circuit held that the Court erred in *entirely* reducing Augustyn's Phase II fees based on that limited success, *Augustyn*, 139 F.4th at 261, the mandate does not prohibit the Court from making *any* adjustments based on the degree of success obtained. For the reasons set forth below, even accounting for her elimination of Phase I fees, the Court concludes that the Phase II lodestar amount does not appropriately take into account "the amount involved and the results obtained."

*Augustyn*, 139 F.4th at 260 n.5 (citing *Johnson*, 488 F.2d at 717-19). A modest reduction is therefore warranted.

"[A] court assessing a fee petition for an IDEA case 'may adjust a requested fee downward based upon the results obtained by counsel for the prevailing party, particularly where a plaintiff is deemed prevailing, even though he succeeded on only some of his claims for relief." *Gresko v. Pemberton Township Bd. of Ed.*, 2020 WL 6042317, at *10 (D.N.J. Oct. 13, 2020) (quoting *Sch. Dist. of Philadelphia v. Kirsch*, 722 F. App'x 215, at 230 (3d Cir. 2018)). Indeed, "[w]hen determining a fee award, an important factor 'that may lead the district court to adjust the fee upward or downward' is the prevailing party's 'degree of success.'" *Rena C. v. Colonial Sch. Dist.*, 840 F. App'x 676, 682 (3d Cir. 2020) (not precedential) (quoting *Hensley*, 461 U.S. at 436). In cases like this one involving "a common core of facts," courts should not view the case "as a series of discrete claims." *Id.* (quoting *Hensley*, 461 U.S. at 435); *see also McKenna*, 582 F.3d at 457-58; *Windall*, 51 F.3d at 1190. To the contrary, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Rena C.*, 840 F. App'x at 682 (quoting *Hensley*, 461 U.S. at 435). Ultimately, "district courts have wide discretion to determine whether, and by how much, fees should be reduced for a lack of success." *D'Orazio v. Washington Twp.*, 501 F. App'x 185, 188 (3d Cir. 2012) (not precedential) (citing *Hensley*, 461 U.S. at 436-37 ("[t]he district court may attempt to identify specific hours that should be

eliminated, or it may simply reduce the award to account for the limited success" and that the "court necessarily has discretion in making this equitable judgment")).

Phase II covers fees from the administrative proceedings that lasted from the Board's partial motion to dismiss through the ALJ's dismissal order in January 2020. As this Court described in its earlier opinion, the Board filed a motion for partial dismissal of Augustyn's due process petition, in which it sought to dismiss Augustyn's claims for compensatory education and grade revisitation on the grounds that Augustyn's claim for inadequate home instruction was barred by a statute of limitations, and that other remedies, including revising Augustyn's grades, were not available under the IDEA. [Dkt. 1], Ex. A; [Dkt. 18] ¶ 10. Augustyn opposed the motion and moved to amend her petition to include the following separate forms of relief: (i) compensatory education for the Board's failure to provide a FAPE; (ii) compensatory education for the Board's failure to adequately prepare her for transition out of high school; (iii) review and revision of her grades based on completed work that had not previously graded and included in the calculation of her final grades; and (iv) compensatory, consequential, and punitive damages for infliction of emotional distress. [Dkt. 1], Ex. C. In the proposed amended petition, Augustyn's request for grade revision was connected to two separate claims: (1) the Board's failure to appropriately implement her IEPs, which permitted her additional time to complete her assignments and tests, *id.*, Ex. C ¶¶ 11-37; and (2) the Board's failure to provide adequate home instruction, which resulted in poor grades. *Id.*, Ex. C ¶¶ 38-62.

Ultimately, the ALJ granted Augustyn's motion to amend her petition, and granted in part and denied in part the Board's motion for partial dismissal. [Dkt. 1], Ex. A. Specifically, the ALJ dismissed (1) the grade revisitation claim because the request for such relief was improperly brought in a special education due process hearing; and (2) Augustyn's claim for compensatory education based on violations of confidentiality or infliction of emotional distress. *Id.*, Ex. A at 10, 14-15. The ALJ denied the motion to dismiss (without prejudice) as to Augustyn's claim for compensatory education based on inadequate home instruction, holding that a hearing was necessary to resolve a statute of limitations issue. *Id.*, Ex. A at 14. Before such a hearing took place, however, Augustyn voluntarily withdrew "all claims that were not disposed of in [the] . . . April 25, 2019 Order on Motion for Dismissal, while reserving appellate rights with respect to that Order." [Dkt. 18] ¶¶ 15, 16. Although Augustyn did not explicitly identify which claims remained following the ALJ's partial dismissal order, this Court deduced "that there were at least two claims raised by [Augustyn] that qualif[ied] as the remaining claims that were voluntarily dismissed: (1) [Augustyn's] FAPE claim requesting compensatory education, including revision of grades, due to inadequate home instruction; and (2) [Augustyn's] FAPE claim requesting compensatory education due to [the Board's] failure to provide appropriate transition planning for post-graduate education, employment, and independent living." [Dkt. 25] at 8 (citing [Dkt. 1], Ex. A at 14-15, Ex. C at 17-18).

Augustyn challenged the ALJ's decision in this Court, "claiming that the ALJ's April order, which held that [her] request for grade re-examination was improperly raised in a special education due-process hearing, was entered in error." *Id.* Indeed, on summary judgment, this Court clarified that Augustyn was "requesting, purportedly consistent with the accommodations in her IEPs from the 2014-2015 and 2015-2016 school years, an order requiring [the Board] to consider late-completed schoolwork that was not considered as part of her final grades," and noted that "this [was] [her] only remaining FAPE claim." *Id.* at 14; *see also id.* at 15 (clarifying that the issue before the Court was "whether [the Board] violated [Augustyn's] IEP by allegedly failing to consider late assignments submitted by [Augustyn], which [Augustyn] claims to have fallen within her IEP accommodations, and thus, as a remedy these assignments should now be considered."). "[I]n th[at] limited context," the Court ultimately concluded "that the ALJ erred by not having considered [Augustun's] FAPE claim on the merits." *Id.* at 15.

In other words, only a portion of the administrative proceedings before the ALJ pertained to the grade revision claim that Augustyn later vindicated in this Court; she was not successful on the remainder. Of all the claims and issues adjudicated before the ALJ, the only component of the underlying petition that Augustyn appealed and vindicated was her challenge to the ALJ's determination that grade reexamination was a remedy not obtainable in a special education due process hearing. The record thus belies Augustyn's argument that she was entirely

successful after Phase I. Therefore, Court finds it appropriate to reduce Augustyn's Phase II fees to account for her partial success during that phase, because the level of success that Augustyn ultimately achieved is disproportionate to the hours spent by her counsel on this phase of the litigation. *Rena C.*, 840 F. App'x at 682 n.9 ("Where the relief sought differs from the relief obtained because the prevailing party lost on some issue, that lost issue directly relates to a party's lack of success in obtaining the relief it sought.").

Because Augustyn succeeded on one of her four main claims for relief during the administrative proceedings, an argument might be made that her Phase II fees should be reduced by 75%. As noted, however, where "a plaintiff raises multiple claims of relief based on related legal theories and a common core of facts, the 'lawsuit cannot be viewed as a series of discrete claims.'" *M.P. v. Parkland Sch. Dist.*, Civ. No. 20-04447, 2021 WL 5177012, at *9 (E.D. Pa. Nov. 5, 2021) (quoting *Rena C.*, 840 F. App'x at 682). The Court thus believes that a 75% fee reduction would be far too much. As evidenced by the administrative record, there was a fair degree of overlap between each of Augustyn's administrative claims; consequently, counsel's billing entries make it difficult to determine which fees went to specific claims. More substantively, a significant (if not predominant) objective of Augustyn's overall quest for relief was her grade revision efforts; because the individual claims before the ALJ were not necessarily equivalent in substance, the Court cannot say that Augustyn's only succeeded on 25% of her case. Finally, the

Court also takes account of Augustyn's complete elimination of her Phase I fees, which were preliminary to the formal administrative proceedings before the ALJ.

Under these circumstances, the Court believes that a 25% reduction to the Phase II fees is appropriate to reflect the fact that Augustyn did not fully succeed in the administrative proceedings. *See M.P.*, 2021 WL 5177012, at *9 (applying a 50% downward deviation from the lodestar based on the difference between the relief sought and relief obtained); *C.W. v. New Providence Bd. of Educ.*, Civ. No. 22-2907 (JSA), 2024 WL 6077967, at *15 (D.N.J. Feb. 23, 2024) (noting that "reductions to the lodestar for a lack of success in IDEA cases are always fact and case dependent, and not always scientific" and reducing fee amount by 15% to reflect partial success (collecting cases)), *report and recommendation adopted,* 2024 WL 6077965 (D.N.J. Apr. 29, 2024). This reduction properly balances Augustyn's success in this Court and her elimination of Phase I fees against her failure to obtain all of the relief that she sought during the Phase II proceedings in this case.

Accordingly, the Court will reduce the Phase II lodestar amount and award Augustyn $41,468.33 in fees for that phase.

### 2. Phases III through V

As to Phases III, IV, and V, the Court concludes that no *Johnson*-type reductions to the lodestar amounts are appropriate.

Regarding Phase III, the Third Circuit rejected the primary bases for this Court's earlier 80% reduction. *Augustyn*, 139 F.4th at 261-62. Specifically, the Third Circuit held that the Court's reduction based on Augustyn's counsel's

"contribut[ion] to the ALJ's legal error," the Board's limited resources, and Augustyn's failure to raise additional IEP-related claims at her due process hearing were each improper considerations for reduction. *Id.* Additionally, and perhaps most importantly, in response to this Court's determination that the "procedural nature" of Augustyn's success warranted a reduced fee, the Third Circuit held that "the procedural nature of Augustyn's victory, without certainty of success on her underlying substantive claim on remand, [did not] justify a reduction." *Id.* at 261. That is because Augustyn's only claim before this Court—her right to a due process hearing—had been successfully vindicated, "irrespective of how the underlying claim would be resolved." *Id.* The Court of Appeals remanded for this Court to reassess the compensable Phase III fee amount; accordingly, the mandate theoretically permits *Johnson*-type reductions to Augustyn's Phase III fees so long as they are not based on "improper considerations." *Id.* at 262. In application and in light of the Third Circuit's opinion, however, the Court identifies no justifiable basis for reducing the Phase III lodestar amount.

The same goes for Phase IV and Phase V. The Third Circuit vacated the 80% reduction that this Court applied to Phase IV because "'the reduction analysis for the fees generated from litigating the fee petition is independent from the reduction analysis applied to the underlying litigation.'" *Augustyn*, 139 F.4th at 262. (citation omitted). The Third Circuit consequently concluded that this Court "must reassess its 'fees on fees' award considering not only the fees incurred litigating the petition in the Court, but also the additional costs incurred in this appeal." *Id.*

In accordance with the mandate, the Court considers the appropriate Phase IV and Phase V fee awards independently of the other phases. Doing so, the Court sees no basis for a reduction.

As discussed above, Augustyn's Phase IV fees result from her original fee motion, and her Phase V-A fees stem from her appeal of this Court's resolution of that motion to the Third Circuit. First, the Court has reviewed Phase IV fees independent from the other phases of these proceedings and concludes that there is no basis for reduction based on limited success. The Court has already accepted Augustyn's proposed Phase IV fees (as adjusted by a 3.5% delay enhancement) as reasonable, and no aspect of the proceedings at that phase justifies decreasing that amount.

In addition, because Augustyn was successful in her appeal of this Court's earlier fee award, a factor eight reduction is not warranted for Phase V-A. Likewise, the Court sees no basis for further reducing the Phase V-B lodestar amount (*i.e.*, fees relating to the post-remand proceedings in this Court). The Court here grants in large part Augustyn's renewed fee petition, and the 25% across-the-board reduction already applied above adequately accounts for any partial success achieved in Phase V-B. Accordingly, any partial success in the post-remand proceedings is already subsumed in the Phase V-B lodestar calculation. The Court sees no appropriate basis for further reduction.

*

In sum, the Court reduces the Phase II lodestar by 25%, resulting in $41,468.33 in fees. The lodestar amounts for the remaining phases do not warrant further adjustment and they remain intact.

**E. Costs**

In addition to attorneys' fees, Augustyn seeks $1,399.89 in costs. [Dkt. 88-1] at 22. Specifically, she requests the $412.00 in expenses that the Court previously awarded, plus appellate costs totaling $987.89. *Id.* Augustyn provides supporting documentation, *see* [Dkt. 33-2] at 30-31; [Dkt. 88-2] at 18-19, and the Board does not challenge her request to recover these costs. These costs are reasonable and the Court accepts them in full.

## IV. CONCLUSION

For the reasons stated, Augustyn's motion for attorneys' fees and costs under the IDEA will be granted in part, and the Board will be ordered to pay Augustyn a sum of $284,654.75 within forty-five (45) days. This final sum is broken down in the table appended to this opinion.

An appropriate order follows.

J. BRENDAN DAY
UNITED STATES MAGISTRATE JUDGE

Date: August 10, 2026

APPENDIX

| Phase | Purpose | Fees |
|---|---|---|
| II | The Board's Motion to Dismiss through the ALJ's Dismissal Order | $41,468.33 |
| III | Appeal of ALJ Dismissal to the District of New Jersey | $72,827.83 |
| IV | Post-Judgment/Initial Fee Application | $57,227.26 |
| V-A | Appeal of this Court's Fee Order to the Third Circuit | $87,900.15 |
| V-B | Post-Remand Proceedings/ Renewed Fee Application | $23,831.29 |
| | Original Costs | $412.00 |
| | Appellate Costs | $987.89 |
| **Total** | | **$284,654.75** |